1  Robert S. Green (State Bar No. 136183)
   James Robert Noblin (State Bar No. 114442)
2  **GREEN & NOBLIN, P.C.**
   2200 Larkspur Landing Circle, Suite 101
3  Larkspur, CA  94939
   Telephone:  (415) 477-6700
4  Facsimile:  (415) 477-6710
   Email:  gnecf@classcounsel.com
5
   *Attorneys for Plaintiffs*
6  *and the Proposed Class or Sub-classes*

7

8              **UNITED STATES DISTRICT COURT**

9           **NORTHERN DISTRICT OF CALIFORNIA**

10

11  YAN MEI ZHENG-LAWSON,                    Case No.:
12  YUANTENG PEI, and JOANNE E.
    FERRARA, on behalf of themselves and     **CLASS ACTION COMPLAINT**
13  all others similarly situated,

14                  Plaintiffs,               **DEMAND FOR JURY TRIAL**

15  vs.

16  TOYOTA MOTOR CORPORATION,
17  TOYOTA NORTH AMERICA, INC., and
    TOYOTA MOTOR SALES U.S.A., INC.,
18
19                  Defendants.

20

21         Plaintiffs, Yan Mei Zheng-Lawson ("Zheng-Lawson"), Yuanteng Pei ("Pei"), and

22  Joanne E. Ferrara ("Ferrara", collectively with Zheng-Lawson and Pei, "Plaintiffs"), on behalf

23  of themselves and all others similarly situated, by their undersigned counsel, allege, against

24  Defendants Toyota Motor Corporation ("Toyota Motor" or "TMC"), Toyota North America,

25  Inc. ("Toyota North America" or "TNA"), and Toyota Motor Sales U.S.A., Inc. ("Toyota Sales"

26  or "TMS", collectively, with TMC and TNA, "Toyota" or "Defendants"), the following upon

27  personal knowledge as to their own acts, and upon information and belief, based on the

28  investigation conducted by their counsel, as to all other allegations:

complaint.doc

**INTRODUCTION**

1.      Plaintiffs bring this class action complaint ("Complaint") on behalf of themselves and all other persons who purchased and/or leased a model year ("MY") 2016 Toyota Rav 4 model XLE, XLE Hybrid or SE vehicle ("Rav 4" or "Class Vehicle") that was not equipped with an "auto on/off" feature (the "auto on/off feature") for the vehicle's projector-beam headlights (collective purchasers and lessees, "Class Members", the "Class"), based upon false and deceptive advertising by Toyota, as further described in paragraphs 7-13, *et. seq., infra*.

2.      Alternatively, each Plaintiff asserts claims on behalf of a subclass consisting of the citizens of California, New York and Pennsylvania respectively, who purchased Class Vehicles that were not equipped with the "auto on/off" feature, based upon false and deceptive advertising by Toyota, as further set forth in paragraphs 7-13, *et seq.*, *infra* (the "Sub-classes", "Sub-class members").

3.      Plaintiffs and Class Members purchased their 2016 Rav 4 vehicles based upon representations by Defendants that those vehicles had a mechanism and were wired such that the vehicle's projector-beam headlights would automatically turn on and off and adjust to ensure proper lighting given the outside lighting conditions in which they were driving.

4.      In addition to the added luxury and convenience provided by this feature, the "auto on/off" headlight setting is necessary to ensure the safety of the driver, eliminating the need for the driver to consciously turn on his headlights given the outside lighting conditions. With regard to both daytime and nighttime vehicle light settings, the "auto on/off" feature ensures proper lighting and vehicle visibility even under circumstances where the driver of the Class Vehicle forgets or is unable, due to a sudden change of the lighting environment (e.g., entrance into a dark tunnel) to turn the switch to the proper lighting position given the darker or changed outside environment. Moreover,  because drivers must affirmatively turn on the Class Vehicle's daytime running lights ("DRL") without any clear indication that without doing so, their car is in a less safe setting, Defendants have placed Rav 4 drivers and in confusing and unsafe position and created an unrealistic expectation that they do not have to take those steps in order to create a proper lighting environment.

CLASS ACTION COMPLAINT

5.      Because of its automatic adjustment to the proper light setting, the "auto on/off" feature allows a driver of a Class Vehicle to experience optimal lighting conditions, durability, fuel economy, and vehicle visibility to other drivers on the road without requiring him to manually turn on or adjust vehicle lights to any specific light setting.

6.      Plaintiffs were misled by Defendants' advertising literature, among other things, that represented that the "auto on/off" mechanisms was a feature in Class Vehicles, and thereby were caused to purchase a higher end Rav4 model, the Class Vehicles, because of Defendants' misrepresentations that such Vehicles contained that feature.

7.      The 2016 Rav 4 brochure ("Brochure") available at Toyota dealerships, and on the internet, however, was false and deceptive.  It misleadingly provides that 2016 Rav 4 XLE (and XLE Hybrid) models are equipped with the following features in addition to or in replacement of the exterior features offered on the 2016 Rav 4 LE models:

### *Halogen projector-beam headlights with auto on/off feature*

• Integrated fog lights

• Silver-highlighted lower grille

• 17-in. 5-spoke alloy wheels with P225/65R17 tires

• Power tilt/slide moonroof with sunshade

• Height-adjustable power liftgate with jam protection

(Emphasis added).

8.      The Brochure further misleadingly provides that 2016 Rav 4 SE models contain the following features in addition to or in replacement of the exterior features offered on the 2016 Rav 4 XLE models (emphasis added):

### *LED projector-beam headlights with auto on/off feature*

• LED Daytime Running Lights (DRL)

• 18-in. 5-spoke sport alloy wheels with P235/55R18 tires

• Black-painted heated power outside mirrors with turn signal indicators and folding feature

(Emphasis added).

complaint.doc

9.      To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as represented.

10.     As detailed below, standard versions of the MY 2016 Toyota Rav 4, XLE (and XLE Hybrid) and SE models, were not equipped with the automatic on/off feature or setting for the vehicle's lights as marketed, advertised, and/or represented by Defendants.

11.     Toyota's advertisements concerning the Class Vehicles were false and misleading, and were directed at inducing and caused Plaintiffs and Class Members to purchase the Class Vehicles at higher prices than they would otherwise have paid and/or to have purchased higher end models that they believed contained this feature.

12.     Moreover, Defendants knew that Class Vehicles sold and leased in the United States did not contain the "auto on/off" feature as part of the package of features that they had marketed, advertised and/or represented, and that the Brochure and other advertising material was false and deceptive. Despite this knowledge, they nonetheless continued to actively misrepresent the Class Vehicles' quality and features in the Brochure and/or written materials.

13.     Despite knowing and admitting that their advertising was false, Defendants refused and failed to issue any recalls to add the promised feature, fix or add the feature when requested by owners and/or lessees, or to uniformly reimburse Class Members, thereby causing them damage.

14.     Defendants' acts, including their false and deceptive marketing, were directed at consumers, and were part of a warranty made by Defendants to Plaintiffs and Class Members that the Class Vehicles would conform to Defendants' advertising and representations and were part of the bargain and agreement made by Defendants to Plaintiffs and Class Members.

## **PARTIES**

15.     Plaintiffs bring this action in their individual capacities and on behalf of all others similarly situated, as described herein.

CLASS ACTION COMPLAINT

complaint.doc

16.    Plaintiff Zheng-Lawson at all relevant times is and was a resident of the Richmond Hill, New York. In or about May 2016, Plaintiff Zheng-Lawson purchased a 2016 Rav 4 from a Toyota dealership in Greenvale, New York.

17.    Plaintiff Pei, at all relevant times is and was a resident of Morgan Hill, California. In or about March 2016, Plaintiff Pei purchased a 2016 Rav 4 from a Toyota dealership in San Jose, California.

18.    Plaintiff Ferrara at all relevant times is and was a resident of Langhorne, Pennsylvania. In or about August 2016, Plaintiff Ferrara purchased a 2016 Rav 4 from a Toyota dealership in Langhorne, Pennsylvania.

19.    At the time of their respective purchases, Plaintiff Zheng-Lawson was a citizen of the State of New York, Plaintiff Pei was a citizen of California, and Plaintiff Ferrara was a citizen of Pennsylvania. Upon their respective purchases of a Class Vehicle, each vehicle was registered and insured in its respective state of purchase.

20.    Defendant Toyota Motor is a foreign corporation with its headquarters in Toyota, Aichi, Japan. At all relevant times, TMS and TNA acted as the domestic alter egos and/or agents of TMC. TMC has engaged in continuous and systematic activity in the United States and, specifically, in the State of California. It trades ADRs on the New York Stock Exchange, and sells and produces over 2 million cars per year in the United States through its wholly owned subsidiaries. TMC boasts that it has had the best-selling car in the United States for the past 15 consecutive years. In 2016, it sold over 350,000 RAV 4 cars in the United States.

