Robert S. Green (State Bar No. 136183)
James Robert Noblin (State Bar No. 114442)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone: (415) 477-6700
Facsimile:  (415) 477-6710
Email:  gnecf@classcounsel.com

[Additional Counsel appear on signature line]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAN MEI ZHENG-LAWSON, YUANTENG PEI, and JOANNE E. FERRARA, on behalf of themselves and all others similarly situated, | Case No.:  5:17-cv-06591-BLF |
| | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | **DEMAND FOR JURY TRIAL** |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR SALES U.S.A., INC., | |
| Defendants. | |

Plaintiffs, Yan Mei Zheng-Lawson ("Zheng-Lawson"), Yuanteng Pei ("Pei"), and Joanne E. Ferrara ("Ferrara", collectively with Zheng-Lawson and Pei, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their undersigned counsel, allege, against Defendants Toyota Motor Corporation ("Toyota Motor" or the "Company"), Toyota Motor North America, Inc. ("Toyota North America"), and Toyota Motor Sales U.S.A., Inc. ("Toyota Sales", collectively, with Toyota Motor and Toyota North America, "Toyota" or "Defendants"),

1

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

the following upon personal knowledge as to their own acts, and upon information and belief, based on the investigation conducted by their counsel, as to all other allegations:

## INTRODUCTION

1.      Plaintiffs bring this class action complaint ("Complaint") on behalf of themselves and all other persons who purchased and/or leased a model year ("MY") 2016 Toyota RAV4 model XLE, XLE Hybrid or SE vehicle ("RAV4" or "Class Vehicle") that was not equipped with an "auto on/off" feature (the "auto on/off feature") for the vehicle's headlights (collective purchasers and lessees, "Class Members", the "Class"), based upon false and deceptive advertising by Toyota and in breach of its express warranty.

2.      Alternatively, each Plaintiff asserts claims on behalf of a subclass consisting of the citizens of California, New York and Pennsylvania respectively, who purchased Class Vehicles that were not equipped with the "auto on/off" feature, based upon false and deceptive advertising by Toyota Motor, and its agents, Toyota North America and Toyota Sales.

3.      Plaintiffs and Class Members purchased their 2016 RAV4 vehicles based upon representations by Toyota Sales, as agent for Toyota Motor and Toyota Motor North America, that those vehicles had a mechanism and were wired such that the vehicle's headlights would automatically turn on and off and adjust to ensure proper lighting given the outside lighting conditions in which they were driving.

4.      In addition to the added luxury and convenience provided by this feature, the "auto on/off" headlight setting is necessary to ensure the safety of the driver, eliminating the need for the driver to consciously turn on his headlights given the outside lighting conditions. With regard to both daytime and nighttime vehicle light settings, the "auto on/off" feature ensures proper lighting and vehicle visibility even under circumstances where the driver of the Class Vehicle forgets or is unable, due to a sudden change of the lighting environment (e.g., entrance into a dark tunnel), to turn the switch to the proper lighting position given the darker or changed outside environment. Moreover, because drivers must affirmatively turn on the Class Vehicle's daytime running lights ("DRL") without any clear indication that without doing so, their car is in a less safe setting, Defendants have placed RAV4 drivers and in a confusing and

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

unsafe position and created an unrealistic expectation that they do not have to take those steps in order to create a proper lighted environment.

5.      Because of its automatic adjustment to the proper light setting, the "auto on/off" feature allows a driver of a Class Vehicle to experience optimal lighting conditions, durability, fuel economy, and vehicle visibility to other drivers on the road without requiring him to manually turn on or adjust vehicle lights to any specific light setting.

6.      Plaintiffs were misled by Defendants' advertising literature, among other things, that represented that the "auto on/off" mechanisms was in fact a feature in Class Vehicles, and thereby were caused to purchase a higher end RAV4 model, the Class Vehicles, because of Defendants' misrepresentations that such Vehicles contained that feature.

7.      Specific examples of the misrepresentations complained of herein are in the brochures which Plaintiffs were exposed to and read.  The 2016 RAV4 brochures that were available at Toyota dealerships and on the internet, and reviewed by the Plaintiffs, were false and deceptive and resulted in an express warranty.  By way of example, a copy of the hard copy version of the brochure that was given to Plaintiff Ferrara at a Toyota dealership is attached as Exhibit A and incorporated herein.  A copy of Defendants' online brochure which contains the same list of bullet point "Features" for the Class Vehicles that were viewed by Plaintiffs Zheng-Lawson and Pei and that were in the hard copy version of the brochure is attached as Exhibit B. The express warranty and the misleading statements uniformly contained in Defendants' brochures provide that 2016 RAV4 XLE and XLE Hybrid models were equipped with the following features in addition to or replacement of the exterior features offered on the 2016 RAV4 LE model:

- ***Halogen projector-beam headlights with auto on/off feature***
- Integrated fog lights
- Silver-highlighted lower grille
- 17-in. 5-spoke alloy wheels with P225/65R17 tires
- Power tilt/slide moonroof with sunshade

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

• Height-adjustable power liftgate with jam protection

Exh. A at Pltf. 876-77; Exh. B at Pltf. 101 and 103 (Emphasis added).

8.      The brochures expressly and uniformly warrantied that the XLE and XLE Hybrid models were equipped with "halogen projector beam headlights with auto on/off feature" as standard equipment.  Those Class Vehicles, however, were not equipped with the auto on/off headlight feature as standard equipment.

9.      Similarly, the brochures expressly warrantied, and misleadingly provide that 2016 RAV4 SE models contain the following features in addition to or in replacement of the exterior features offered on the 2016 RAV4 XLE models (emphasis added):

• ***LED projector-beam headlights with auto on/off feature***

• LED Daytime Running Lights (DRL)

• 18-in. 5-spoke sport alloy wheels with P235/55R18 tires

• Black-painted heated power outside mirrors with turn signal indicators and folding feature

Exh. A at Pltf. 876; Exh. B at Pltf. 101 (Emphasis added).

10.     In other words, the brochures expressly warrantied that SE models were equipped with "LED projector beam headlights with auto on/off feature" as standard equipment when those Class Vehicles were not equipped with those features which could only be obtained as part of an option package.

11.     The Toyota Defendants jointly were responsible for creating, marketing, publishing and disseminating uniform marketing and advertising materials, of which the brochures were a part of, that misrepresented that the Class Vehicles had the auto on/off feature.

12.     As detailed below, standard versions of the MY 2016 Toyota RAV4, XLE (and XLE Hybrid) and SE models, were not equipped with the automatic on/off feature or setting for the vehicle's lights as marketed, advertised, and/or represented by Defendants.

13.     All Class Vehicles were manufactured and sold to consumers missing the same "auto on/off" feature, whether in regard to the Halogen or LED projector-beam headlights, and

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1  all Class Vehicles were similarly subject to the same misrepresentations on this matter in the

2  brochures.

3      14.  Toyota's advertisements concerning the Class Vehicles were false and

4  misleading, and were directed at inducing and did cause Plaintiffs and Class Members to

5  purchase the Class Vehicles at higher prices than they would otherwise have paid and/or to have

6  purchased higher end models that they believed contained this feature in order to obtain the

7  safety and luxury that such feature presented.

8      15.  Moreover, Toyota Sales, Toyota Motor and Toyota North America knew that

9  Class Vehicles sold and leased in the United States did not contain the "auto on/off" feature as

10  part of the standard package of features that they had marketed, advertised and/or represented,

11  and that the brochures and other advertising material were false and deceptive. Despite this

12  knowledge, they nonetheless continued to actively misrepresent the Class Vehicles' quality and

13  features in the brochures and/or other advertising materials. As evidence of their knowledge,

14  Defendants would offer to pay certain owners of Class Vehicles who complained vociferously

15  about the absence of the feature an amount in the range of $500, thus acknowledging their

16  understanding that there was a value to the absence of this feature.

17      16.  Despite knowing and admitting that their advertising was false, Defendants

18  refused and failed to issue any recalls to add the promised feature, fix or add the feature when

19  requested by owners and/or lessees, or to uniformly reimburse Class Members, thereby causing

20  them damage.

21      17.  Defendants' acts, including their false and deceptive marketing, were directed at

22  consumers, and were part of a warranty made by Defendants to Plaintiffs and Class Members

23  that the Class Vehicles would conform to Defendants' advertising and representations and were

24  part of the bargain and agreement made by Defendants with Plaintiffs and Class Members.

25                    **PARTIES**

26      18.  Plaintiffs bring this action in their individual capacities and on behalf of all

27  others similarly situated, as described herein.

28  ///

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

19.     Plaintiff Zheng-Lawson at all relevant times is and was a resident of the Richmond Hill, New York.  In or about May 2016, Plaintiff Zheng-Lawson purchased a 2016 RAV4 from a Toyota dealership in Greenvale, New York.

20.     Plaintiff Pei, at all relevant times is and was a resident of Morgan Hill, California.  In or about March 2016, Plaintiff Pei purchased a 2016 RAV4 from a Toyota dealership in San Jose, California.

21.     Plaintiff Ferrara at all relevant times is and was a resident of Langhorne, Pennsylvania.  In or about August 2016, Plaintiff Ferrara purchased a 2016 RAV4 from a Toyota dealership in Langhorne, Pennsylvania.

22.     At the time of their respective purchases, Plaintiff Zheng-Lawson was a citizen of the State of New York, Plaintiff Pei was a citizen of California, and Plaintiff Ferrara was a citizen of Pennsylvania. Upon their respective purchases of a Class Vehicle, each vehicle was registered and insured in its respective state of purchase.

23.     Defendant Toyota Motor Corporation is a foreign corporation with its headquarters in Toyota, Aichi, Japan. It is a limited liability, joint stock company incorporated in Japan, that was formed through the merger of Toyota Motor and Toyota Sales.  As of March 31, 2016, Toyota operated through 548 consolidated subsidiaries, and 200 affiliated companies. It operates through a global hierarchal structure in which much of the decision making is centralized and made by Toyota Motor.  It is first divided into geographical regions, such as Toyota North America, where each regional head reports to the Company's main headquarters. These regional divisions, such as Toyota North America, are then divided into functions, including Toyota Sales, which is responsible for the marketing and advertising of the Class Vehicles, among other things. Through its agents Toyota North America, a wholly owned subsidiary of Toyota Motor, and Toyota Sales, a division and wholly owned subsidiary of Toyota North America, Toyota Motor engaged in continuous and systematic activity in the United States and, specifically, in the State of California. It trades ADRs on the New York Stock Exchange, and sells and produces over 2 million cars per year in the United States through its wholly owned subsidiaries. Toyota Motor boasts that it has had the best-selling car

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1  in the United States for the past 15 consecutive years, and sells, markets and distributes its cars,

2  including the Class Vehicles, in the United States through Toyota North America and Toyota

3  Sales.  In 2016, it sold over 350,000 RAV4 cars in the United States.

4        24.     Defendant Toyota Motor North America is a holding company for the sales,

5  manufacturing, regulatory, energy, economic research, philanthropy, and corporate advertising

6  and communications subsidiaries of Toyota Motor in the United States, and is a California

7  corporation with its principal executive office located at all relevant times in Torrance,

8  California. Toyota North America operates as a wholly owned subsidiary of Toyota Motor.  On

9  July 3, 2017, Toyota North America announced in a press release that it had sold 1,155,165

10  units in the first half of the year and that its RAV4 sales "increase[d] by 24.7 percent; best-ever

11  June; best ever first half".

12  (pressroom.toyota.com/releases/toyota+motor+north+america+reports+us+sales+june+2017+fir

13  st+half.htm) viewed June 15, 2018.