21.    Defendant Toyota North America is a holding company for the sales and manufacturing subsidiaries of Toyota Motor in the United States, and is a California corporation with its principal executive office located at all relevant times in Torrance, California. Toyota North America operates as a wholly owned subsidiary of Toyota Motor.

22.    TNA is responsible for, among other things, corporate advertising and corporate communications in the United States, including upon information and belief, the Brochure. Its president is Akio Toyoda, who is also the President of TMC.

CLASS ACTION COMPLAINT

complaint.doc

23.    Defendant Toyota Sales is a California corporation with its principal executive office located in the same place as TNA, which at all relevant times was in Torrance, California. Toyota Sales is a wholly owned subsidiary of Toyota Motor.

24.    TMS is the warrantor for the limited warranties offered by Toyota which apply to all 2016 model year RAV4 vehicles distributed by Toyota that were originally sold by authorized Toyota dealers in the United States and were operated in the United States, its territories or Canada. The warranty coverage is automatically transferred at no cost to subsequent vehicle owners.

25.    TMC has had its United States headquarters in Torrance, California since 1967, and upon information and belief, maintained its U.S. headquarters there while selling Class Vehicles. Upon information and belief, the Brochure was available for download on the Toyota Global Website at http://www.toyota-global.com/select_region, such that its statements and advertising emanated from TMS or Toyota Global.

26.    The warranty applicable to Class Vehicles provides an Emission Control Warranty, as well as a New Vehicle Limited Warranty which consists of a basic warranty for 36 months or 36,000 miles, whichever occurs first; a powertrain warranty for 60 months or 60,000 miles, whichever occurs first; a restraint systems warranty for 60 months or 60,000 miles, whichever occurs first; and a Corrosion Perforation Warranty for 60 months, regardless of mileage.

27.    Defendants design, manufacture, market, sell and/or warranty automobiles, including model Rav 4s, under their Toyota brand name throughout the United States.  Rav 4s are advertised, distributed, and sold through dealers throughout the United States, including dealers in New York, California, and Pennsylvania. These locations were, and are, maintained by Defendants' dealers.  Defendants and their agents sold Class Vehicles to the Plaintiffs at the respective dealerships noted above.

## JURISDICTION AND VENUE

28.    This Court may assert diversity jurisdiction of this matter under the Class Action Fairness Act, 28 U.S.C.S. § 1332(d), in that at least two of the named Plaintiffs are citizens of

1   states different from the Defendants, one of whom is foreign, and the aggregate amount in

2   controversy for all Class Members exceeds $5,000,000, exclusive of interest and costs.

3          29.     This Court may exercise personal jurisdiction over Defendants because either

4   they are incorporated in the state of California or own subsidiaries that are incorporated in the

5   state of California, and these subsidiaries act as alter egos.  Defendants maintain sufficient

6   minimum contacts with the United States and the State of California, making each Defendant at

7   home in California.  In addition, each Defendant intentionally avails itself of the markets within

8   California for the promotion, sale, marketing, and distribution of its vehicles, including the

9   Class Vehicles, and the claims in this action arise from their availment of such markets in

10   California.  The exercise of jurisdiction would comport with notions of fair play and substantial

11   justice. Further, certain of the acts complained of occurred in California, thus rendering

12   jurisdiction by this Court proper. Jurisdiction comports with Cal. Code Civ. Pro. §410.10.

13          30.     Venue is proper in this District under 28 U.S.C. § 1391 because the Defendants

14   transact business in this District, and a substantial part of the events and/or misrepresentations

15   giving rise to Plaintiff Pei's and the proposed nationwide ("Nationwide") and California Sub-

16   class members' claims occurred in this District, including the dissemination of false advertising

17   and the sale of a Class Vehicle to Plaintiff Pei.  This District also has a distinct nexus to Plaintiff

18   Pei and Class Members who reside in and purchased Class Vehicles in this jurisdiction.

19   Accordingly, a substantial amount of the alleged harm occurred here, and the revenue and

20   profits Toyota received from sales of the Class Vehicles were earned in this District, thereby

21   subjecting Toyota to *in personam* jurisdiction and venue in this District.

22          31.     Toyota has also marketed and sold vehicles in this District, as well as maintained

23   sales and service authorized dealers in the District.

24                 **FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS**

25          32.     Defendants design and manufacture the Class Vehicles, which they market, sell

26   and warranty throughout the United States under the Toyota brand name.

27

28

CLASS ACTION COMPLAINT

complaint.doc

The Automatic On/Off Feature is a Safety Feature

33.    The 2016 Rav 4 models that are the subject of this Complaint are the 2016 MY XLE (and XLE Hybrid) and SE models. These Class Vehicles were marketed by Defendants as safe and reliable and as containing a number of desirable interior and exterior standard vehicle features that provided drivers with additional convenience and/or safety. Plaintiffs and Class Members paid additional fees for these features.

34.    One of those features was an automatic on/off feature that was supposed to enable the vehicles' projector beam headlights to automatically turn on and off in accordance with outside lighting conditions.  This feature increases the safety of the vehicle by allowing the headlights to turn on without a conscious action by the driver, and is particularly useful when a vehicle experiences a sudden change in lighting conditions, such as when the vehicle is driven through a tunnel.

35.    The absence of an "auto on/off" feature is particularly dangerous at night or in dark environments when a driver forgets or is unable to change the vehicle headlight switch setting to full headlights (from the Daytime Running Lights ("DRLs") or no lights at all), diminishing a driver's ability to see and the vehicle's visibility to other drivers on the road, thereby creating an unsafe and dangerous driving condition. Moreover, drivers of Class Vehicles without the "auto on/off" feature who are driving with their DRLs may fail to realize the vehicle's full headlights are not on, and therefore neglect to adjust the headlight switch setting at dusk or in the dark.

36.    During daytime travel, the "auto on/off" feature is particularly useful as drivers of Class Vehicles periodically need to change headlight settings from "DRL" to full "headlights" when they enter dark tunnels or encounter stormy conditions.  The "auto on/off" feature makes the appropriate headlight setting adjustments obviating the need for the driver to do so and losing focus on the road.

37.    Without the "auto on/off" feature, daytime drivers of Class Vehicles must consciously change to change the vehicle headlight switch setting to "DRL" from the "off" setting, and, if they do not, lose out on the added safety benefits and visibility which DRLs

complaint.doc

offer.  Moreover, drivers of Class Vehicles who leave their vehicle headlight switch setting at full headlights at all times lose out on the greater durability and improved fuel economy which the DRL setting offers drivers in environments with more light.

**The Class Vehicles Lack the Automatic On/Off**
**Feature Despite Defendants' Representations Otherwise**

38.    Commencing at some point in 2015, about the time that the Class Vehicles became available for purchase, Defendants disseminated a misleading Brochure concerning the Class Vehicles, representing that all Class Vehicles were equipped with the automatic on/off feature.

39.    Specifically, the Brochure stated that the "projector-beam headlights with auto on/off feature" would be included as one of the "Exterior Features" in the XLE (and XLE Hybrid), SE, and Limited (and Limited Hybrid) model Rav 4s. XLE models were represented to be equipped with "Halogen projector-beam headlights with auto on/off feature" and SE and Limited models were represented to be equipped with "LED projector-beam headlights with auto on/off feature."

40.    These representations were particularly important as Toyota generally markets Rav 4 XLE, SE, and Limited models as higher end versions of the Rav 4, because they contain additional or enhanced features beyond those available in the more basic Rav 4 model LE. For instance, the Brochure notes that the basic Rav 4 model contains only "projector-beam headlights with auto-off feature" – but not the "auto on/off" feature that the Brochure expressly identifies in the  XLE, SE, and Limited models. *Id*.

41.    In fact, page 15 of the Brochure specifically lists a number of "Options" for model XLE, XLE Hybrid, and SE Rav 4s, but does not include the "auto on/off" feature in that list.  The "auto on/off" feature is instead listed under the list of standard "Exterior Features."

42.    Thus, after reviewing these representations in the Brochure, a reasonable consumer seeking to purchase a vehicle would be deceived into believing that all 2016 XLE, XLE Hybrid, and SE Rav 4 models came equipped with the "auto on/off" feature as a standard

feature and would be led into paying more for that feature by buying a higher end model Rav 4. The Brochure fails to provide any adequate disclaimers.