14        25.     Toyota North America's president is Akio Toyoda, who is also the President of

15  Toyota Motor Corporation.  Toyota North America's various divisions are all located in one

16  headquarters and campus of over 4,000 employees and overseen by one chief executive officer,

17  who reports directly to Toyota Motor.

18        26.     Defendant Toyota Sales is a California corporation with its principal executive

19  office located within the Toyota North America campus, which at all relevant times was in

20  Torrance, California. Toyota Sales is a wholly owned subsidiary of Toyota North America,

21  which in turn, is a wholly owned subsidiary of Toyota Motor.

22        27.     Toyota Sales is responsible for the marketing, advertising and sales of the Class

23  Vehicles, including all versions of the brochures, communications with dealers about the Class

24  Vehicles, and the maintenance and service of and complaints about the automatic on/off

25  headlight feature in the Class Vehicles. It is also the warrantor for the limited warranties offered

26  by Toyota against defects in materials or workmanship which apply to all 2016 model year

27  RAV4 vehicles distributed by Toyota that were originally sold by authorized Toyota dealers in

28

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1   the United States and were operated in the United States, its territories or Canada. That

2   warranty's coverage is automatically transferred at no cost to subsequent vehicle owners.

3        28.    Toyota Motor has had its United States headquarters in Torrance, California

4   since 1967, and maintained its U.S. headquarters there while selling Class Vehicles. The

5   brochures were available for download on the Toyota Global Website at http://www.toyota-

6   global.com/select_region, such that its statements and advertising emanated from TMS or

7   Toyota Global.

8        29.    According to the website, www.toyota.com, Toyota maintains 18 offices in

9   California, 4 engineering and manufacturing facilities, 5 design and research facilities and 172

10   dealerships.  (www.toyota.com/usa/operations/map.html, viewed June 15, 2018).  The Toyota

11   website does not identify any of these operations as a part of any subsidiary or affiliate, rather

12   referring to the generic "Toyota."  Toyota imports it vehicles at the ports in Benicia and Long

13   Beach in California.

14   **The Role of Each of the Defendants**

15        30.    Toyota Motor designed and manufactured the Class Vehicles, and imported them

16   through California, into the United States, from Japan.  Upon information and belief, Toyota

17   Motor was responsible for the absence of the on/off feature as standard in the Class Vehicles.

18   Toyota North America acted as an agent for Toyota Motor, and oversaw the activities of Toyota

19   Sales, which was the entity that was responsible for the advertising and marketing of the Class

20   Vehicles, communications with the dealers concerning the Class Vehicles, and the complaints

21   and maintenance/service issues with the Class Vehicles.  Toyota Sales and Toyota North

22   America at all times relevant hereto, acted as the authorized agents, representatives, servants,

23   employees, and/or alter egos of Toyota Motor, which exercised significant control over them

24   through its hierarchical structure and its reporting up the lines to Toyota Motor.  Alternatively,

25   Toyota Sales, at all times relevant hereto, acted as the authorized agent, representative, servant,

26   employee, and/or alter ego of Toyota North America, which exercised significant control over

27   it. According to a July 12, 2010 article in *Fortune* that included quotes from Jim Lentz

28   ("Lentz"), the current CEO of Toyota North America and a managing officer of Toyota Motor,

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1   and a former CEO of Toyota Motor Sales, Toyota kept its US operations in a functional

2   structure that forced each to report back to Toyota Motor in Japan.

3           31.     Toyota Motor advertises its products under the brand name Toyota, and does not

4   distinguish in its advertising or in any version of the brochures at issue, between Toyota Motor,

5   Toyota North America and Toyota Sales, the latter two of which act as Toyota Motor's alter

6   egos, and authorized agents in the United States, and either directly, as in the case of Toyota

7   North America, or indirectly, as in the case of Toyota Sales, report to Toyota Motor.

8   Consequently, to the extent that this Complaint refers to Defendants as Toyota or the

9   Defendants, it is because Toyota Sales and Toyota North America acted as agents and/or alter

10  egos of Toyota Motor, and were wholly owned subsidiaries that were required to report back to

11  Toyota Motor.  These Defendants together distributed, marketed and sold the Class Vehicles

12  under their Toyota brand name throughout the United States.  RAV4s are advertised,

13  distributed, and sold through dealers throughout the United States, including dealers in New

14  York, California, and Pennsylvania. These locations were, and are, maintained by Defendants'

15  dealers.  Defendants and their agents sold Class Vehicles to the Plaintiffs at the respective

16  dealerships noted above. Plaintiffs further allege that the three related Defendants made the

17  misrepresentations jointly.

18          32.     Toyota is a major client of Saatchi & Saatchi LA, located in Torrance, California.

19  According to the website www.wearesaatchi.com;works/toyota/#, viewed June 15, 2018,

20  Toyota.com "is Toyota's primary digital destination," and the Saatchi teams "created a

21  sustainable platform" for that website, where the brochures, such as Exhibit B, are displayed.

22  At the time of the events described in this Complaint, the Toyota personnel responsible for

23  customer communications were located at Toyota Sales' California headquarters, and the core

24  decisions about the language in the brochures would have been made and implemented from

25  there.  Additionally, the Toyota personnel responsible for managing Toyota's customer service

26  division were located in Torrance, California.  At that time, the "Customer Experience Center"

27  directed customers to call 1-800-331-4331, which was a landline in Torrance, California, and to

28  fax to 310-468-7814, which included the area code for Torrance, California.  The warranty

9

provided with Class Vehicles states that the "warrantor for these limited warranties is Toyota Motor Sales, U.S.A., Inc. ('Toyota'), 19001 South Western Avenue, Torrance, Calfornia 90509-2991, a California corporation."

## JURISDICTION AND VENUE

33.     This Court may assert diversity jurisdiction of this matter under the Class Action Fairness Act, 28 U.S.C.S. § 1332(d), in that at least two of the named Plaintiffs are citizens of states different from the Defendants, one of whom is foreign, and the aggregate amount in controversy for all Class Members exceeds $5,000,000, exclusive of interest and costs.

34.     This Court may exercise personal jurisdiction over Defendants because either they are incorporated in the state of California or own subsidiaries that are incorporated in the state of California, and these subsidiaries act as agents and/or alter egos.  Defendants maintain sufficient minimum contacts with the United States and the State of California, making each Defendant at home in California.  In addition, each Defendant intentionally avails itself of the markets within California for the promotion, sale, marketing, and distribution of its vehicles, including the Class Vehicles, and the claims in this action arise from their availment of such markets in California.  The exercise of jurisdiction would comport with notions of fair play and substantial justice. Further, certain of the acts complained of occurred in California, thus rendering jurisdiction by this Court proper. Jurisdiction comports with Cal. Code Civ. Pro. §410.10.

35.     Venue is proper in this District under 28 U.S.C. § 1391 because the Defendants transact business in this District, and a substantial part of the events and/or misrepresentations giving rise to Plaintiff Pei's and the proposed nationwide ("Nationwide") and California Sub-class members' claims occurred in this District, including the dissemination of false advertising and the sale of a Class Vehicle to Plaintiff Pei.  This District also has a distinct nexus to Plaintiff Pei and Class Members who reside in and purchased Class Vehicles in this jurisdiction.  Accordingly, a substantial amount of the alleged harm occurred here, and the revenue and profits Toyota received from sales of the Class Vehicles were earned in this District, thereby subjecting Toyota to *in personam* jurisdiction and venue in this District.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

36.     Toyota has also marketed and sold vehicles in this District, as well as maintained sales and service authorized dealers in the District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

37.     Defendant Toyota Motor designed and manufactured the Class Vehicles in Japan. Toyota North America and Toyota Sales marketed, sold and warrantied the Class Vehicles throughout the United States under the Toyota brand name.

**The Automatic On/Off Feature is a Safety Feature**

38.     The 2016 RAV4 models that are the subject of this Complaint are the 2016 MY XLE (and XLE Hybrid) and SE models. These Class Vehicles were marketed by Toyota North America and Toyota Sales as safe and reliable and as containing a number of desirable interior and exterior standard vehicle features that provided drivers with additional convenience and safety. Plaintiffs and Class Members paid additional fees for Class Vehicles with these features.

39.     One of those features was an automatic on/off feature that was supposed to enable the vehicles' projector beam headlights to automatically turn on and off in accordance with outside lighting conditions.  This feature increases the safety of the vehicle by allowing the headlights to turn on without a conscious action by the driver, and is particularly useful when a vehicle experiences a sudden change in lighting conditions, such as when the vehicle is driven through a tunnel.

40.     The absence of an "auto on/off" feature is particularly dangerous at night or in dark environments when a driver forgets or is unable to change the vehicle headlight switch setting to full headlights (from the Daytime Running Lights ("DRLs") or no lights at all), diminishing a driver's ability to see and the vehicle's visibility to other drivers on the road, thereby creating an unsafe and dangerous driving condition. Moreover, drivers of Class Vehicles without the "auto on/off" feature who are driving with their DRLs may fail to realize the vehicle's full headlights are not on, and therefore neglect to adjust the headlight switch setting at dusk or in the dark.

41.     During daytime travel, the "auto on/off" feature is particularly useful as drivers of Class Vehicles periodically need to change headlight settings from "DRL" to full

11

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1  "headlights" when they enter dark tunnels or encounter stormy conditions.  The "auto on/off"

2  feature makes the appropriate headlight setting adjustments obviating the need for the driver to

3  do so and losing focus on the road.

4      42.      Without the "auto on/off" feature, daytime drivers of Class Vehicles must

5  consciously change the vehicle headlight switch setting to "DRL" from the "off" setting, and, if

6  they do not, lose out on the added safety benefits and visibility which DRLs offer.  Moreover,

7  drivers of Class Vehicles who leave their vehicle headlight switch setting at full headlights at all

8  times lose out on the greater durability and improved fuel economy which the DRL setting

9  offers drivers in environments with more light.

10  **The Reasons Why Defendants' Statements Were Deceptive**

11      43.      Commencing at some point in 2015, about the time that the Class Vehicles

12  became available for purchase, Toyota North America, through Toyota Sales, engaged in

13  misleading sales, advertising and marketing efforts, including dissemination of the misleading

14  brochures concerning the Class Vehicles, representing that all Class Vehicles were equipped

15  with the automatic on/off feature.

16      44.      Specifically, this advertising and marketing about the Class Vehicles' features,

17  including the brochures, listed the "projector-beam headlights with auto on/off feature" as one

18  of the "Exterior Features" included in the XLE,  XLE Hybrid, SE,  Limited, and Limited Hybrid

19  model RAV4s. XLE models were represented to be equipped with "Halogen projector-beam

20  headlights with auto on/off feature" and SE and Limited models were represented to be

21  equipped with "LED projector-beam headlights with auto on/off feature."