43.    In fact, standard versions of 2016 XLE, XLE Hybrid, and SE Rav 4 models did not actually come equipped with the "auto on/off" projector-beam headlights as a standard feature as indicated in the Brochure.  Rather, the standard versions of 2016 XLE, XLE Hybrid, and SE Rav 4 vehicles were equipped with only "Type B", "Type C" or "Type D"[1] headlight switches which require the driver to affirmatively adjust the headlight setting by manually turning the end of the lever to the desired light setting (*see* settings below). The "auto on/off" feature was only offered as part of an option package, for additional cost, but not as a standard feature as consumers who viewed the 2016 Rav 4 brochure were led to believe.

44.    In the 2016 Rav 4 U.S. versions *with* the "auto on/off" feature (the non-Class Vehicles), the vehicle contains four vehicle headlight switch settings, which include: 1) a setting whereby the side marker, parking, tail, license plate, and instrument panel lights ("auxiliary lights") turn on; 2) the headlights and all auxiliary lights turn on; 3) the headlights, all auxiliary lights, and the daytime running lights[2] turn on and off automatically; 4) all lights turn off ("Type A").

45.    In the 2016 Rav 4 U.S. versions *without* the "auto on/off" feature, the vehicle contains three or four vehicle headlight switch settings, which include: 1) a setting whereby the side marker, parking, tail, license plate, and instrument panel lights ("auxiliary lights") turn on; 2) the headlights and all auxiliary lights turn on; 3) the daytime running lights turn on; and 4) all lights turn off ("Type B"), OR 1) a setting whereby auxiliary lights turn on; 2) the headlights

---

[1] Upon information and belief, "Type D" headlight settings do not appear in any 2016 Toyota Rav 4 manual.

[2] As explained in the 2016 Rav 4 Owner Manual, the daytime running light ("DRL") system is a safety feature that makes the vehicle more visible to other drivers during the daytime. In the United States, the Rav 4s' DRLs turn on when the engine is started and the parking brake is released, when the headlight switch is in the DRL or AUTO position (depending on whether the Rav 4 contains the "auto on/off" feature).

The DRLs are dimmer than regular headlight lights, and are not designed for use at night. In comparison to headlights, DRLs are more durable and consume less electricity, thereby improving a vehicle's fuel economy.

CLASS ACTION COMPLAINT

complaint.doc

and all auxiliary lights turn on; and 3) the daytime running lights turn on ("Type C"), OR 1) a setting whereby the headlights and all auxiliary lights turn on; 2) the daytime running lights and all auxiliary lights turn on; 3) the daytime running lights turn on; and 4) all lights turn off ("Type D").

46.    Standard 2016 XLE, XLE Hybrid, and SE Rav 4 models came equipped with Type B or Type C or Type D vehicle headlight switch settings, but  not the Type A switch settings which contain the "auto on/off" feature.

47.    Only after purchasing the Class Vehicle (and paying for the automatic on/off feature) did Class Members discover that this material feature was not standard and thus not installed in their Class Vehicles.

48.    Plaintiffs and Class Members relied upon Defendants' representations and deceptions and were misled into believing that Class Vehicles would contain the "auto on/off" feature.

49.    Because of Defendants' misrepresentations and deception, Class Members paid a premium for their Class Vehicles, and more than they would have paid had they known the "auto on/off" feature was not a standard feature on their respective Class Vehicle. Had Plaintiffs and Class Members known that the auto "on/off" feature was not included in their purchase or lease, they would not have purchased and/or leased their Class Vehicles or would have paid significantly less for their purchase and/or lease of such Rav 4 models.

50.    In purchasing and/or leasing their Class Vehicles, Plaintiffs and Class Members did not receive the full value that they were led to believe they would receive in their purchase or lease of their Class Vehicle.

**Defendants Knew and Admitted that Their Advertising was Deceptive**

51.    Defendants were on notice that Class Vehicles provided to purchasers within the United States did not come equipped with the "auto on/off" feature contrary to what they had represented in their marketing materials. Owners of Class Vehicles filed complaints with Toyota and posted complaints on various internet bulletin boards and complaint forum-type websites monitored by Toyota, which complained of the missing feature. Defendants actively monitor

CLASS ACTION COMPLAINT

1   internet posts concerning their vehicles and maintain a quality division to collect such data.

2   Moreover, upon information and belief, the feature is included in Canadian versions of the Class

3   Vehicles, indicating that Toyota made a conscious decision to sell the same vehicle in the

4   United States without the represented feature, thereby tacitly admitting to Class Members that

5   the Brochure, which touted the feature, contained deceptive or false advertising.

6        52.    There are a number of active bulletin boards on the internet on which Rav 4

7   owners, and owners of the Class Vehicles post complaints and have posted their efforts to

8   contact Toyota about this issue

9        53.    Postings as early as January 2016, indicate that Class Members had contacted

10  Toyota to inform it of the discrepancy between the Brochure and the Class Vehicles.  Many of

11  those online messages indicate that Toyota either was unresponsive to the Class Member's

12  complaints, or admitted to Class Members that the Brochure was wrong.  For example, in one

13  attached January 2016 posting, Toyota admitted that the website information was incorrect and

14  that the Brochure (at least online) did not accurately reflect the correct features of the Class

15  Vehicles.

16       54.    Toyota's admission and failure to adequately respond was confirmed by Plaintiff

17  Ferrara.  Upon discovering that her Class Vehicle did not have the automatic on/off feature,

18  Plaintiff Ferrara contacted her dealership, and its service department. There, the service

19  representative admitted that the Brochure was wrong. Thereafter, Plaintiff Ferrara contacted

20  Toyota's national customer service representatives who admitted that the Brochure was

21  incorrect but directed Plaintiff Ferrara to the window sticker, which was silent on the issue, and

22  thus was of little relevance.

23       55.    Although effectively admitting that the Brochure was misleading and deceptive,

24  Toyota refused to take any steps to return Plaintiff Ferrara's money, replace her Class Vehicle

25  with a car containing the missing "auto on/off" feature or take any other adequate steps.

26       56.    Defendants thus were on notice and admitted that the Class Vehicles sold in the

27  United States did not come equipped with the "auto on/off" feature as they received multiple

28  complaints and correspondence from Class Members regarding the missing feature and the

CLASS ACTION COMPLAINT

complaint.doc

1  misstatements in the Brochure. Toyota even conceded the absence of the promised feature in the

2  Class Vehicles, when it discretely offered a $500 refund to some purchasers of the Class

3  Vehicles who actively complained, but did not make that offer to all Class Members.

4       57.    Despite knowing and effectively admitting that their advertising was deceptive

5  and misleading, Defendants did not correct the Brochure and other false advertising, nor did

6  they take steps to repair or replace Plaintiffs' and Class Members' Class Vehicles, thereby

7  causing member of the Class damage, as further alleged below.

8       58.    Defendants' misrepresentations to Plaintiffs and Class Members that the standard

9  form of Class Vehicle contained the "auto on/off" feature caused damages as Plaintiffs and

10  Class Members would not have purchased and/or leased their Class Vehicles or would have

11  insisted upon a significantly lower purchase and/or lease price.  Thus, because of Defendants'

12  misrepresentations, Plaintiffs and Class Members paid higher purchase and/or lease prices, and

13  did not receive the full value of their purchases or leases, including the use of the "auto on/off"

14  feature and its benefits.

15  **Plaintiff Zheng-Lawson's Factual Allegations**

16       59.    In or about May 2016, Plaintiff Zheng-Lawson purchased a new 2016 Toyota

17  Rav 4 model XLE from Penn Toyota, a Toyota dealership in Greenvale, New York (the

18  "Greenvale Dealership"), based upon Defendants' misrepresentations and deceptions contained

19  in both the online version and hard copy of the Brochure.

20       60.    Plaintiff Zheng-Lawson purchased her Class Vehicle after her husband had

21  reviewed the online version of the Brochure, which touted the automatic on/off feature as

22  included in all Class Vehicles. Plaintiff Zheng-Lawson and her husband confirmed that the

23  automatic on/off feature was standard, when they reviewed the hard copy Brochure during

24  discussions about the Class Vehicle at the Greenvale Dealership.  Based upon those

25  misrepresentations, and believing that the Class Vehicle contained the automatic on/off feature

26  as standard, Plaintiff Zheng-Lawson and her husband determined to and did purchase their Class

27  Vehicle.

28

CLASS ACTION COMPLAINT

complaint.doc

61.    Plaintiff Zheng-Lawson paid a higher price for the upgraded XLE model under the mistaken belief that the upgraded Class Vehicle would be equipped with, *inter alia*, the represented "auto on/off" feature as standard. After receiving their Class Vehicle, however, they discovered that it only came equipped with the "Type D" vehicle headlight switch settings, which did not include the "auto on/off" feature.  Although they complained, Toyota refused to cure the defect.