22      45.      These representations were particularly important as Toyota generally markets

23  RAV4 XLE, SE, and Limited models as higher end versions of the RAV4, because they contain

24  additional or enhanced features beyond those available in the more basic RAV4 model LE. For

25  instance, the brochures note that the basic RAV4 model contains only "projector-beam

26  headlights with auto-off feature" – but not the "auto on/off" feature that the brochures expressly

27  identify in the XLE, SE, and Limited models. *Id.*

28  ///

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

46.     In fact, the brochures specifically lists a number of "Options" for model XLE, XLE Hybrid, and SE RAV4s, but do not include the "auto on/off" feature in that list.  Exh. A at Pltf. 876-77; Exh. B at Pltf. 101 and 103. The "auto on/off" feature is instead listed under the list of standard "Exterior Features."  Thus, these representations specifically misrepresented the safety and luxury of the Class Vehicles by representing that they were equipped with certain features, *i.e.* the "auto on/off" headlight feature, when such Vehicles were never manufactured for the U.S. market with those features, and thus were never were equipped with those features as standard.

47.     In fact, the only means for obtaining a Class Vehicle that was equipped with such a feature was to specifically order and pay more for that feature as part of an options package.

48.     However, by listing the "auto on/off" feature as an "Exterior Feature," along with other standard features included in each respective RAV4 model, the brochures misled Plaintiffs and Class members into believing that this auto on/off headlight feature was standard, and thus that it would be included as a standard feature in  the Class Vehicle that they purchased. No indication of any requirement to order and pay more for an options package was made on the page with the listed features in the brochures.

49.     Thus, after reviewing these representations in the brochures, a reasonable consumer seeking to purchase a vehicle would be deceived into believing that all 2016 XLE, XLE Hybrid, and SE RAV4 models came equipped with the "auto on/off" feature as a standard feature and would be led into paying more for that feature by buying a higher end model RAV4 for the increased safety and luxury that such a feature would afford them.

50.     Standard versions of 2016 XLE, XLE Hybrid, and SE RAV4 models did not actually come equipped with the "auto on/off" projector-beam headlights as a standard feature as indicated in the misleading marketing and advertising, including the misleading brochures. Rather, the standard versions of 2016 XLE, XLE Hybrid, and SE RAV4 vehicles were equipped with only "Type B", "Type C" or "Type D"  headlight switches which require the driver to affirmatively adjust the headlight setting by manually turning the end of the lever to the desired light setting. The "auto on/off" feature was only offered as part of an option package, for

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1    additional cost, but not as a standard feature as consumers who viewed the misleading

2    marketing and advertising, including the misleading 2016 RAV4 brochures, were led to believe.

3        51.    In the 2016 RAV4 U.S. versions *with* the "auto on/off" feature (non-Class

4    Vehicles), the vehicle contains four vehicle headlight switch settings, which include: 1) a setting

5    whereby the side marker, parking, tail, license plate, and instrument panel lights ("auxiliary

6    lights") turn on; 2) the headlights and all auxiliary lights turn on; 3) the headlights, all auxiliary

7    lights, and the daytime running lights turn on and off automatically; 4) all lights turn off ("Type

8    A").

9        52.    In the 2016 RAV4 U.S. versions *without* the "auto on/off" feature, the vehicle

10   contains three or four vehicle headlight switch settings, which include: 1) a setting whereby the

11   side marker, parking, tail, license plate, and instrument panel lights ("auxiliary lights") turn on;

12   2) the headlights and all auxiliary lights turn on; 3) the daytime running lights turn on; and 4) all

13   lights turn off ("Type B"), OR 1) a setting whereby auxiliary lights turn on; 2) the headlights

14   and all auxiliary lights turn on; and 3) the daytime running lights turn on ("Type C"), OR 1) a

15   setting whereby the headlights and all auxiliary lights turn on; 2) the daytime running lights and

16   all auxiliary lights turn on; 3) the daytime running lights turn on; and 4) all lights turn off

17   ("Type D").

18       53.    Standard 2016 XLE, XLE Hybrid, and SE RAV4 models came equipped with

19   Type B or Type C or Type D vehicle headlight switch settings, but  not the Type A switch

20   settings which contain the "auto on/off" feature.

21       54.    Only after purchasing the Class Vehicle (and paying for the automatic on/off

22   feature) did Class Members discover that this material feature was not standard and thus not

23   installed in their Class Vehicles.

24       55.    Plaintiffs and Class Members relied upon Toyota North America's and Toyota

25   Sales' representations and deceptions and were misled into believing that Class Vehicles would

26   contain the "auto on/off" feature, and thus that their Vehicles were safer and more luxurious

27   than they were.

28   ///

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

56.     Because of their misrepresentations and deception, Class Members paid a premium for their Class Vehicles for the increased safety and luxury that they believed they were obtaining and paid more than they would have paid had they known the "auto on/off" feature was not a standard feature on their respective Class Vehicle, which they could only obtain in the U.S. if they purchased a more expensive options package. Had Plaintiffs and Class Members known that the "auto on/off" feature was not included in their purchase or lease as standard, and that they could only obtain this safety and luxury feature by purchasing an options package, they would not have purchased and/or leased their Class Vehicles or would have paid significantly less for their purchase and/or lease of such RAV4 models.

57.     In purchasing and/or leasing their Class Vehicles, Plaintiffs and Class Members did not receive the full value that they were led to believe they would receive in their purchase or lease of their Class Vehicle.

**Toyota Sales and Toyota North America Knew and Admitted that Their Advertising was Deceptive, and Toyota Motor Knew it had Manufactured the Class Vehicles without the Auto On/Off Feature**

58.     Defendants were on notice that Class Vehicles provided to purchasers within the United States did not come equipped with the "auto on/off" feature contrary to what they had represented in the marketing materials. Toyota Motor had the Class Vehicles manufactured without the "auto on/off" feature as standard for the U.S. market, whereas it equipped similar RAV4 model vehicles with the feature as standard for distribution in other locations, such as Canada.  Owners of Class Vehicles filed complaints and posted complaints on various internet bulletin boards and complaint forum-type websites directly monitored by Toyota Sales, and through Toyota Sales, by Toyota North America, which complained of the missing feature. Toyota Sales, at least, actively monitors internet posts concerning Toyota vehicles and maintains a quality division to collect such data. Moreover, upon information and belief, as Defendants knew, the feature is included in Canadian versions of the Class Vehicles, indicating that Toyota Motor, in conjunction with its U.S. subsidiaries, made a conscious decision to sell the same vehicle in the United States without the represented feature, thereby tacitly admitting

15

00107775.000.docx

1    to Class Members that the misleading marketing and advertising, including the misleading

2    brochures, which touted the feature as standard, contained deceptive or false advertising.

3          59.      There are a number of active bulletin boards on the internet on which RAV4

4    owners, and owners of the Class Vehicles post complaints and have posted their efforts to

5    contact Toyota about this issue

6          60.      Postings as early as January 2016, indicate that Class Members had contacted

7    Toyota Sales and, through Toyota Sales, contacted Toyota North America, to inform Defendants

8    of the discrepancy between the misleading marketing and advertising, including the misleading

9    brochures, and the actual standard features in the Class Vehicles.  Many of those online

10    messages indicate that Toyota Sales and/or Toyota North America either was unresponsive to

11    the Class Member's complaints, or admitted to Class Members that the representations as to the

12    features presence were wrong.  For example, in one January 2016 posting attached hereto as

13    Exhibit C, Toyota is quoted as admitting that the website information was incorrect and that the

14    brochures (at least the version posted online) did not accurately reflect the correct features of the

15    Class Vehicles.

16          61.      Toyota Sales' admission and failure to adequately respond was confirmed by

17    Plaintiff Ferrara.  Upon discovering that her Class Vehicle did not have the automatic on/off

18    feature, Plaintiff Ferrara contacted her dealership, and its service department. There, the service

19    representative admitted that the brochures were wrong. Thereafter, Plaintiff Ferrara contacted

20    Toyota North America's national customer service representatives who admitted that the

21    brochures were incorrect but directed Plaintiff Ferrara to the window sticker, which was silent

22    on the issue, and thus was of no relevance.

23          62.      Although effectively admitting that the brochures were misleading and deceptive,

24    Toyota refused to take any steps to return Plaintiff Ferrara's money, replace her Class Vehicle

25    with a car containing the missing "auto on/off" feature or take any other adequate steps to

26    remedy the deception and missing feature.

27          63.      Defendants, either directly or through their agents, were thus on notice and

28    admitted that the Class Vehicles sold in the United States did not come equipped with the "auto

1   on/off" feature as they received multiple complaints and correspondence from Class Members

2   regarding the missing feature and the misstatements in the brochures. Toyota Sales and/or

3   Toyota North America also conceded the absence of the promised feature in the Class Vehicles,

4   when it discretely offered a $500 refund to some purchasers of the Class Vehicles who actively

5   complained, but did not make that offer to all Class Members.

6        64.    Despite knowing and, either directly or through their agents, effectively

7   admitting that their advertising was deceptive and misleading, Defendants did not take steps to

8   repair or replace Plaintiffs' and Class Members' Class Vehicles, thereby causing members of

9   the Classes damage.

10        65.    Toyota North America's and Toyota Sales' misrepresentations to Plaintiffs and

11   Class Members that the standard form of Class Vehicle contained the "auto on/off" feature

12   caused damages as Plaintiffs and Class Members would not have purchased and/or leased their

13   Class Vehicles or would have insisted upon a significantly lower purchase and/or lease price.

14   Thus, because of Defendants' misrepresentations, Plaintiffs and Class Members paid higher

15   purchase and/or lease prices, and did not receive the full value of their purchases or leases,

16   including the use of the "auto on/off" feature and its benefits.

17   **Plaintiff Zheng-Lawson's Factual Allegations**

18        66.    In or about May 2016, Plaintiff Zheng-Lawson purchased a new 2016 Toyota

19   RAV4 model XLE from Penn Toyota, a Toyota dealership in Greenvale, New York (the

20   "Greenvale Dealership").

21        67.    Plaintiff Zheng-Lawson purchased her Class Vehicle after her husband had

22   reviewed the online version of the brochures, which identified the "Exterior Features" of the

23   XLE model as including "Halogen projector-beam headlights with auto on/off feature".

24   Plaintiff Zheng-Lawson and her husband relied on the bullet point lists in the brochures to

25   identify the lowest priced model of RAV4 that included features they wanted, such as the  auto

26   on/off headlight feature, among others, that were not listed as standard features on the lower

27   priced LE model.  The version of the brochure that Plaintiff Zheng-Lawson and her husband

28   reviewed contained the same language that is present on the Toyota.com website at the time of

17

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1    filing this complaint that stated the "Exterior Features" of the XLE model included "Halogen

2    projector-beam headlights with auto on/off feature." *See* Exh. B.

3         68.    Plaintiff Zheng-Lawson paid a higher price for the upgraded XLE model under

4    the mistaken belief that the upgraded Class Vehicle would be equipped with the features they

5    wanted including the represented "auto on/off" feature as standard. After receiving their Class

6    Vehicle, however, they discovered that it only came equipped with the "Type D" vehicle

7    headlight switch settings, which did not include the "auto on/off" feature.  Although they

8    complained, Toyota refused to cure the defect.  Plaintiff Zheng-Lawson and her husband have

9    driven in the dark without the headlights several times and find that when they start the car at

10   night, the dash appears to indicate the headlights are on when they are not.

11   **Plaintiff Pei's Factual Allegations**

12        69.    In or about March 2016, Plaintiff Pei purchased a new 2016 Toyota RAV4 model

13   XLE from Capitol Toyota, a dealership in San Jose, California.  Plaintiff Pei was considering

14   and obtained price quotes on the LE and XLE models of RAV4.