**Plaintiff Pei's Factual Allegations**

62.    In or about March 2016, Plaintiff Pei purchased a new 2016 Toyota Rav 4 model XLE from Capitol Toyota, a dealership in San Jose, California.

63.    Prior to and/or at the time of purchase, Toyota represented to Plaintiff Pei in its advertising and the Brochure that the car in which he was interested, the 2016 Toyota Rav 4 model XLE, contained projector-beam headlights that were equipped with the "auto on/off" feature as a standard feature.

64.    Thus, Plaintiff Pei, relying on Defendants' representations, agreed to and did pay an increased price for the upgraded XLE model so that his Rav 4 would contain certain added features, including the "auto on/off" feature.  After obtaining his Class Vehicle, Plaintiff Pei discovered that it came equipped with vehicle headlight switch settings that did not include the "auto on/off" feature for which he had paid, thereby causing him damage.

**Plaintiff Ferrara's Factual Allegations**

65.    In or about August 2016, Plaintiff Ferrara and her husband purchased a new 2016 Toyota Rav 4 model XLE from Team Toyota, a Toyota dealership in Langhorne, Pennsylvania. Plaintiff Ferrara and her husband purchased the Class Vehicle primarily for use by their college aged daughter, such that the Class Vehicle's safety features were of particular importance to them.

66.    Prior to and at the time of purchase, Plaintiff Ferrara and her husband reviewed the features to be included in Class Vehicles.  Specifically, while considering various vehicle options, Plaintiff Ferrara and her husband reviewed the Brochure for the Class Vehicle available

complaint.doc

at the dealership, including that portion of the Brochure that represented that the Class Vehicle was equipped with the automatic on/off feature.

67.    Plaintiff Ferrara and her husband specifically paid a greater price for an upgraded XLE model based upon Defendants' representation that the Class Vehicle was equipped with an automatic "auto on/off" feature, which they consider a critical vehicle safety feature.   After obtaining their Class Vehicle, however, Plaintiff Ferrara and her husband discovered that Class Vehicle they had purchased failed to contain the represented "auto on/off" feature.

68.    Thereafter, Plaintiff Ferrara and her husband contacted the salesman at Team Toyota who had arranged their purchase, notifying him of the missing "auto on/off" feature and requesting an installation of that feature.  Plaintiff Ferrara and her husband were directed to the Team Toyota service department, which admitted that the Brochure upon which they had relied contained a deceptive and misleading representation about the Class Vehicle.  The service department representative stated, however, that since her Rav 4 was properly built to its design, and despite Toyota's misrepresentation in the Brochure, it would not repair, fix, or upgrade her vehicle.

69.    Plaintiff Ferrara and her husband were later contacted by a representative from Team Toyota who explained that installing new headlights with the "auto on/off" feature would be a difficult, costly, and technically inadvisable project.  Accordingly, Toyota was not willing to repair, fix, or upgrade Plaintiff Ferrara's Class Vehicle or provide her with another Rav 4 that was equipped with that feature.  Team Toyota offered Plaintiff Ferrara compensation of $300 to $500 or an auto starter, which she refused as inadequate.

70.    Plaintiff Ferrara and her husband subsequently contacted Toyota's National Customer Service, which further refused to provide a repair, fix, or upgrade of Plaintiff Ferrara's Class Vehicle, and refused to provide Plaintiff Ferrara with a refund of her purchase.

71.    All Toyota representatives with whom Plaintiff Ferrara communicated on this matter did not deny that Toyota had misrepresented the Class Vehicle's features in the Brochure, but nonetheless failed to repair, fix, or upgrade Plaintiff Ferrara's Class Vehicle to conform to Toyota's representations, thereby causing her damage.

complaint.doc

## CLASS ACTION ALLEGATIONS

72.     Plaintiff Pei brings this action on his own behalf and on behalf of all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of a class consisting of:  All United States citizens who purchased and/or leased a MY 2016 Toyota Rav 4 XLE, XLE Hybrid or SE model vehicle that did not contain the "auto on/off" feature for the vehicle's projector-beam headlights. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities. Excluded from this Class are any persons or other entities related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated with Toyota, or any person who has an action for damages for personal injury or death or property damage against Defendant arising from a Class Vehicle.

73.     In the alternative, Plaintiffs assert that they respectively are bringing this action on behalf of the following Sub-classes:

**A New York Subclass: By Plaintiff Zheng-Lawson**

> All persons who are citizens of the State of New York who purchased and/or leased a model year 2016 Toyota Rav 4 XLE, XLE Hybrid or SE model vehicle that did not contain the "auto on/off" feature for the vehicle's projector-beam headlights. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

> Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated with Toyota, or any person who has an action for damages for personal injury or death or property damage against Defendant arising from a Class Vehicle.

**A California Subclass: By Plaintiff Pei**

> All persons who are citizens of the State of California who purchased and/or leased a MY2016 Toyota Rav 4 XLE, XLE Hybrid or SE

complaint.doc

model vehicle that did not contain the "auto on/off" feature for the vehicle's projector-beam headlights. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

<u>Excluded from this Class</u> are any persons or other entitities related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated with Toyota, or any person who has an action for damages for personal injury or death or property damage against Defendant arising from a Class Vehicle.

**A Pennsylvania Subclass:  By Plaintiff Ferrara**

All persons who are citizens of the State of Pennsylvania who purchased and/or leased aMY 2016 Toyota Rav 4 XLE, XLE Hybrid or SE model vehicle that did not contain the "auto on/off" feature for the vehicle's projector-beam headlights. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

<u>Excluded from this Class</u> are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated with Toyota, or any person who has an action for damages for personal injury or death or property damage against Defendant arising from a Class Vehicle.

## NUMEROSITY

74.    The members of the Class are so numerous that joinder of all members is impracticable.  The Class is made up of thousands of members.  The precise number of Class Members can only be ascertained through discovery, which includes Defendants' sales, service, maintenance and complaint records, and Defendants' registration records.  The disposition of Class Members' claims through a class action will benefit the parties and the Court.

## COMMON QUESTIONS OF LAW AND FACT

75.    There is a well-defined community of interests in the questions of law and fact affecting the Plaintiffs and Class Members.

-17-

complaint.doc

76.     The questions of law and fact common to the Class predominate over questions which may affect individual members, and include the following:

(a)     Whether Toyota knowingly or intentionally deceived Class Members and/or disseminated false advertising and uniform marketing materials relating to the Class Vehicles, or whether Defendants knew or should have known that their advertising material was false and deceptive;

(b)     Whether Toyota misrepresented or omitted material information that Class Vehicles did not contain a material feature which Plaintiffs and Class Members reasonably believed it would contain;

(c)     Whether Defendants' misrepresentations regarding the Class Vehicles' "auto on/off" feature was material;

(d)     Whether Defendants violated New York's General Business Law § 349;

(e)     Whether Defendants violated New York's General Business Law § 350;

(f)     Whether Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 *et seq.*);

(g)     Whether Defendants violated Pennsylvania's Trade Practice and Consumer Protection Law (73 P.S. 201-1, *et seq.*);

(h)     Whether Defendants violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

(i)     Whether Defendants violated California's Consumer Legal Remedies Act (Cal. Civ. Code §1750, *et seq.*);

(j)     Whether Defendants violated California's Song-Beverly Consumer Warranty Act (Cal. Civ. Code §1790, *et seq.*);

(k)     Whether Defendants were unjustly enriched;

(l)     Whether Defendants' failure to equip Class Vehicles with the "auto on/off" feature constitutes a breach of express warranty; and

(m)     Whether Class Members were damaged, and if so, the appropriate amount thereof.

complaint.doc

1

## **TYPICALITY**

2    77.    Plaintiffs' claims and defenses are typical of the claims and defenses of the Class

3    because Plaintiffs and Class members all purchased and/or leased Class Vehicles that failed to

4    contain the "auto on/off" feature.  All of their vehicles were designed, manufactured, marketed

5    and sold by Defendants.  Plaintiffs, like all Class Members, purchased their Class Vehicles,

6    based upon Defendants misrepresentations and deceptive advertising indicating that Class

7    Vehicles were equipped with the "auto on/off feature" and omissions of  material fact that the

8    feature did not exist, thereby causing Plaintiffs and Class Members damage when they

9    purchased their Class Vehicles. Each Plaintiff is also typical of the respective Sub-class that

10   he/she seeks to represent.