15        70.    Prior to his decision to purchase his Class Vehicle, and in the process of

16   considering various potential vehicles for purchase, Plaintiff Pei compared the features that were

17   identified as standard in the LE and XLE models.  Among other things, he reviewed an online

18   brochure, and upon information and belief, a hard copy version at the dealer.  The brochure he

19   saw identified the RAV4 models in a horizontal format with bullet points of the features.  In

20   reviewing the features, he concluded that the LE model did not include some of the features he

21   wanted, such as the "Height-adjustable power liftgate with jam protection" and "Halogen

22   projector-beam headlights with auto on/off feature" that were identified as standard equipment

23   on the XLE model.  Accordingly, he selected and purchased the XLE model.  The

24   representations he saw are reflected on the versions of the brochures attached as Exhibits A

25   and B.

26        71.    Thus, Plaintiff Pei, relying on Defendants' representations, agreed to and did pay

27   an increased price for the upgraded XLE model so that his RAV4 would contain the "auto

28   on/off" feature.  After obtaining his Class Vehicle, Plaintiff Pei discovered that it came

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

equipped with vehicle headlight switch settings that did not include the "auto on/off" feature for which he had paid, thereby causing him damage.

**Plaintiff Ferrara's Factual Allegations**

72.     In or about August 2016, Plaintiff Ferrara and her husband purchased a new 2016 Toyota RAV4 model XLE from Team Toyota, a Toyota dealership in Langhorne, Pennsylvania. Plaintiff Ferrara and her husband purchased the Class Vehicle primarily for use by their college aged daughter, such that the Class Vehicle's safety features were of particular importance to them.

73.     Prior to and at the time of purchase, Plaintiff Ferrara and her husband reviewed the features to be included in Class Vehicles.  Specifically, while considering various vehicle purchase options, Plaintiff Ferrara and her husband reviewed and retained a version of the hard copy brochure for Class Vehicles available at the dealership, including that portion of the brochure that represented that the Class Vehicle was equipped with the automatic on/off headlight feature.  Attached as Exhibit A is a copy of the brochure upon which Plaintiff Ferrara and her husband relied.

74.     Plaintiff Ferrara and her husband specifically paid a greater price for an upgraded XLE model based upon Defendants' representation that the Class Vehicle was equipped with an automatic "auto on/off" feature, that they consider a critical vehicle safety feature.   After obtaining their Class Vehicle, however, Plaintiff Ferrara and her husband discovered that Class Vehicle they had purchased failed to contain the represented "auto on/off" feature.

75.     Thereafter, Plaintiff Ferrara and her husband contacted the salesman at Team Toyota who had arranged their purchase, notifying him of the missing "auto on/off" feature and requesting an installation of that feature.  Plaintiff Ferrara and her husband were directed to the Team Toyota service department, which admitted that the brochures upon which they had relied contained a deceptive and misleading representation about the Class Vehicle.  The service department representative stated, however, that since her RAV4 was properly built to its design, and despite Toyota's misrepresentation in the brochures, it would not repair, fix, or upgrade her vehicle.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

76.     Plaintiff Ferrara and her husband were later contacted by a representative from Team Toyota who explained that installing new headlights with the "auto on/off" feature would be a difficult, costly, and technically inadvisable project.  Accordingly, Team Toyota was not willing to repair, fix, or upgrade Plaintiff Ferrara's Class Vehicle or provide her with another RAV4 that was equipped with that feature.  Team Toyota offered Plaintiff Ferrara compensation of $300 to $500 or an auto starter, which she refused as inadequate.

77.     Plaintiff Ferrara and her husband subsequently contacted Toyota Sales' National Customer Service, which further refused to provide a repair, fix, or upgrade of Plaintiff Ferrara's Class Vehicle, and refused to provide Plaintiff Ferrara with a refund of her purchase.

78.     All Toyota representatives with whom Plaintiff Ferrara communicated on this matter did not deny that Toyota had misrepresented the Class Vehicle's features in the brochures, but nonetheless failed to repair, fix, or upgrade Plaintiff Ferrara's Class Vehicle to conform to Toyota's representations, thereby causing her damage.

**The Purported "Disclaimer"**

79.     To the extent there were disclaimers in any version of the brochures, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as represented.

80.     The purported disclaimer, which was vague, ambiguous, and not pertinent to the claims herein, stated, "[s]ome vehicles are shown with available equipment. . . .For details on vehicle specifications, standard features and available equipment in your area, contact your Toyota dealer.  A vehicle with particular equipment may not be available at the dealership.  As your Toyota dealer to help locate a specifically equipped vehicle." *See* Exh. A at Pltf. 881.

81.     This purported disclaimer and its implications are false.  The Class Vehicles were never equipped with an auto on/off feature as standard equipment.  Had a Class member asked the dealer about the features with which the Class Vehicles were equipped he would have received the brochure, which falsely claimed that the Class Vehicles had the auto on/off feature as standard. Moreover, the purported disclaimer was located at the end of the brochures and not

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1  in near proximity to the false representations and as such, a reasonable consumer would not

2  discern any purported disclaimer which failed to effectively cure the misleading statements.

3       82.    The purported disclaimer further stated that "[a]ll information presented herein is

4  based on data available at the time of printing, is subject to change without notice and pertains

5  specifically to mainland U.S.A. vehicles only.  Prototypes shown. Actual production vehicles

6  may vary."  However, the Class Vehicles manufactured for the U.S. market were never

7  equipped with the auto on/off feature as standard, such that the brochures were never accurate at

8  the time of posting as represented, and, upon information and belief, the prototype for the U.S.

9  market never changed—it was never equipped with the feature for the U.S. market.

10  

**CLASS ACTION ALLEGATIONS**

11       83.    Plaintiffs bring this action on their own behalf and on behalf of all other persons

12  similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), on

13  behalf of a class consisting of:  All United States citizens who purchased and/or leased a MY

14  2016 Toyota RAV4 XLE, XLE Hybrid or SE model vehicle that did not contain the "auto

15  on/off" feature for the vehicle's headlights. The term "persons" includes individuals as well as

16  profit and not-for-profit corporations, partnerships, limited liability companies, limited liability

17  partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and

18  governmental entities. Excluded from this Class are any persons or other entities related to or

19  affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a

20  Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated

21  with Toyota, or any person who has an action for damages for personal injury or death or

22  property damage against Defendant arising from a Class Vehicle.

23       84.    In the alternative, Plaintiffs assert that they respectively are bringing this action

24  on behalf of the following Sub-classes:

25  **A New York Subclass: By Plaintiff Zheng-Lawson**

26            All persons who are citizens of the State of New York who purchased

27            and/or leased a model year 2016 Toyota RAV4 XLE, XLE Hybrid or
          SE model vehicle that did not contain the "auto on/off" feature for the

28            vehicle's projector-beam headlights. The term "persons" includes

21

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated with Toyota, or any person who has an action for damages for personal injury or death or property damage against Defendant arising from a Class Vehicle.

### A California Subclass: By Plaintiff Pei

All persons who are citizens of the State of California who purchased and/or leased a MY2016 Toyota RAV4 XLE, XLE Hybrid or SE model vehicle that did not contain the "auto on/off" feature for the vehicle's projector-beam headlights. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entities related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated with Toyota, or any person who has an action for damages for personal injury or death or property damage against Defendant arising from a Class Vehicle.

### A Pennsylvania Subclass:  By Plaintiff Ferrara

All persons who are citizens of the State of Pennsylvania who purchased and/or leased a MY 2016 Toyota RAV4 XLE, XLE Hybrid or SE model vehicle that did not contain the "auto on/off" feature for the vehicle's projector-beam headlights. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this Class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (i.e. as a dealer) from Defendants, or any entity related to or affiliated with Toyota, or any person who has an action for damages for personal injury or death or property damage against Defendant arising from a Class Vehicle.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1

**NUMEROSITY**

2     85.     The members of the Class are so numerous that joinder of all members is

3    impracticable.  The Class is made up of thousands of members.  The precise number of Class

4    Members can only be ascertained through discovery, which includes Defendants' sales, service,

5    maintenance and complaint records, and Defendants' registration records.  The disposition of

6    Class Members' claims through a class action will benefit the parties and the Court.

7     **COMMON QUESTIONS OF LAW AND FACT**

8     86.     There is a well-defined community of interests in the questions of law and fact

9    affecting the Plaintiffs and Class Members.

10    87.     The questions of law and fact common to the Class predominate over questions

11   which may affect individual members, and include the following:

12          (a)     Whether Toyota North America and Toyota Sales, directly, and Toyota

13   Motor, indirectly knowingly or intentionally deceived Class Members and/or disseminated false

14   advertising and uniform marketing materials relating to the Class Vehicles, or whether

15   Defendants knew or should have known that their advertising material was false and deceptive;

16          (b)     Whether Toyota North America and Toyota Sales, directly, and Toyota

17   Motor, indirectly misrepresented or omitted material information that Class Vehicles did not

18   contain a material feature which Plaintiffs and Class Members reasonably believed it would

19   contain;

20          (c)     Whether Toyota North America's and Toyota Sales' misrepresentations

21   regarding the Class Vehicles' "auto on/off" feature was material;

22          (d)     Whether Defendants, directly or thought their agents, violated New

23   York's General Business Law § 349;

24          (e)     Whether Defendants, directly or through their agents, violated New

25   York's General Business Law § 350;

26          (f)     Whether Defendants, directly or through their agents, violated

27   Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1 *et seq.*);

28   ///

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1          (g)     Whether Defendants, directly or through their agents, violated

2 Pennsylvania's Trade Practice and Consumer Protection Law (73 P.S. 201-1, *et seq.*);

3          (h)     Whether Defendants, directly or through their agents, violated

4 California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

5          (i)     Whether Defendants, directly or through their agents, violated

6 California's Consumer Legal Remedies Act (Cal. Civ. Code §1750, *et seq.*);

7          (j)     Whether Defendants, in particular, Toyota Motor, were unjustly enriched;

8          (k)     Whether Defendants' failure to equip Class Vehicles with the "auto

9 on/off" feature constitutes a breach of express warranty; and

10          (l)     Whether Class Members were damaged, and if so, the appropriate amount

11 thereof.

## TYPICALITY

13       88.     Plaintiffs' claims and defenses are typical of the claims and defenses of the Class

14 because Plaintiffs and Class members all purchased and/or leased Class Vehicles that failed to

15 contain the "auto on/off" feature.  All of their vehicles were designed and manufactured by

16 Toyota Motor and, marketed and/or sold by Toyota North America and Toyota Sales.  Plaintiffs,

17 like all Class Members, purchased their Class Vehicles, based upon Toyota North America's

18 and Toyota Sales' misrepresentations and deceptive advertising indicating that Class Vehicles

19 were equipped with the "auto on/off feature" and omissions of  material fact that the feature did

20 not exist, thereby causing Plaintiffs and Class Members damage when they purchased their

21 Class Vehicles. Each Plaintiff is also typical of the respective Sub-class that he/she seeks to

22 represent.

## ADEQUACY OF REPRESENTATION

24       89.     Plaintiffs will fairly and adequately assert and protect the interests of the Class

25 as:

26          (a)     Plaintiffs have hired attorneys who are experienced in prosecuting class

27 action claims and will adequately represent the interests of the Class; and

28 *///*

1      (b)     Plaintiffs have no conflicts of interest that will interfere with the

2   maintenance of this class action.