11

## **ADEQUACY OF REPRESENTATION**

12   78.    Plaintiffs will fairly and adequately assert and protect the interests of the Class

13   as:

14    (a)    Plaintiffs have hired attorneys who are experienced in prosecuting class

15   action claims and will adequately represent the interests of the Class; and

16    (b)    Plaintiffs have no conflicts of interest that will interfere with the

17   maintenance of this class action.

18

## **PREDOMINANCE**

19   79.    With respect to the Class or, in the alternative, the Sub-classes, questions

20   common to the Class predominate over those which only affect individual owners. This case

21   involves 2016 MY Rav 4s which all lack the same "auto on/off" feature and were purchased

22   based upon the same deceptive and false advertising. Because this feature is lacking, the value

23   of the Class Vehicles have been reduced accordingly, regardless of who purchased or drove the

24   vehicle, or how they were driven. Liability will primarily be predicated upon the jury's

25   evaluation of Defendants' representations and/or advertisements regarding the "auto on/off"

26   feature, the materiality of the feature, and the reduced value of a vehicle which lacks that

27   feature.

28

CLASS ACTION COMPLAINT

complaint.doc

**SUPERIORITY**

80.    A class action provides a fair and efficient method for the adjudication of controversy for the following reasons:

(a)    The common questions of law and fact set forth above predominate over any questions affecting only individual Class Members;

(b)    The Class is so numerous as to make joinder impracticable.  The Class, however, is not so numerous as to create manageability problems.  There are no unusual legal or factual issues which would create manageability problems;

(c)    Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

(d)    The claims of the individual Class Members are small in relation to the expenses of litigation, making a class action the only procedure in which Class Members can, as a practical matter, recover; and

(e)    A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

**COUNT I**

**(Deceptive Trade Practices)**
**(Violation of General Business Law§ 349:   Deceptive Acts and Practices)**
**(Brought by Plaintiff Zheng-Lawson on behalf of the New York Sub-class)**

81.    Plaintiff Zheng-Lawson hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

82.    Plaintiff Zheng-Lawson asserts this cause of action on behalf of the New York Sub-class.

83.    Defendants' practices, acts, policies and courses of conduct, including their representations that the Class Vehicles would be equipped with the "auto on/off" feature as described above, and omissions that Class Vehicles did not contain this feature, were aimed at

CLASS ACTION COMPLAINT

complaint.doc

consumers, were consumer oriented, and intended to induce, and did induce, Plaintiff Zheng-Lawson and members of the New York Sub-class to purchase and/or lease Class Vehicles.

84.    Defendants sold and/or leased the Class Vehicles misrepresenting materials facts by claiming the Class Vehicles did contain the "auto on/off" feature and by knowingly omitting the fact that they did not contain the "auto on/off" feature as Toyota represented, marketed, and/or advertised.

85.    Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)    Defendants actively, knowingly and deceptively misrepresented to Plaintiff and the Sub-class members at the time of purchase or lease that the Class Vehicles sold or leased in the United States included automatic on/off headlights in said vehicles, when in fact, said Class Vehicles did not have this feature;

(b)    Defendants failed to disclose the lack of such a feature to consumers who purchased or leased said Class Vehicles, despite the fact that Defendants were aware that such a feature would not come standard in Class Vehicles and that the Brochure and other advertising material, including its online statements, were deceptive in stating it did;

(c)    Defendants' actions, representations, advertisements and/or omissions caused Plaintiffs and the Sub-class members to expend additional sums of money at its dealerships and elsewhere to purchase or lease Class Vehicles believing that they were obtaining a vehicle with the represented "auto on/off" headlight feature, thereby causing them damage.

(d)    Defendants' marketing, advertising and promotion of Class Vehicles was deceptive because it failed to reveal the true type of headlights which purchasers or lessees would receive in their Class Vehicles.

(e)    Defendant, through its agents and representatives, admitted to some Class Vehicle owners or lessees by its words and actions that its advertising was false and deceptive and did not conform to or adequately describe the features with which the Class

CLASS ACTION COMPLAINT

complaint.doc

Vehicles were equipped, and that the Class Vehicles did not conform to Toyota's representations in the Brochure. Defendants discretely offered partial compensation to some Class Vehicle owners or lessees for the reduction in value of their vehicle, thereby maintaining a secret, unfair, deceptive, arbitrary and unconscionable warranty practice for some, while not disclosing and applying it to all Class and Sub-class members.

86.     Each and all of the aforementioned conduct is and was deceptive, false, fraudulent, and constitutes an unconscionable commercial practice in that Defendants have, by the use of false or deceptive statements and/or knowing intentional material omissions, circulated false and deceptive advertising and misrepresented and/or omitted the true nature of Class Vehicles and their headlight features.

87.     In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendants misrepresented and/or knowingly and intentionally omitted material facts.

88.     Plaintiffs and members of the public were deceived by Defendant's affirmative misrepresentations and failures to properly disclose the material fact that Class Vehicles did not have the "auto on/off" feature.

89.     Such acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle. Said deceptive acts and practices aforementioned are material. The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 349.

90.     As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Zheng-Lawson and the Sub-class members have been injured as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

CLASS ACTION COMPLAINT

complaint.doc

91.    Moreover, the Class Vehicles without the "auto on/off" feature are of lesser value than if they had included this feature and Plaintiff Zheng-Lawson and Sub-class members have lost the benefit of their bargain by Defendants' failure to include the feature in their Class Vehicles.

92.    As a result, Plaintiff Zheng-Lawson and the Sub--class members seek restitution and/or disgorgement of revenues that Toyota received as a result of selling Class Vehicles to Plaintiff Zheng-Lawson and Sub-class members, and/or the cost to repair, fix, and/or upgrade their Class Vehicles so as to conform to Toyota's representations regarding their headlights' "auto on/off" feature. Plaintiff Zheng-Lawson is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this Complaint at the time of trial, when the same has been ascertained. In addition, or alternatively, Plaintiff Zheng-Lawson seeks to recover the diminution of value she experienced as a result of the Defendants' violation of GBL § 349.

93.    In addition, Plaintiff Zheng-Lawson seeks punitive damages, statutory damages and reasonable attorneys' fees.  Plaintiff also seek a declaration that Class Vehicles lack the promised "auto on/off" feature, and owners and lessees of Class Vehicles must be compensated, refunded, and/or have their vehicle replaced with others containing the represented feature.

## COUNT II

**(Deceptive Trade Practices)**
**(Violation of General Business Law § 350 Deceptive Acts and Practices)**
**(Brought by Plaintiff Zheng-Lawson on behalf of the New York Subclass)**

94.    Plaintiff Zheng-Lawson hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

95.    Plaintiff Zheng-Lawson asserts this cause of action on behalf of herself and the New York Sub-class.

96.    Defendants knowingly advertised in a manner that misled consumers, including Class Members and members of the New York Sub-class, into the false belief that all Class Vehicles would come equipped with the "auto on/off" feature as described above.

CLASS ACTION COMPLAINT

complaint.doc

97.    Such advertisements and marketing practices by Defendant are and were materially misleading and likely to mislead a reasonable consumer purchasing the vehicle.  The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 350.

98.    As a direct and proximate result of these misleading advertisements and marketing materials, and/or the concealment of the true and accurate facts in the false materials disseminated, Plaintiff Zheng-Lawson and the Sub-class members have been injured as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

99.    As a result, Plaintiff Zheng-Lawson and the New York Sub-class members seek restitution or disgorgement of all increased revenues that Toyota received as a result of selling Class Vehicles to Plaintiff Zheng-Lawson and the New York Sub-class members, and/or the cost to repair, fix, and/or upgrade their Class Vehicles so as to conform to Toyota's representations regarding their headlights' "auto on/off" feature. Plaintiff Zheng-Lawson is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this Complaint at the time of trial, when the same has been ascertained. In addition, or alternatively, Plaintiff Zheng-Lawson seeks to recover the diminution of value of her Class Vehicle as a result of the Defendants' violation of GBL § 350.