3                                **PREDOMINANCE**

4      90.     With respect to the Class or, in the alternative, the Sub-classes, questions

5   common to the Class predominate over those which only affect individual owners. This case

6   involves 2016 MY RAV4s which all lack the same "auto on/off" feature and were purchased

7   based upon the same deceptive and false advertising. Because this feature is lacking, the value

8   of the Class Vehicles have been reduced accordingly, regardless of who purchased or drove the

9   vehicle, or how they were driven. Liability will primarily be predicated upon the jury's

10  evaluation of Defendants' representations and/or advertisements regarding the "auto on/off"

11  feature, the materiality of the feature, and the reduced value of a vehicle which lacks that

12  feature.

13                                **SUPERIORITY**

14     91.     A class action provides a fair and efficient method for the adjudication of

15  controversy for the following reasons:

16      (a)     The common questions of law and fact set forth above predominate over

17  any questions affecting only individual Class Members;

18      (b)     The Class is so numerous as to make joinder impracticable.  The Class,

19  however, is not so numerous as to create manageability problems.  There are no unusual legal or

20  factual issues which would create manageability problems;

21      (c)     Prosecution of a separate action by individual members of the Class

22  would create a risk of inconsistent and varying adjudications against Defendants when

23  confronted with incompatible standards of conduct;

24      (d)     The claims of the individual Class Members are small in relation to the

25  expenses of litigation, making a class action the only procedure in which Class Members can, as

26  a practical matter, recover; and

27      (e)     A class action would be superior to and more efficient than adjudicating

28  thousands of individual lawsuits.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

## COUNT I

**(Deceptive Trade Practices)**
**(Violation of General Business Law§ 349:   Deceptive Acts and Practices)**
**(Brought by Plaintiff Zheng-Lawson on behalf of the New York Sub-class)**

92.     Plaintiff Zheng-Lawson hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

93.     Plaintiff Zheng-Lawson asserts this cause of action on behalf of the New York Sub-class.

94.     Defendants' practices, acts, policies and courses of conduct, including Toyota Motor's design and manufacture of the Class Vehicles which failed to contain the auto on/off feature as standard, and the misrepresentations of its agents, Toyota North America and Toyota Sales that the Class Vehicles would be equipped with the "auto on/off" feature as described above, and omissions that Class Vehicles did not contain this feature, were aimed at consumers, were consumer oriented, and intended to induce, and did induce, Plaintiff Zheng-Lawson and members of the New York Sub-class to purchase and/or lease Class Vehicles.

95.     Toyota Motor manufactured and, through its agents, Toyota North America and Toyota Sales, sold and/or leased the Class Vehicles by misrepresenting materials facts and by claiming the Class Vehicles did contain the "auto on/off" feature and by knowingly omitting the fact that they did not contain the "auto on/off" feature as Toyota Sales and Toyota North America, either directly or indirectly, represented, marketed, and/or advertised.

96.     Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)     Defendants, either directly or through agents, actively, knowingly and deceptively misrepresented to Plaintiff and the Sub-class members at the time of purchase or lease that the Class Vehicles sold or leased in the United States included automatic on/off headlights in said vehicles, when in fact, said Class Vehicles did not have this feature;

(b)     Defendants, either directly or through agents, failed to disclose the lack of such a feature to consumers who purchased or leased said Class Vehicles, despite the fact that Defendants, either directly or through agents, were aware that such a feature would not come

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1    standard in Class Vehicles and that the brochures and other advertising material, including its

2    online statements, were deceptive in stating it did;

3           (c)     Defendants' actions, representations, advertisements and/or omissions

4    caused Plaintiff and the Sub-class members to expend additional sums of money at its

5    dealerships and elsewhere to purchase or lease Class Vehicles believing that they were obtaining

6    a vehicle with the represented "auto on/off" headlight feature and thus a vehicle with greater

7    safety and luxury, thereby causing them damage.

8           (d)     Defendants' marketing, advertising and promotion of the Class

9    Vehicles, either directly or through their agents, was deceptive because it failed to reveal the

10   true type of headlights which purchasers or lessees would receive in their Class Vehicles.

11          (e)     Defendants, through their agents and representatives, in particular,

12   through Toyota Sales, admitted to some Class Vehicle owners or lessees by its words and

13   actions that its advertising was false and deceptive and did not conform to or adequately

14   describe the features with which the Class Vehicles were equipped, and that the Class Vehicles

15   did not conform to Toyota's representations in the brochures.  Defendants, in particular Toyota

16   Sales, discretely offered partial compensation to some Class Vehicle owners or lessees for the

17   reduction in value of their vehicle, thereby maintaining a secret, unfair, deceptive, arbitrary and

18   unconscionable warranty practice for some, while not disclosing and applying it to all Class and

19   Sub-class members.

20          97.     Each and all of the aforementioned conduct is and was deceptive, false,

21   fraudulent, and constitutes an unconscionable commercial practice in that Defendants have,

22   either directly or through their agents, by the use of false or deceptive statements and/or

23   knowing intentional material omissions, circulated false and deceptive advertising and

24   misrepresented and/or omitted the true nature of Class Vehicles and their headlight features.

25          98.     In making these misrepresentations of fact and/or material omissions to

26   prospective customers while knowing such representations to be false, Defendants, either

27   directly or through their agents, misrepresented and/or knowingly and intentionally omitted

28   material facts.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

99.     Plaintiff and members of the public were deceived by Defendant's affirmative misrepresentations and failures to properly disclose the material fact that Class Vehicles did not have the "auto on/off" feature.

100.     Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumers purchasing the vehicle for the reasons stated above.  Said deceptive acts and practices aforementioned are material.  The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 349.

101.     As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Zheng-Lawson and the Sub-class members have been injured as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

102.     Moreover, the Class Vehicles without the "auto on/off" feature are of lesser value than if they had included this feature and Plaintiff Zheng-Lawson and Sub-class members have lost the benefit of their bargain by Defendants' failure to include the feature in their Class Vehicles.

103.     As a result, Plaintiff Zheng-Lawson and the Sub-class members seek restitution and/or disgorgement of revenues that Toyota Motor received as a result of selling Class Vehicles to Plaintiff Zheng-Lawson and Sub-class members, and/or the cost to repair, fix, and/or upgrade their Class Vehicles so as to conform to Toyota Sales' and Toyota North America's representations regarding their headlights' "auto on/off" feature. Plaintiff Zheng-Lawson is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this Complaint at the time of trial, when the same has been ascertained. In addition, or alternatively, Plaintiff Zheng-Lawson seeks to recover the diminution of value she experienced as a result of the Defendants' violation of GBL § 349.

104.     In addition, Plaintiff Zheng-Lawson seeks punitive damages, statutory damages and reasonable attorneys' fees.  Plaintiff also seek a declaration that Class Vehicles lack the

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1     promised "auto on/off" feature, and owners and lessees of Class Vehicles must be compensated,

2     refunded, and/or have their vehicle replaced with others containing the represented feature.

**COUNT II**

**(Deceptive Trade Practices)**
**(Violation of General Business Law § 350 Deceptive Acts and Practices)**
**(Brought by Plaintiff Zheng-Lawson on behalf of the New York Subclass)**

6     105.    Plaintiff Zheng-Lawson hereby incorporates by reference the allegations

7 contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully

8 herein.

9     106.    Plaintiff Zheng-Lawson asserts this cause of action on behalf of herself and the

10 New York Sub-class.

11     107.    Defendants' practices, acts, policies and courses of conduct, including Toyota

12 Motor's design and manufacture of the Class Vehicles which failed to contain the auto on/off

13 feature as standard, and Toyota Sales directly, and Toyota North America, through its agent,

14 Toyota Sales, knowingly advertised in a manner that misled consumers into believing that the

15 Vehicles which they were purchasing were safer and more luxurious than they actually were

16 because of the existence of an auto on/off headlight feature as standard.  Specifically, Class

17 Members and members of the New York Sub-class, were misled into the false belief that all

18 Class Vehicles would come equipped with the "auto on/off" feature as standard described above

19 and thus that the Vehicles were safer and more luxurious.

20     108.    Such advertisements and marketing practices by Toyota North America and

21 Toyota Sales, are and were materially misleading and likely to mislead a reasonable consumer

22 purchasing the vehicle as the Vehicles did not have this equipment as standard, and Plaintiff and

23 Sub-class members could only obtain this feature by purchasing an options package.  The sale

24 and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby

25 falls under the New York consumer fraud statute, General Business Law § 350.

26     109.    As a direct and proximate result of these misleading advertisements and

27 marketing materials, and/or the concealment of the true and accurate facts in the false materials

28 disseminated, Plaintiff Zheng-Lawson and the Sub-class members have been injured as alleged

29

00107775.000.docx

1    herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled

2    damages to the extent permitted by law, including class action rules, in an amount to be proven

3    at trial.

4         110.    As a result, Plaintiff Zheng-Lawson and the New York Sub-class members seek

5    restitution or disgorgement of all increased revenues that Toyota Motor, Toyota North America

6    and/or Toyota Sales received as a result of selling Class Vehicles to Plaintiff Zheng-Lawson and

7    the New York Sub-class members, and/or the cost to repair, fix, and/or upgrade their Class

8    Vehicles so as to conform to Toyota North America's and Toyota Sales' representations

9    regarding their headlights' "auto on/off" feature. Plaintiff Zheng-Lawson is informed and

10   believes that the amount of said restitution is unknown at this time, but will seek relief to amend

11   this Complaint at the time of trial, when the same has been ascertained. In addition, or

12   alternatively, Plaintiff Zheng-Lawson seeks to recover the diminution of value of her Class

13   Vehicle as a result of the Defendants' violation of GBL § 350.

14        111.    In addition, Plaintiff Zheng-Lawson seeks punitive damages, statutory damages

15   and reasonable attorneys' fees. Plaintiff Zheng-Lawson also seeks a declaration that Class

16   Vehicles lack the advertised "auto on/off" feature, and owners and lessees of Class Vehicles

17   must be compensated, refunded, and/or have their vehicles replaced with others containing the

18   represented feature.

19                                   **<u>COUNT III</u>**

20                              **(Breach of Express Warranty)**
                          **(Violation of Cal. Com. Code § 2313)**
21   **(Brought by Plaintiff Pei on behalf of the National Class, or, alternatively, Plaintiff Pei on**
                              **behalf of the California Sub-class)**
22

23        112.    Plaintiff Pei hereby incorporates by reference the allegations contained in all

24   preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

25        113.    Plaintiff Pei asserts this cause of action on behalf of himself and the National

26   Class under Cal. Com. Code §2313. Alternatively, this cause of action is asserted by Plaintiff

27   Pei on behalf of the California Sub-class under Cal. Com. Code §2313

28   *///*

---

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

114.    Toyota North America and Toyota Sales directly, and Toyota Motor, indirectly through its wholly owned agents, provided uniform affirmative misrepresentations about the Class Vehicles in the misleading advertising and marketing, including the misleading brochures that stated that the "auto on/off" feature was an included exterior feature in the Class Vehicles. This uniform affirmative description of the Class Vehicles was made part of the basis of the bargain and thereby created an express warranty that the Class Vehicles conformed to the description pursuant to the UCC express warranty provisions adopted by California under Cal. Com. Code  § 2313. Plaintiff Pei and Class Members (or alternatively, California Sub-class members) thereby relied upon such warranty. By law, Plaintiff Pei and Class Members, or alternatively, California Sub-class members have entered into certain express warranty agreements directly with Toyota North America and Toyota Sales, and indirectly with Toyota Motor.