100.    In addition, Plaintiff Zheng-Lawson seeks punitive damages, statutory damages and reasonable attorneys' fees. Plaintiff Zheng-Lawson also seeks a declaration that Class Vehicles lack the advertised "auto on/off" feature, and owners and lessees of Class Vehicles must be compensated, refunded, and/or have their vehicles replaced with others containing the represented feature.

complaint.doc

1

2

## COUNT III

3

**(Breach of Express Warranty)**
**(Violation of Cal. Com. Code § 2313)**
**(Brought by Plaintiff Pei on behalf of the National Class, or, alternatively, Plaintiff Pei on behalf of the California Sub-class)**

4

5      101.      Plaintiff Pei hereby incorporates by reference the allegations contained in all

6    preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

7      102.      Plaintiff Pei asserts this cause of action on behalf of himself and the National

8    Class under Cal. Com. Code §2313. Alternatively, this cause of action is asserted by Plaintiff

9    Pei on behalf of the California Sub-class under Cal. Com. Code §2313.

10     103.      Defendants provided a uniform affirmative description of the Class Vehicles in

11   the Brochure that stated that the "auto on/off" feature was an included exterior feature in the

12   Class Vehicles.  This uniform affirmative description of the Class Vehicles was made part of the

13   basis of the bargain and thereby created an express warranty that the Class Vehicles conformed

14   to the description pursuant to the UCC express warranty provisions adopted by California under

15   Cal. Com. Code  § 2313. Plaintiff Pei and Class Members (or alternatively, California Sub-class

16   members) thereby relied upon such warranty. By law, Plaintiff Pei and Class Members, or

17   alternatively, California Sub-class members have entered into certain express warranty

18   agreements with Toyota.

19     104.      Despite this uniform affirmative misrepresentation, Defendants breached their

20   express warranty Plaintiff Pei and Class Members, or alternatively, California Sub-class

21   members, when they delivered to them Class Vehicles that did not contain the "auto on/off

22   feature" and did not conform to the description of the vehicles provided to them as consumers.

23     105.      As a result of the foregoing, Plaintiff Pei and the National Class, or alternatively,

24   California Sub-class members, are entitled to compensatory damages for breach of express

25   warranty in an amount to be proven at trial, and punitive damages because Defendants acted in a

26   manner contrary to public purpose and with intent to exclude such "auto on/off' headlight

27   feature.

28

CLASS ACTION COMPLAINT

complaint.doc

1

2

3

## COUNT IV

**(Breach of Express Warranty)**
**(Violation of New York Uniform Commercial Code, § 2–313)**
**(Brought by Plaintiff Zheng-Lawson on behalf of the New York Sub-Class)**

4      106.    Plaintiff Zheng-Lawson hereby incorporates by reference the allegations

5   contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully

6   herein.

7      107.    Plaintiff Zheng-Lawson asserts this cause of action on behalf of herself and the

8   New York Sub-class under N.Y.U.C.C. § 2-313(1)(b).

9      108.    Defendants provided a uniform affirmative description of Class Vehicles in the

10  Brochure that stated that the "auto on/off" feature was an included exterior feature of the Class

11  Vehicles. This uniform affirmative description of the Class Vehicles was made part of the basis

12  of the bargain and thereby created an express warranty that the Class Vehicles conformed to the

13  description pursuant to the UCC express warranty provisions as adopted by New York in

14  N.Y.U.C.C. § 2–313(1)(b). Plaintiff Zheng-Lawson and New York Sub-class members relied

15  upon such warranty. By law, Plaintiff Zheng-Lawson and New York Sub-class members have

16  entered into certain express warranty agreements with Toyota.

17     109.    Despite this uniform affirmative misrepresentation, Defendants breached their

18  express warranty with Plaintiff Zheng-Lawson and New York Sub-class members when they

19  delivered to them Class Vehicles that did not contain the "auto on/off" feature and thereby did

20  not conform to the description of the vehicles they provided to consumers.

21     110.    As a result of the foregoing, Plaintiff Zheng-Lawson and the New York Sub-

22  class members are entitled to compensatory damages for Defendants' breach of express

23  warranty in an amount to be proven at trial, and punitive damages because Defendants acted in a

24  manner contrary to the public purpose and with intent not to provide the "auto on/off headlight

25  feature, and to exclude this feature from the Class Vehicles.

26

27

28

complaint.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT V

**(Breach of Express Warranty)**
**(Violation of 13 Pa.C.S.A. § 2313.)**
**(Brought by Plaintiff Ferrara on behalf of the Pennsylvania Sub-Class)**

111.    Plaintiff Ferrara hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

112.    Plaintiff Ferrara asserts this cause of action on behalf of herself and the Pennsylvania Sub-class under 13 Pa. C.S.A. §2313.

113.    Defendants provided a uniform affirmative description of the Class Vehicles in the Brochure that stated that the "auto on/off" feature was an included exterior feature of the Class Vehicles.  This uniform affirmative description of the Class Vehicles was made part of the basis of the bargain and thereby created an express warranty that the Class Vehicles conformed to the description pursuant to the UCC express warranty provisions were adopted by Pennsylvania under 13 Pa.C.S.A. §2313. Plaintiff and Pennsylvania Sub-class thereby relied upon such warranty. By law, Plaintiff Ferrara and the Pennsylvania Sub-class members have entered into certain express warranty agreements with Toyota.

114.    Despite this uniform affirmative misrepresentation, Defendants breached their express warranty with Plaintiff Ferrara and the Pennsylvania Sub-class members when they delivered to them Class Vehicles that did not contain the "auto on/off" feature that did not conform to the description of the vehicles they provided to them as consumers.

115.    As a result of the foregoing, Plaintiff Ferrara and the Pennsylvania Sub-class members are entitled to compensatory damages for breach of the express warranty in an amount to be proven at trial, and punitive damages because Defendants acted in a manner contrary to the public purpose and with intent to exclude this feature from the Class Vehicles.

CLASS ACTION COMPLAINT

complaint.doc

**COUNT VI**

**(Violation of California's Unfair Competition Law ("UCL"))**
**(Cal. Bus. & Prof. Code 17200, *et seq*.)**
**(Brought by Plaintiff Pei on behalf of the National Class or, alternatively, on behalf of the California Sub-class)**

116.    Plaintiff Pei hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

117.    Plaintiff Pei asserts this cause of action on behalf of himself, and the National Class or alternatively on behalf of the California Sub-class.

118.    California's Unfair Competition Law ("UCL") prohibits and makes actionable any unlawful, unfair, or deceptive business practice.  Defendants' actions, as alleged herein, in selling and marketing the Class Vehicles through deceptive marketing that misrepresented whether the Class Vehicles contained the "auto on/off" feature, constitutes an unlawful and deceptive business practice and a violation of the UCL.

119.    As set forth in prior Counts, and as alleged previously in this Complaint, Defendants' actions constitute an unlawful business practice in which Toyota breached its express warranty in violation of Section 2313 of California's Commercial Code.

120.    Defendants' marketing and sale of Class Vehicles without disclosure of their lack of the "auto on/off feature" as uniformly represented in the Brochure and/or other Toyota marketing materials, amounts to a deceptive business practice within the meaning of the UCL. To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as so represented. The conduct was deceptive because it was intended to and did materially mislead and deceive Plaintiff Pei and National and/or California Sub-class members. Had Toyota not misrepresented to Plaintiff Pei that the Class Vehicles contained the "auto on/off" feature, he would not have purchased his vehicle or would have insisted upon a significantly lower purchase price.  Toyota refused to contact Class or California Sub-class members to cure its misrepresentations because doing so would  have caused consumers to forego their purchases of Class Vehicles, or to insist upon lower purchase and/or lease prices.

complaint.doc

In addition, Toyota intentionally omitted that Class Vehicles did not contain the "auto on/off" feature.

121.    As a direct, proximate, and foreseeable result of Defendants' unlawful and/or deceptive business practice, Plaintiff Pei and putative National Class or California Sub-class members have sustained an ascertainable loss and actual damages, in that they received Class Vehicles of lesser value and quality then they intended to purchase and that they were led to believe they were purchasing and/or leasing.

122.    Plaintiff Pei and the National Class and/or California Sub-class members are entitled to and do seek an order of restitution and disgorgement requiring Toyota to restore to them the additional benefits and monies that Defendants received in connection with their sale of the Class Vehicles at a greater sales price than that which would have been paid for Class Vehicles had Plaintiff Pei and National and California Sub-class members known that the Vehicles lacked the "auto on/off" feature. Plaintiff Pei and the National Class and/or California Sub-class members are also entitled to and do seek an injunction enjoining Defendants from continuing to engage in the alleged materially misleading conduct, as well as penalties for any such subsequent violations, and for such additional relief authorized under the law.

## COUNT VII

**(Violation of California's Consumers Legal Remedies Act ("CLRA"))**
**(Cal. Civ. Code 1750,** *et seq.***)**
**(By Plaintiff Pei on behalf of the National Class, and/or on behalf of the California Sub-class)**

123.    Plaintiff Pei hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

124.    Plaintiff Pei asserts this cause of action on behalf of himself and the National Class or alternatively, on behalf of the California Sub-class.