115.    Specifically, that express warranty and the misleading statements provided that 2016 RAV4 XLE (and XLE Hybrid) models were equipped with the following features in addition to or in replacement of the exterior features offered on the 2016 RAV4 LE models:

***Halogen projector-beam headlights with auto on/off feature***

• Integrated fog lights

• Silver-highlighted lower grille

• 17-in. 5-spoke alloy wheels with P225/65R17 tires

• Power tilt/slide moonroof with sunshade

• Height-adjustable power liftgate with jam protection

(Emphasis added).  In other words, the misleading advertising and marketing, including the misleading brochures expressly warrantied that the XLE and XLE Hybrid models were equipped with "halogen projector-beam headlights with auto on/off feature" as standard equipment when those Class Vehicles were not equipped with those features which could only be obtained as part of an option package.

116.    Similarly, the misleading advertising and marketing, including the misleading brochures expressly warrantied that 2016 RAV4 SE models contain the following features in

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1  addition to or in replacement of the exterior features offered on the 2016 RAV4 XLE models

2  (emphasis added):

3  ***LED projector-beam headlights with auto on/off feature***

4  • LED Daytime Running Lights (DRL)

5  • 18-in. 5-spoke sport alloy wheels with P235/55R18 tires

6  • Black-painted heated power outside mirrors with turn signal indicators and folding

7  feature

8  (Emphasis added). In other words, the misleading advertising and marketing, including

9  the misleading brochures expressly warrantied that the SE models were equipped with "LED

10  projector-beam headlights with auto on/off feature" as standard equipment when those Class

11  Vehicles were not equipped with those features which could only be obtained as part of an

12  option package.

13  117.    To the extent there were disclaimers, if any, they were not of a size, type, and

14  location that would adequately inform a reasonable consumer that Toyota's representations

15  alleged herein were not as represented.  Moreover, the language contained in the  purported

16  "disclaimer" section of the brochures were false and therefore could not constitute valid

17  disclaimers.

18  118.    The purported disclaimer, which was vague, general, inconspicuous and not in

19  proximity of the affirmative misrepresentations stated, "[s]ome vehicles are shown with

20  available equipment. . . .For details on vehicle specifications, standard features and available

21  equipment in your area, contact your Toyota dealer.  A vehicle with particular equipment may

22  not be available at the dealership.  As your Toyota dealer to help locate a specifically equipped

23  vehicle."

24  119.    Had a Class member asked the dealer about the features with which the Class

25  Vehicles were equipped, he would have received the hard copy dealership brochure, which

26  falsely claimed that the Class Vehicles did have the auto on/off feature as standard. A dealer

27  could not have located a Class Vehicle that had the feature as standard since it did not exist,

28  making this portion of the purported "disclaimer" a nullity.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

120.    The purported "disclaimer" further stated that "[a]ll information presented herein is based on data available at the time of posting, is subject to change without notice and pertains specifically to mainland U.S.A. vehicles only.  Prototypes shown. Actual production vehicles may vary."  However, upon information and belief, the Class Vehicles manufactured for the U.S. market were never equipped with the auto on/off feature as standard, so that the brochures were never accurate at the time of posting as represented, and the prototype for the U.S. market never changed—it was never equipped with the feature for the U.S. market.

121.    Despite this uniform affirmative misrepresentation, Defendants together breached their express warranty to Plaintiff Pei and Class Members, or alternatively, California Sub-class members, when Toyota Motor, either directly or through its agents, Toyota North America and Toyota Sales, delivered to them Class Vehicles that did not contain the "auto on/off feature" as standard that did not conform to the description of the vehicles provided to them as consumers.

122.    As a result of the foregoing, Plaintiff Pei and the National Class, or alternatively, California Sub-class members, are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Defendants acted in a manner contrary to public purpose and with intent to exclude such "auto on/off" headlight feature.

## COUNT IV

**(Breach of Express Warranty)**
**(Violation of New York Uniform Commercial Code, § 2–313)**
**(Brought by Plaintiff Zheng-Lawson on behalf of the New York Sub-Class)**

123.    Plaintiff Zheng-Lawson hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

124.    Plaintiff Zheng-Lawson asserts this cause of action on behalf of herself and the New York Sub-class under N.Y.U.C.C. § 2-313(1)(b).

125.    Toyota North America and Toyota Sales directly, and Toyota Motor, indirectly through its wholly owned agents, provided a uniform affirmative description of Class Vehicles

in the brochure that stated that the "auto on/off" feature was an included exterior feature of the Class Vehicles. This uniform affirmative description of the Class Vehicles was made part of the basis of the bargain and thereby created an express warranty that the Class Vehicles conformed to the description pursuant to the UCC express warranty provisions as adopted by New York in N.Y.U.C.C. § 2–313(1)(b). Plaintiff Zheng-Lawson and New York Sub-class members relied upon such warranty. By law, Plaintiff Zheng-Lawson and New York Sub-class members have entered into certain express warranty agreements with Toyota Motors, either directly or through its wholly owned agents, Toyota North America and Toyota Sales.

126.   Specifically, that express warranty and the misleading statements provided that 2016 RAV4 XLE (and XLE Hybrid) models are equipped with the following features in addition to or in replacement of the exterior features offered on the 2016 RAV4 LE models:

***Halogen projector-beam headlights with auto on/off feature***

• Integrated fog lights

• Silver-highlighted lower grille

• 17-in. 5-spoke alloy wheels with P225/65R17 tires

• Power tilt/slide moonroof with sunshade

• Height-adjustable power liftgate with jam protection

(Emphasis added).  In other words, the brochures expressly warrantied that the XLE and XLE Hybrid models were equipped with "halogen projector-beam headlights with auto on/off feature" as standard equipment when those Class Vehicles were not equipped with those features which could only be obtained as part of an option package.

127.   Similarly, the brochures expressly warrantied, and misleadingly provided that 2016 RAV4 SE models contain the following features in addition to or in replacement of the exterior features offered on the 2016 RAV4 XLE models (emphasis added):

***LED projector-beam headlights with auto on/off feature***

• LED Daytime Running Lights (DRL)

• 18-in. 5-spoke sport alloy wheels with P235/55R18 tires

34

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

• Black-painted heated power outside mirrors with turn signal indicators and folding feature

(Emphasis added). In other words, the brochures expressly warrantied that the SE models were equipped with "LED projector-beam headlights with auto on/off feature" as standard equipment when those Class Vehicles were not equipped with those features which could only be obtained as part of an option package.

128.    To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as represented.  Moreover, the language contained in the  purported "disclaimer" section of the brochures  were false and therefore could not constitute warranties.

129.    The purported disclaimer, which was vague, general, inconspicuous and not in proximity to the affirmative representations stated, "[s]ome vehicles are shown with available equipment. . . .For details on vehicle specifications, standard features and available equipment in your area, contact your Toyota dealer.  A vehicle with particular equipment may not be available at the dealership.  As your Toyota dealer to help locate a specifically equipped vehicle."

130.    Had a Class member asked the dealer about the features with which the Class Vehicles were equipped he would have received the hard copy brochure, which falsely claimed that the Class Vehicles did have the auto on/off feature as standard. Upon information and belief, a dealer could not have located a Class Vehicle that had the feature as standard since they did not exist, making this portion of the purported "disclaimer" a nullity.

131.    The purported "disclaimer" further stated that "[a]ll information presented herein is based on data available at the time of posting, is subject to change without notice and pertains specifically to mainland U.S.A. vehicles only.  Prototypes shown. Actual production vehicles may vary."  However, the Class Vehicles manufactured for the U.S. market were never equipped with the auto on/off feature as standard, so that the brochures were never accurate at the time of posting as represented, and the prototype for the U.S. market never changed—it was never equipped with the feature for the U.S. market.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

132.    Despite this uniform affirmative misrepresentation, Toyota Motor, either directly or through its agents, breached the express warranty made with Plaintiff Zheng-Lawson and New York Sub-class members when Toyota Motor delivered to them Class Vehicles that did not contain the "auto on/off" feature and thereby did not conform to the description of the vehicles they provided to consumers.

133.    As a result of the foregoing, Plaintiff Zheng-Lawson and the New York Sub-class members are entitled to compensatory damages for Defendants' breach of express warranty in an amount to be proven at trial, and punitive damages because Defendants acted in a manner contrary to the public purpose and with intent not to provide the "auto on/off headlight feature, and to exclude this feature from the Class Vehicles.

## COUNT V

**(Breach of Express Warranty)**
**(Violation of 13 Pa.C.S.A. § 2313.)**
**(Brought by Plaintiff Ferrara on behalf of the Pennsylvania Sub-Class)**

134.    Plaintiff Ferrara hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

135.    Plaintiff Ferrara asserts this cause of action on behalf of herself and the Pennsylvania Sub-class under 13 Pa. C.S.A. §2313.

136.    Toyota North America and Toyota Sales, as agents of Toyota Motor, provided a uniform affirmative description of the Class Vehicles in the misleading advertising and marketing, including the misleading brochures that stated that the "auto on/off" feature was an included exterior feature of the Class Vehicles.  This uniform affirmative description of the Class Vehicles was made part of the basis of the bargain and thereby created an express warranty that the Class Vehicles conformed to the description pursuant to the UCC express warranty provisions as were adopted by Pennsylvania under 13 Pa.C.S.A. §2313. Plaintiff and Pennsylvania Sub-class thereby relied upon such warranty. By law, Plaintiff Ferrara and the Pennsylvania Sub-class members have entered into certain express warranty agreements with Toyota Sales, as agent for Toyota North America and Toyota Motor.

///

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

137.   Despite this uniform affirmative misrepresentation, Toyota Sales and Toyota North America as agents for Toyota Motor breached the express warranty with Plaintiff Ferrara and the Pennsylvania Sub-class members when Toyota Motor, either directly or through Toyota Sales, delivered to them Class Vehicles that did not contain the "auto on/off" feature that did not conform to the description of the vehicles they provided to them as consumers.

138.   Specifically, that express warranty and the misleading statements provided that 2016 RAV4 XLE (and XLE Hybrid) models are equipped with the following features in addition to or in replacement of the exterior features offered on the 2016 RAV4 LE models:

***Halogen projector-beam headlights with auto on/off feature***

• Integrated fog lights

• Silver-highlighted lower grille

• 17-in. 5-spoke alloy wheels with P225/65R17 tires

• Power tilt/slide moonroof with sunshade

• Height-adjustable power liftgate with jam protection

139.   (Emphasis added).  In other words, the misleading advertising and marketing, including the misleading brochures expressly warrantied that the XLE and XLE Hybrid models were equipped with "halogen projector-beam headlights with auto on/off feature" as standard equipment when those Class Vehicles were not equipped with those features which could only be obtained as part of an option package. Similarly, the misleading advertising and marketing, including the misleading brochures expressly warrantied, and misleadingly provides that 2016 RAV4 SE models contain the following features in addition to or in replacement of the exterior features offered on the 2016 RAV4 XLE models (emphasis added):

***LED projector-beam headlights with auto on/off feature***

• LED Daytime Running Lights (DRL)

• 18-in. 5-spoke sport alloy wheels with P235/55R18 tires

• Black-painted heated power outside mirrors with turn signal indicators and folding feature (Emphasis added).