125.    Defendants violated the following provisions of Cal. Civ. Code §1750 *et. seq.*:

(a)    Cal. Civ. Code §1770(a)(5): by representing that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

complaint.doc

1            (b)     Cal. Civ. Code §1770(a)(7): by representing that its goods or services are

2  of a particular standard, quality, or grade, if they are of another;

3            (c)     Cal. Civ. Code §1770(a)(9): by advertising goods and services with the

4  intent not to sell them as advertised;

5       126.    Defendants undertook the previously alleged acts and practices in transactions

6  intended to result, or which did result, in the sale and/or lease of its vehicles to customers for

7  personal, family, or household use. Plaintiff Pei and the National or California Sub-class

8  members relied upon Defendants' representations regarding the auto "on/off" feature in

9  choosing to purchase and/or lease their Class Vehicles and pay the purchase and/or lease price

10  that they did. Moreover, had Plaintiffs and Class Members known that the material auto

11  "on/off" feature was not included in Class Vehicles, they would not have purchased and/or

12  leased such vehicles or would have paid a lower purchase/lease price.

13       127.    Defendant has therefore violated the Consumers Legal Remedies Act, and

14  Plaintiff Pei prays for compensatory equitable and injunctive relief authorized by that Act, and

15  for such additional relief as is set forth below. Plaintiff Pei currently still owns his Class

16  Vehicle.

17       128.    Pursuant to Cal. Civ. Code §1782, in conjunction with the filing of this action,

18  Plaintiff Pei's counsel notified Defendants by separate letter of the particular violations of the

19  CLRA and demanded that Defendants remedy or agree to remedy the non-conforming Class

20  Vehicles and violations described herein.  As Defendants have failed to do so, and more than

21  thirty (30) days have passed, Plaintiff Pei prays for compensatory and monetary damages to

22  which Plaintiff Pei and the National Class or the California Subclass are entitled.

23  

**COUNT VIII**

24  **(Violation of California's Song-Beverly Consumer Warranty Act)**
**(Cal. Civ. Code 1790, *et seq*.)**

25  **(By Plaintiff Pei on behalf of the National Class or, alternatively, the California Sub-class)**

26       129.    Plaintiff Pei hereby incorporates by reference the allegations contained in all

27  preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

28

CLASS ACTION COMPLAINT

complaint.doc

1      130.    Plaintiff Pei asserts this cause of action on behalf of himself and the National

2  Class or, alternatively, the California Sub-class.

3      131.    As alleged above, Defendants made and then breached an express warranty with

4  Plaintiff Pei and the National Class or California Sub-class members when they delivered to the

5  National Class or California Sub-Class, Class Vehicles that did not contain the "auto on/off"

6  feature as Defendants represented, so that those Class Vehicles failed to conform to the

7  description of the vehicles that had been provided to National Class or Sub-class members.

8      132.    The Song-Beverly Consumer Warranty Act ("SBCWA") requires that

9  manufacturers of consumer goods sold in California, for which the manufacturer has made an

10  express warranty to maintain service and repair facilities (or designate independent repair or

11  service facilities), maintain those facilities reasonably close to its California consumers in order

12  to carry out the terms of those warranties and conform non-conforming goods under the

13  applicable express warranties.

14      133.    The SBCWA requires the service or repair of the goods when they do not

15  conform to applicable express warranties.  Under those circumstances, the SBCWA requires

16  that service and repair shall be commenced by the manufacturer within a reasonable time to

17  conform the goods to the applicable warranties; and unless the buyer agrees in writing to the

18  contrary, SBCWA requires that the goods be serviced or repaired to conform to the applicable

19  warranties within thirty (30) days of notice under the statute. Defendants are therefore required

20  to service or repair the Class Vehicles purchased in California to make them conform to their

21  express warranties, including making them conform so that they contain the "auto on/off"

22  headlight feature.

23      134.    On or about August 24, 2017, Plaintiff Pei sent a letter to Toyota Motor Sales

24  formally demanding that Defendants "offer to make all owners and lessees whole by fully

25  installing the automatic on/off headlight feature promised to consumers free of charge . . . [and]

26  pay Mr. Pei and owners and lessees for any loss of value and loss of use of their vehicles as a

27  result of the missing feature and its repair."  As Defendants have indicated their refusal to do so

28  in their letter to Plaintiffs' counsel dated October 10, 2017, Plaintiff Pei now seeks

-31-

complaint.doc

1  compensatory and monetary damages pursuant to the SBCWA to which Plaintiff Pei and the

2  National Class or California Sub-class members are entitled. Defendants have refused to service

3  or repair the Class Vehicles purchased in California or to install the promised "auto on/off"

4  feature on the Class' or Sub-Class members' Class Vehicles to make them conform to their

5  applicable express warranty.

6       135.    Under the SBCWA, "if a manufacturer or its representative [in California] does

7  not service or repair the goods to conform to the applicable express warranties after a reasonable

8  number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an

9  amount equal to the purchase price paid by the buyer, less that amount directly attributable to

10  use by the buyer prior to the discovery of the nonconformity."  Because Defendants have failed

11  to service or repair Class Vehicles purchased in California to conform to their express warranty

12  regarding the "auto on/off" feature, they are obligated to either replace the Class Vehicles with

13  conforming Rav 4 models, or reimburse members of the National Class or alternatively, the

14  California Sub-class, for amount equal to the purchase price paid by National Class or Sub-class

15  members, less that amount directly attributable to their use by National Class or Sub-class

16  members prior to the discovery of the nonconformity.

17       136.    Alternatively, if Defendants are unable to service or repair the Class Vehicles to

18  conform to the applicable express warranty after a reasonable number of attempts, Defendants

19  are obligated under the SBCWA to either promptly replace the Class Vehicles with new

20  vehicles substantially identical to the respective kind of vehicles being replaced to that conform

21  to the warranty and/or representations, or to promptly make restitution to the members of the

22  National Class or, alternatively, the California Sub-class in an amount equal to the actual price

23  that the National Class or California Sub-class members paid for their respective Class Vehicles,

24  including any the statutorily listed charges. And under the SBCWA, individual Class or Sub-

25  class members may elect restitution in lieu of replacement, but in no event, are required by the

26  manufacturer to accept a replacement vehicle.

27

28

CLASS ACTION COMPLAINT

complaint.doc

## COUNT IX

**(Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law)**
**(73 P.S. 201-1, *et seq*.) – Deceptive Acts**
**(By Plaintiff Ferrara on behalf of the Pennsylvania Sub-class)**

137.  Plaintiff Ferrara hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

138.  Plaintiff Ferrara asserts this cause of action on behalf of herself and the Pennsylvania Sub-class.

139.  Defendants' practices, acts, policies and courses of conduct, as described above, were intended to induce, and did induce, Plaintiff Ferrara and the Pennsylvania Sub-class members to purchase and/or lease the Class Vehicles.

140.  Defendants sold and/or leased the Class Vehicles knowingly misrepresenting and/or omitting the material fact that the vehicles did not contain the "auto on/off" feature as they had represented.

141.  Defendants' practices, acts, policies and course of conduct are actionable in that:

a.  Defendants actively and knowingly misrepresented to Plaintiff Ferrara and the Pennsylvania Sub-class members at the time of their purchase or lease the quality and exterior features to be included in Class Vehicles;

b.  Defendants failed to give adequate warnings and notices in the Brochure of the exterior features that would be standard for the Class Vehicles;

c.  Defendants' marketing, advertising and promotion of the Class Vehicles was deceptive because it misled consumers, including Pennsylvania Sub-class members, regarding the material features that would be included in standard versions of Class Vehicles.

d.  Defendants, through its agents and representatives, admitted to some Class and Pennsylvania Sub-class members by its words and action, that the "auto on/off" feature should have been included in Class Vehicles as advertised and represented, and that its advertising was deceptive and incorrect.  Defendant also maintained a secret warranty practice for some, providing some purchasers with compensation for the missing "auto on/off" feature,

complaint.doc

while denying and/or failing to notify others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

142.    Defendants' aforementioned conduct is and was deceptive, false, and fraudulent, and constitutes an unconscionable commercial practice in that Defendants have, by the use of false or deceptive statements and/or marketing materials, misrepresented the true nature of the Class Vehicles' headlight system.

143.    Under Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law (73 P.S. 201-1, *et seq.*; also referred to herein below as "UTPCPL"), "unfair methods of competition" and "unfair or deceptive acts or practices" include the following acts or omissions:

> (v)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (ix) Advertising goods or services with intent not to sell them as advertised;

> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

144.    In addition, under 37 Pa. Code §301.2(6) vehicles dealers are prohibited from misrepresenting facts in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading. A vehicle dealer is also prohibited from failing to make material disclosures about a car's status or qualities.  Such acts are considered "unfair methods of competition and unfair or deceptive acts or practices" under Pennsylvania law.