///

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

140.    In other words, the misleading advertising and marketing, including the brochures expressly warrantied that the SE models were equipped with "LED projector-beam headlights with auto on/off feature" as standard equipment when those Class Vehicles were not equipped with those features which could only be obtained as part of an option package. To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as represented.

141.    The purported "disclaimer" stated, "[s]ome vehicles are shown with available equipment. . . .For details on vehicle specifications, standard features and available equipment in your area, contact your Toyota dealer.  A vehicle with particular equipment may not be available at the dealership.  As your Toyota dealer to help locate a specifically equipped vehicle."

142.    This purported disclaimer and its implications are false. The Class Vehicles were never equipped with an auto on/off feature as standard equipment.  Had a Class member asked the dealer about the features with which the Class Vehicles were equipped he would have received the hard copy brochure, which falsely claimed that the Class Vehicles did have the auto on/off feature as standard. A dealer could not have located a Class Vehicle that had the feature as standard since it did not exist, making this portion of the purported "disclaimer" a nullity.

143.    The purported "disclaimer" further stated that "[a]ll information presented herein is based on data available at the time of posting, is subject to change without notice and pertains specifically to mainland U.S.A. vehicles only.  Prototypes shown. Actual production vehicles may vary."  However, the Class Vehicles manufactured for the U.S. market were never equipped with the auto on/off feature as standard, so that the hard copy brochure was never accurate at the time of posting as represented, and the prototype for the U.S. market never changed—it was never equipped with the feature for the U.S. market.

144.    As a result of the foregoing, Plaintiff Ferrara and the Pennsylvania Sub-class members are entitled to compensatory damages for breach of the express warranty in an amount to be proven at trial, and punitive damages because Toyota Motor and its agents, Toyota Sales

1  and Toyota North America, acted in a manner contrary to the public purpose and with intent to

2  exclude this feature from the Class Vehicles.

## COUNT VI

**(Violation of California's Unfair Competition Law ("UCL"))**
**(Cal. Bus. & Prof. Code 17200, *et seq.*)**
**(Brought by Plaintiff Pei on behalf of the National Class or, alternatively, on behalf of the**
**California Sub-class)**

7      145.    Plaintiff Pei hereby incorporates by reference the allegations contained in all

8  preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

9      146.    Plaintiff Pei asserts this cause of action on behalf of himself, and the National

10  Class or alternatively on behalf of the California Sub-class.

11      147.    California's Unfair Competition Law ("UCL") prohibits and makes actionable

12  any unlawful, unfair, or deceptive business practice.  Defendants' actions, as alleged herein, in

13  selling and marketing the Class Vehicles through deceptive marketing that misrepresented

14  whether the Class Vehicles contained the "auto on/off" feature, constitutes an unlawful and

15  deceptive business practice and a violation of the UCL.

16      148.    As set forth in prior Counts, and as alleged previously in this Complaint,

17  Defendants' actions, whether taken directly or indirectly, constitute an unlawful business

18  practice in which Toyota breached its express warranty in violation of Section 2313 of

19  California's Commercial Code.

20      149.    Toyota North America's and Toyota Sale's marketing and sale of Class Vehicles

21  without disclosure of their lack of the "auto on/off feature" as uniformly represented in the

22  brochures, including material produced directly by Toyota Motor,such as manuals,  amounts to

23  a deceptive business practice within the meaning of the UCL, as explained above.  Specifically,

24  these statements, set forth above, were deceptive in that the Class Vehicles did not contain the

25  automatic on/off feature, which could only be obtained if Class or Subclass members paid more

26  to purchase an options package.  However, because of the deceptive statements, Class and

27  Subclass members were misled into believing that the Class Vehicles which they had purchased

28  were safer and more luxurious than they were and paid more for their Vehicles.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

150.     To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Toyota's representations alleged herein were not as so represented. Moreover, they were untrue when made, as further discussed above.

151.     The conduct was deceptive because it was intended to and did materially mislead and deceive Plaintiff Pei and National and/or California Sub-class members.  Had Toyota North America and Toyota Sales not misrepresented to Plaintiff Pei that the Class Vehicles contained the "auto on/off" feature, he would not have purchased his vehicle or would have insisted upon a significantly lower purchase price.  Toyota North America and Toyota Sales, refused to contact Class or California Sub-class members to cure its misrepresentations because doing so would have caused consumers to forego their purchases of Class Vehicles, or to insist upon lower purchase and/or lease prices.  In addition, Toyota Sales and Toyota North America, either directly or through its agents, intentionally omitted that Class Vehicles did not contain the "auto on/off" feature.

152.     As a direct, proximate, and foreseeable result of Defendants' unlawful and/or deceptive business practice, Plaintiff Pei and putative National Class or California Sub-class members have sustained an ascertainable loss and actual damages, in that they received Class Vehicles of lesser value and quality then they intended to purchase and that they were led to believe they were purchasing and/or leasing.

153.     Plaintiff Pei and the National Class and/or California Sub-class members are entitled to and do seek an order of restitution and disgorgement requiring Toyota Motor, who acted through its agents, to restore to them the additional benefits and monies that Toyota Motor received in connection with their sale of the Class Vehicles at a greater sales price than that which would have been paid for Class Vehicles had Plaintiff Pei and National and California Sub-class members known that the Vehicles lacked the "auto on/off" feature. Plaintiff Pei and the National Class and/or California Sub-class members are also entitled to and do seek an injunction enjoining Toyota Sales and Toyota North America from continuing to engage in the

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1  alleged materially misleading conduct, as well as penalties for any such subsequent violations,

2  and for such additional relief authorized under the law.

3  ## COUNT VII

4  **(Violation of California's Consumers Legal Remedies Act ("CLRA"))**
   **(Cal. Civ. Code 1750, *et seq*.)**

5  **(By Plaintiff Pei on behalf of the National Class, and/or on behalf of the California Sub-**

6  **class)**

7  154.    Plaintiff Pei hereby incorporates by reference the allegations contained in all

8  preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

9  155.    Plaintiff Pei asserts this cause of action on behalf of himself and the National

10  Class or alternatively, on behalf of the California Sub-class.

11  156.    Toyota North America and Toyota Sales, directly, and Toyota Motor, through its

12  wholly owned agents, violated the following provisions of Cal. Civ. Code §1750 *et. seq*.:

13          (a)     Cal. Civ. Code §1770(a)(5): by representing that its goods or services

14  have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they

15  do not have;

16          (b)     Cal. Civ. Code §1770(a)(7): by representing that its goods or services are

17  of a particular standard, quality, or grade, if they are of another;

18          (c)     Cal. Civ. Code §1770(a)(9):  by advertising goods and services with the

19  intent not to sell them as advertised;

20  157.    Toyota North America and Toyota Sales, directly, and Toyota Motor, through its

21  wholly owned agents, undertook the previously alleged acts and practices in transactions

22  intended to result, or which did result, in the sale and/or lease of its vehicles to customers for

23  personal, family, or household use. Plaintiff Pei and the National or California Sub-class

24  members relied upon Toyota North America's and Toyota Sales' representations regarding the

25  auto "on/off" feature in choosing to purchase and/or lease their Class Vehicles and pay the

26  purchase and/or lease price that they did. Moreover, had Plaintiffs and Class Members known

27  that the material auto "on/off" feature was not included in Class Vehicles, they would not have

28  purchased and/or leased such vehicles or would have paid a lower purchase/lease price.

41

Specifically, these statements, set forth above, were deceptive in that the Class Vehicles did not contain the automatic on/off feature, that could only be obtained if Class or Subclass members paid more to purchase an options package.  However, because of the deceptive statements, Class and Subclass members were misled into believing that the Class Vehicles which they had purchased were safer and more luxurious than they were and paid more for their Vehicles as a result.

158.     Toyota North America and Toyota Sales, directly, and Toyota Motor, through its agents, have therefore violated the Consumers Legal Remedies Act, and Plaintiff Pei prays for compensatory equitable and injunctive relief authorized by that Act, and for such additional relief as is set forth below. Plaintiff Pei currently still owns his Class Vehicle.

159.     Pursuant to Cal. Civ. Code §1782, in conjunction with the filing of this action, Plaintiff Pei's counsel notified Defendants by separate letter of the particular violations of the CLRA and demanded that Defendants remedy or agree to remedy the non-conforming Class Vehicles and violations described herein.  As Defendants have failed to do so, and more than thirty (30) days have passed, Plaintiff Pei prays for compensatory and monetary damages to which Plaintiff Pei and the National Class or the California Subclass are entitled.

## COUNT VIII

**(Violation of California's Secret Warranty Law)**
**(Cal. Civ. Code 1795.90, *et seq.*)**
**(By Plaintiff Pei on behalf of the California Sub-class)**

160.     Plaintiff Pei hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

161.     Plaintiff Pei asserts this cause of action on behalf of himself and the California Sub-class.

162.     Defendants have violated, and continue to violate, California Civil Code §1795.90 *et seq.* (the "California Secret Warranty Law").  The California Secret Warranty Law was enacted to abolish "secret" warranties.  The term "secret warranty" is used to describe the practice by which an automaker establishes a policy to pay for or to reimburse for any part of the cost of repairing any condition that may substantially affect vehicle performance.  A secret

42

1    warranty is usually created when the automaker realizes that a large number of its customers are

2    experiencing a defect not covered by a factory warranty, and decides to offer warranty coverage

3    to individual customers only if, for example, the customer complaints about the problem first.

4    The warranty is considered "secret" because all owners are not notified of it.

5         163.    The existence of the "secret warranty" is established by the fact that Plaintiff

6    Ferrara was offered $300-$500 or an automatic starter to address the failure to include the auto

7    on/off feature in their headlight system.  This remedy, however, was only available to those who

8    complained loudly enough.

9         164.    Plaintiff Pei and members of the proposed California Sub-class are consumers as

10   that term is defined by §1795.90(a).  The California Secret Warranty law requires automakers to

11   notify consumers, by first-class mail, within 90 days of adoption, whenever they enact, "any

12   program or policy that expands or extends the consumer's warranty beyond its stated limit or

13   under which [the] manufacturer offers to pay for all or any part of the cost of repairing, or to

14   reimburse consumers for all or any part of the cost of repairing, any condition that may

15   substantially affect vehicle durability, reliability, or performance . . . ."

16        165.    The California Secret Warranty law also requires automakers to provide the New

17   Motor Vehicle Board with a copy of the notice described above, so the public can view, inspect,

18   or copy that notice.

19        166.    Additionally, the California Secret Warranty law requires automakers to advise

20   their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or

21   reimbursement program, and to "implement procedures to assure reimbursement of each

22   consumer eligible under an adjustment program who incurs expenses for repair of a condition

23   subject to the program prior to acquiring knowledge of the program."

24        167.    Defendants have not complied with any of these requirements of the California

25   Secret Warranty law.

26   ///

27   ///

28   ///

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1

<u>**COUNT IX**</u>

2

**(Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law)**
**(73 P.S. 201-1, *et seq*.) – Deceptive Acts**

3

**(By Plaintiff Ferrara on behalf of the Pennsylvania Sub-class)**

4

168.    Plaintiff Ferrara hereby incorporates by reference the allegations contained in all

5

preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

6

169.    Plaintiff Ferrara asserts this cause of action on behalf of herself and the

7

Pennsylvania Sub-class.