145.    In making the alleged misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false and/or misleading,

CLASS ACTION COMPLAINT

complaint.doc

1  Defendants have misrepresented and/or knowingly and intentionally concealed material facts

2  and breached their duty not to do so.

3     146.    Plaintiff Ferrara and Pennsylvania Sub-class members were deceived by and

4  relied upon Defendants' affirmative misrepresentations, including but not limited to, the

5  misrepresentations contained in the Brochure about the vehicle's exterior features.

6     147.    There is a causal nexus between Defendants' deceptive and unconscionable

7  commercial practices and Plaintiff Ferrara's and the Pennsylvania Sub-class members' damage

8  as alleged herein, and therefore, Plaintiff Ferrara and the Pennsylvania Sub-class members are

9  entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the

10  extent permitted by law, including class action rules, in an amount to be proven at trial.

11     148.    As a result, Plaintiff Ferrara and the Pennsylvania Sub-class members seek

12  restitution of all monies that Defendants received as a result of selling or leasing the Class

13  Vehicles to them without the "auto on/off" feature.  Plaintiff Ferrara is informed and believes

14  that the amount of said restitution is unknown at this time, but she will seek relief to amend this

15  Complaint at the time of trial, when the same has been ascertained.

16     149.    In addition, Plaintiff Ferrara and the Pennsylvania Sub-class members seek

17  punitive damages and reasonable attorneys' fees.  Plaintiff Ferrara and the Pennsylvania Sub-

18  class also seek a declaration that the Class Vehicles lack the advertised "auto on/off" feature,

19  and that owners and lessees of the Class Vehicles be compensated, refunded, and/or have their

20  vehicles replaced with others containing the represented feature.

21                              **COUNT X**

22        **(Violation of Pennsylvania's Trade Practices and Consumer Protection Law)**
          **(73 P.S. 201-1, *et seq*.) – Unfair Conduct Claim**
23        **(By Plaintiff Ferrara on behalf of the Pennsylvania Sub-class)**

24     150.    Plaintiff Ferrara hereby incorporates by reference the allegations contained in all

25  preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

26     151.    Plaintiff Ferrara asserts this cause of action on behalf of herself and the

27  Pennsylvania Sub-class under the "unfair conduct" branch of the Pennsylvania UTPCPL.

28

complaint.doc

152.    Defendants' practices, acts, policies and course of conduct, as described above, constitute unfair conduct because they (1) offend public policy; (2) are immoral, unethical, oppressive and unscrupulous; and (3) cause substantial injury to consumers in violation of the Pa. UTPCPL.

153.    Defendants concealed, suppressed and omitted to Plaintiff Ferrara and Pennsylvania Sub-Class members at the time of purchase or lease, that the Class Vehicles did not contain the "auto on/off" feature, despite the Brochure's representations to the contrary.

154.    Even though Defendants had actual knowledge that the Class Vehicles being manufactured and sold and/or leased to Pennsylvania Sub-Class members did not contain the promised "auto on/off" feature, they did not correct the manufacturing or fairly disclose the feature's absence to Pennsylvania Sub-Class members and the consumer public, and further concealed this knowledge about Class Vehicles to Pennsylvania Sub-Class members and the consumer public.

155.    Defendants' acts of commission and omission were material.

156.    Defendants' conduct was in the course of conduct involving trade or commerce.

157.    Defendants' acts of commission and omission caused Plaintiff Ferrara and Pennsylvania Sub-Class members to suffer ascertainable losses of money and property in that they were misled into expending additional sums of money at its dealerships and elsewhere in the purchase or lease of the Class Vehicles after having been misled into believing that such vehicles contained the promised "auto on/off feature." Defendants did so despite having prior knowledge of the missing feature at the time they placed said vehicles into the stream of commerce.  Plaintiff Ferrara also seeks a declaration that Class Vehicles lack the promised "auto on/off" feature, and owners and lessees of the Class Vehicles must be compensated, refunded, and/or have their vehicles replaced with others containing the represented feature.

CLASS ACTION COMPLAINT

complaint.doc

**COUNT XI**

**(Unjust Enrichment)**
**(By Plaintiff Pei on behalf of the National Class, or alternatively, on behalf of the**
**California Sub-class; Plaintiff Zheng-Lawson on behalf of the New York Sub-class; and**
**Plaintiff Ferrara on behalf of the Pennsylvania Sub-class)**

158.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

159.    Plaintiff Pei asserts this claim on behalf of the National Class, or alternatively, on behalf of the California Sub-class; Plaintiff Zheng-Lawson asserts this claim on behalf of the New York Sub-class; and Plaintiff Ferrara asserts this claim on behalf of the Pennsylvania Sub-class.

160.    Defendants distributed the Class Vehicles into the stream of commerce nationally, and in California, New York and Pennsylvania, with the knowledge that these vehicles would be purchased or leased by consumers based on a reasonable expectation that they would contain the standard "auto on/off" feature as Defendants represented.

161.    Defendants received funds for the sale of the Class Vehicles which were sold under Defendants' exclusive brand name and based on Defendants' reputation and representations, and sold the Class Vehicles with the intention of receiving and keeping such funds and revenues from the sale of the Class Vehicles.

162.    Defendants distributed the Class Vehicles with the knowledge that they were not equipped with the "auto on/off" feature.

163.    Defendants received an economic benefit at the expense of the Class and Sub-class members, who received vehicles of lesser value than as represented at the time of sale and/or lease.

164.    In these circumstances, principles of equity and good conscience make it unjust for Defendants to retain the benefit conferred on them by the Class and Sub-class members and should be required to compensate Plaintiffs and Class and Sub-class members for these benefits.

CLASS ACTION COMPLAINT

complaint.doc

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendants as follows:

A.    For an order certifying the Class and/or Sub-classes, appointing Plaintiffs as representatives of the Class or their respective Sub-classes, and appointing the law firms representing Plaintiffs as counsel for the Class and Sub-classes;

B.    For a declaration that the remedial work necessary to correct and install the missing "auto on/off" feature is covered under the Express Warranty provided by Defendants which became part of the basis of the bargain;

C.    For compensatory damages sustained by Plaintiffs and Class and/or Sub-class members;

D.    For an injunction preventing Defendants from continuing to sell the Class Vehicles pursuant to false and deceptive advertising, and causing them to take steps to correct such advertising;

E.    For compensatory damages and/or the restitution or refund of all funds acquired by Defendants from Plaintiffs and Class or Sub-class members as a result of Defendants' unlawful, unfair, fraudulent, deceptive and unconscionable practices described above under the Consumer Protection Statutes of New York, California, and Pennsylvania, including actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial;

F.    For the repair and/or replacement of the Class Vehicles for members of the National Class, or alternatively, the California Subclass, making their Class Vehicles conform to Defendants' express warranties and/or restitution to fully compensate them for their damages pursuant to the SBCWA;

G.    Trebling of damages suffered by the Class and/or appropriate Sub-class, or other punitive damages;

H.    Payment of costs and expenses of suit herein incurred;

I.    Both pre-and post-judgment interest on any amounts awarded;

complaint.doc

1   J.       Payment of reasonable attorneys' fees and expert fees; and

2   K.       Such other and further relief as the Court may deem proper.

3                          <u>**DEMAND FOR JURY TRIAL**</u>

4   Plaintiffs hereby demand a trial by jury on all claims so triable.

5

6   DATED:  November 15, 2017              **GREEN & NOBLIN, P.C.**

7

8                                         By:    /s/ Robert S. Green

9                                                Robert S. Green

10                                        James Robert Noblin
                                          2200 Larkspur Landing Circle, Suite 101
11                                        Larkspur, CA  94939
                                          Telephone: (415) 477-6700
12                                        Facsimile: (415) 477-6710

13                                        Gary S. Graifman, Esq.
14                                        Jay I. Brody, Esq.
                                          **KANTROWITZ, GOLDHAMER**
15                                        **& GRAIFMAN, P.C.**
                                          747 Chestnut Ridge Road
16                                        Chestnut Ridge, New York 10977
                                          Tel: (845) 356-2570
17                                        Fax: (845) 356-4335

18
                                          Lynda J. Grant, Esq.
19                                        **THE GRANT LAW FIRM, PLLC**
                                          521 Fifth Avenue, 17th Floor
20                                        New York, NY 10175
                                          Tel: (212) 292-4441
21                                        Fax: (212) 292-4442

22
                                          *Attorneys for Plaintiffs*
23                                        *and the Proposed Class or Sub-classes*

24

25

26

27

28

CLASS ACTION COMPLAINT

complaint.doc