8

170.    Defendants' practices, acts, policies and courses of conduct, as described above,

9

whether taken directly or through their agents, were intended to induce, and did induce, Plaintiff

10

Ferrara and the Pennsylvania Sub-class members to purchase and/or lease the Class Vehicles.

11

171.    Toyota Motor, through its agent, Toyota Sales and Toyota North America, sold

12

and/or leased the Class Vehicles, while its agents, Toyota North America and Toyota Sales,

13

knowingly misrepresent and/or omitted the material fact that the vehicles did not contain the

14

"auto on/off" feature as they had represented.

15

172.    Defendants' practices, acts, policies and course of conduct are actionable in that:

16

a.    Toyota North America and Toyota Sales actively and knowingly

17

misrepresented to Plaintiff Ferrara and the Pennsylvania Sub-class members at the time of their

18

purchase or lease the quality and exterior features to be included in Class Vehicles;

19

b.    Toyota North America and Toyota Sales failed to give adequate warnings

20

and notices in the brochures of the exterior features that would be standard for the Class

21

Vehicles;

22

c.    Toyota North America's  and Toyota Sales' marketing, advertising and

23

promotion of the Class Vehicles was deceptive because it misled consumers, including

24

Pennsylvania Sub-class members, regarding the material features that would be included in

25

standard versions of Class Vehicles.

26

d.    Toyota Sales, directly, and Toyota North America and Toyota Motor,

27

through its agents and representatives, admitted to some Class and Pennsylvania Sub-class

28

members by its words and action, that the "auto on/off" feature should have been included in

44

00107775.000.docx

Class Vehicles as advertised and represented, and that its advertising was deceptive and incorrect.  Toyota Motor, through its agents, Toyota North America and Toyota Sales, also maintained a secret warranty practice for some, providing some purchasers with compensation for the missing "auto on/off" feature, while denying and/or failing to notify others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

173.    Defendants' aforementioned conduct is and was deceptive, false, and fraudulent, and constitutes an unconscionable commercial practice in that Defendants have, by the use of false or deceptive statements and/or marketing materials, misrepresented the true nature of the Class Vehicles' headlight system. Specifically, these statements, set forth above, were deceptive in that the Class Vehicles did not contain the automatic on/off feature, which could only be obtained if Class or Subclass members paid more to purchase an options package.  However, because of the deceptive statements, Class and Subclass members were misled into believing that the Class Vehicles which they had purchased were safer and more luxurious than they were and paid more for their Vehicles as a result.

174.    Under Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law (73 P.S. 201-1, *et seq*.; also referred to herein below as "UTPCPL"), "unfair methods of competition" and "unfair or deceptive acts or practices" include the following acts or omissions:

> (v)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
>
> (ix) Advertising goods or services with intent not to sell them as advertised;
>
> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

175.   In addition, under 37 Pa. Code §301.2(6) vehicles dealers are prohibited from misrepresenting facts in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading. A vehicle dealer is also prohibited from failing to make material disclosures about a car's status or qualities.  Such acts are considered "unfair methods of competition and unfair or deceptive acts or practices" under Pennsylvania law.

176.   In making the alleged misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false and/or misleading, Defendants, either directly or through their agents, have misrepresented and/or knowingly and intentionally concealed material facts and breached their duty not to do so.

177.   Plaintiff Ferrara and Pennsylvania Sub-class members were deceived by and relied upon Toyota North America's and Toyota Sales' affirmative misrepresentations, including but not limited to, the misrepresentations contained in the misleading advertising and marketing, including the misleading  brochures about the vehicle's exterior features.

178.   There is a causal nexus between this deceptive and unconscionable commercial practices and Plaintiff Ferrara's and the Pennsylvania Sub-class members' damage as alleged herein, and therefore, Plaintiff Ferrara and the Pennsylvania Sub-class members are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

179.   As a result, Plaintiff Ferrara and the Pennsylvania Sub-class members seek restitution of all monies that Toyota Motor received as a result of selling or leasing the Class Vehicles, either directly or through its agents, to them without the "auto on/off" feature. Plaintiff Ferrara is informed and believes that the amount of said restitution is unknown at this time, but she will seek relief to amend this Complaint at the time of trial, when the same has been ascertained.

180.   In addition, Plaintiff Ferrara and the Pennsylvania Sub-class members seek punitive damages and reasonable attorneys' fees.  Plaintiff Ferrara and the Pennsylvania Sub-class also seek a declaration that the Class Vehicles lack the advertised "auto on/off" feature,

46

1   and that owners and lessees of the Class Vehicles be compensated, refunded, and/or have their

2   vehicles replaced with others containing the represented feature.

3   **COUNT X**

4   **(Violation of Pennsylvania's Trade Practices and Consumer Protection Law)**
    **(73 P.S. 201-1, *et seq.*) – Unfair Conduct Claim**
5   **(By Plaintiff Ferrara on behalf of the Pennsylvania Sub-class)**

6   181.   Plaintiff Ferrara hereby incorporates by reference the allegations contained in all

7   preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

8   182.   Plaintiff Ferrara asserts this cause of action on behalf of herself and the

9   Pennsylvania Sub-class under the "unfair conduct" branch of the Pennsylvania UTPCPL.

10  183.   Toyota North America's and Toyota Sale's  practices, acts, policies and course of

11  conduct, as described above, constitute unfair conduct because they (1) offend public policy; (2)

12  are immoral, unethical, oppressive and unscrupulous; and (3) cause substantial injury to

13  consumers in violation of the Pa. UTPCPL.

14  184.   Defendants, either directly or through their agents, concealed, suppressed and

15  omitted to Plaintiff Ferrara and Pennsylvania Sub-Class members at the time of purchase or

16  lease, that the Class Vehicles did not contain the "auto on/off" feature, despite the misleading

17  advertising and marketing, including the misleading  brochures' representations to the contrary.

18  Specifically, these statements, set forth above, were deceptive in that the Class Vehicles did not

19  contain the automatic on/off feature, which could only be obtained if Class or Subclass members

20  paid more to purchase an options package.  However, because of the deceptive statements,

21  Plaintiff Ferrara and that Subclass members were misled into believing that the Class Vehicles

22  which they had purchased were safer and more luxurious than they were and paid more for their

23  Vehicles as a result.

24  185.   Even though Toyota Motor, through its role in the manufacture and shipping of

25  the Class Vehicles, and Toyota North America and Toyota Sales, through their marketing of the

26  Class Vehicles, and their roles with regard to complaints about the Class Vehicles, had actual

27  knowledge that the Class Vehicles being manufactured and sold and/or leased to Pennsylvania

28  Sub-Class members did not contain the promised "auto on/off" feature, they did not correct the

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1   manufacturing or fairly disclose the feature's absence to Pennsylvania Sub-Class members and

2   the consumer public, and further concealed this knowledge about Class Vehicles to

3   Pennsylvania Sub-Class members and the consumer public.

4        186.    Defendants' acts of commission and omission were material.

5        187.    Defendants' conduct was in the course of conduct involving trade or commerce.

6        188.    Defendants' acts of commission and omission caused Plaintiff Ferrara and

7   Pennsylvania Sub-Class members to suffer ascertainable losses of money and property in that

8   they were misled into expending additional sums of money at its dealerships and elsewhere in

9   the purchase or lease of the Class Vehicles after having been misled into believing that such

10  vehicles contained the promised "auto on/off feature." Defendants did so despite having prior

11  knowledge of the missing feature at the time they placed said vehicles into the stream of

12  commerce.  Plaintiff Ferrara also seeks a declaration that Class Vehicles lack the promised "auto

13  on/off" feature, and owners and lessees of the Class Vehicles must be compensated, refunded,

14  and/or have their vehicles replaced with others containing the represented feature.

## COUNT XI

### (Unjust Enrichment)
### (By Plaintiff Pei on behalf of the National Class under California law, or a subclass under California Law)

18       189.    Plaintiff Pei hereby incorporates by reference the allegations contained in all

19  preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

20       190.    Plaintiff Pei asserts this claim on behalf of the National Class, or alternatively, on

21  behalf of the California Sub-class under California law.

22       191.    Defendants distributed the Class Vehicles into the stream of commerce

23  nationally, and in California, New York and Pennsylvania, with the knowledge that these

24  vehicles would be purchased or leased by consumers based on a reasonable expectation that

25  they would contain the standard "auto on/off" feature as Defendants represented.

26       192.    Defendants, in particular Toyota Motor, received funds for the sale of the Class

27  Vehicles which were sold under Toyota Motor's exclusive brand name and based on

28

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx

1  Defendants' reputation and representations, and sold the Class Vehicles with the intention of

2  receiving and keeping such funds and revenues from the sale of the Class Vehicles.

3      193.    Toyota Motor distributed the Class Vehicles with the knowledge that they were

4  not equipped with the "auto on/off" feature.

5      194.    Toyota Motor received an economic benefit at the expense of the Class and Sub-

6  class members, who received vehicles of lesser value than as represented at the time of sale

7  and/or lease.

8      195.    In these circumstances, principles of equity and good conscience make it unjust

9  for Toyota Motor, or its agents, Toyota North America or Toyota Sales, to retain the benefit

10  conferred on it by the Class and Sub-class members and should be required to compensate

11  Plaintiffs and Class and Sub-class members for these benefits.

12  **PRAYER FOR RELIEF**

13      **WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated,

14  pray for a judgment against Defendants as follows:

15      A.    For an order certifying the Class and/or Sub-classes, appointing Plaintiffs as

16  representatives of the Class or their respective Sub-classes, and appointing the law firms

17  representing Plaintiffs as counsel for the Class and Sub-classes;

18      B.    For a declaration that the remedial work necessary to correct and install the

19  missing "auto on/off" feature is covered under the express warranty provided by Defendants

20  which became part of the basis of the bargain;

21      C.    For compensatory damages sustained by Plaintiffs and Class and/or Sub-class

22  members;

23      D.    For an injunction preventing Defendants from continuing to sell the Class

24  Vehicles pursuant to false and deceptive advertising, and causing them to take steps to correct

25  such advertising;

26      E.    For compensatory damages and/or the restitution or refund of all funds acquired

27  by Defendants from Plaintiffs and Class or Sub-class members as a result of Defendants'

28  unlawful, unfair, fraudulent, deceptive and unconscionable practices described above under the

49

Consumer Protection Statutes of New York, California, and Pennsylvania, including actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial;

F.     For the repair and/or replacement of the Class Vehicles for members of the National Class, or alternatively, the California Subclass, making their Class Vehicles conform to Defendants' express warranties;

G.     Trebling of damages suffered by the Class and/or appropriate Sub-class, or other punitive damages;

H.     Payment of costs and expenses of suit herein incurred;

I.     Both pre-and post-judgment interest on any amounts awarded;

J.     Payment of reasonable attorneys' fees and expert fees; and

K.     Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED:  June 20, 2018                **GREEN & NOBLIN, P.C.**


By:   /s/ Robert S. Green
        Robert S. Green

James Robert Noblin
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Gary S. Graifman, Esq.
Jay I. Brody, Esq.
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: (845) 356-2570
Fax: (845) 356-4335

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lynda J. Grant, Esq.
**THE GRANT LAW FIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442

*Attorneys for Plaintiffs*

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-cv-06591-BLF

00107775.000.docx