1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 | |
| --- |

YAN MEI ZHENG-LAWSON, YUANTENG PEI, and JOANNE E. FERRARA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR SALES U.S.A., INC.,

Defendants.

Case No. 17-cv-06591-BLF

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

[Re: ECF 67]

16     Defendants have filed a Motion to Dismiss and Strike Plaintiffs' Second Amended

17 Complaint ("SAC") under Federal Rules of Civil Procedure 12(b)(6) and 12(f). After reviewing

18 the motion, opposition, and reply briefs, the Court submitted the matter for disposition without

19 oral argument. *See* Order Submitting Motion, ECF 71. The motion is GRANTED IN PART

20 AND DENIED IN PART for the reasons discussed below.

21 **I.     BACKGROUND[1]**

22     In this putative class action, Plaintiffs allege that Defendants' brochures represented that an

23 "auto on/off" headlight feature was included as standard on certain 2016 Toyota Rav 4 vehicles –

24 specifically, the XLE, XLE Hybrid, and SE models – when in fact the auto on/off headlight

25 feature was not standard on those models. SAC ¶¶ 1-7, ECF 63.

26

27 _____

[1] Plaintiffs' well-pled factual allegations are accepted as true for purposes of the motion to
28 dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

1    Each Plaintiff purchased a 2016 Toyota Rav 4 model XLE, Zheng-Lawson in New York,

2    Pei in California, and Ferrara in Pennsylvania.  SAC ¶¶ 19-21, 66, 69, 72.  Plaintiffs seek to

3    represent a Nationwide class, as well as New York, California, and Pennsylvania subclasses, of

4    individuals who purchased or leased the XLE, XLE Hybrid, or SE models.  While the named

5    Plaintiffs bought only the XLE model, they argue that they may represent consumers of the XLE

6    Hybrid and SE models who were misled by the same misrepresentation, in the same brochures,

7    regarding inclusion of auto on/off headlights as a standard feature.

8    After filing their original complaint in November 2017, Plaintiffs filed a first amended

9    complaint ("FAC"), which was the subject of a motion to dismiss and strike brought by

10   Defendants under Rules 12(b)(6) and 12(f).  At the motion hearing, the Court stated that overall

11   Plaintiffs' counsel had done "a great job" drafting the pleading, but that there were some

12   deficiencies.  Hrg. Tr. 3:18-24, ECF 58.  The Court discussed those deficiencies on the record and

13   issued a written order offering guidance for amendment.  *See* Hrg. Tr., ECF 58; Order Granting

14   Motion to Dismiss, ECF 54.  Specifically, the Court indicated that Plaintiffs needed to allege what

15   conduct was attributable to each Defendant, rather than lumping all the Defendants together, and

16   needed to attach copies of the brochures at issue or plead their contents verbatim.  *See* Order

17   Granting Motions to Dismiss at 3-5, ECF 54.  The Court noted that Plaintiffs had conceded their

18   claim under California's Song-Beverly Consumer Warranty Act and it granted Plaintiffs leave to

19   assert instead a new claim under California's Secret Warranty Law.  *Id.* at 6.

20   The Court declined to address Defendants' motion to strike, for lack of standing, claims

21   based on the XLE Hybrid and SE models which none of the named Plaintiffs purchased.  Order

22   Granting Motion to Dismiss at 7, ECF 54.  The Court concluded "that it would be premature to

23   address those issues at this early stage of the proceedings," observing that "[i]t is the Court's

24   experience that class claims frequently are narrowed by the time a case reaches the class

25   certification stage."  *Id.*  The ruling was "without prejudice to reassertion of Defendants'

26   arguments if and when this case reaches class certification."  *Id.*

27   Plaintiffs thereafter filed the operative SAC, which contains specific allegations regarding

28   each Defendant and identifies the brochures relied on by Plaintiffs.  The SAC alleges claims for:

2

1  (1) Deceptive Trade Practices in violation of General Business Law § 349 on behalf of New York

2  Subclass; (2) Deceptive Trade Practices in violation of General Business Law § 350 on behalf of

3  New York Subclass; (3) Breach of Express Warranty in violation of California Commercial Code

4  § 2313 on behalf of Nationwide Class or, alternatively, California Subclass; (4) Breach of Express

5  Warranty in violation of New York Uniform Commercial Code § 2-313 on behalf of New York

6  Subclass; (5) Breach of Express Warranty in violation of 13 Pa. C.S.A. § 2313 on behalf of

7  Pennsylvania Subclass; (6) Unfair Competition in violation of California Business & Professions

8  Code § 17200 et seq. on behalf of Nationwide Class or, alternatively, California Subclass; (7)

9  violation of California's Consumer Legal Remedies Act, California Civil Code § 1750 et seq., on

10  behalf of Nationwide Class or, alternatively, California Subclass; (8) violation of California's

11  Secret Warranty Law, California Civil Code § 1795.90 et seq., on behalf of California Subclass;

12  (9) Deceptive Acts in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection

13  Law, 73 P.S. 201-2 et seq., on behalf of Pennsylvania Subclass; (10) Unfair Conduct in violation

14  of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 et seq., on

15  behalf of Pennsylvania Subclass; and (11) Unjust Enrichment under California law on behalf of

16  Nationwide Class or, alternatively, California Subclass.

17  Defendants move to dismiss the SAC under Rule 12(b)(6) and again move to strike claims

18  based on the XLE Hybrid and SE models under Rule 12(f).

19  **II.    MOTION TO DISMISS**

20  **A.    Legal Standard**

21  "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

22  claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

23  *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

24  729, 732 (9th Cir. 2001)). While a complaint need not contain detailed factual allegations, it

25  "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

26  on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

27  550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the

28  reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3

1      **B.      Discussion**

2      Defendants move to dismiss Plaintiffs' claims for breach of express warranty (Counts III,

3      IV, and V) and their claims for breach of state consumer protection statutes (Counts I, II, VI, VII,

4      IX, and X). Defendants also seek dismissal of Plaintiff Pei's claim under California's Secret

5      Warranty Law (Count VIII) and his claim for unjust enrichment (Count XI).

6      **1.      Breach of Express Warranty**

7      In Counts III, IV, and V, Plaintiffs assert claims for breach of express warranty under the

8      laws of California, New York, and Pennsylvania. The claims are based on brochures that

9      Plaintiffs allege they saw and relied on in deciding to purchase their vehicles.

10     The Court previously dismissed the express warranty claims because Plaintiffs had neither

11     submitted copies of the brochures nor alleged their contents with specificity. *See* Order Granting

12     Motions to Dismiss at 4-5, ECF 54. "[A]n express warranty is created only when an 'affirmation

13     of fact or promise' or a 'description of the goods' is part of the 'basis of the bargain.'" *In re Nexus*

14     *6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 914 (N.D. Cal. 2018) (describing laws of California,

15     New York, Pennsylvania, and other states).

16     Plaintiffs have cured this deficiency by attaching the brochures they viewed to the SAC.

17     *See* SAC ¶¶ 67, 70, 73 & Exhs. A, B. Exhibit A is a hard copy brochure that was available in

18     dealerships and Exhibit B is a brochure that was available on the Internet. *See* SAC ¶ 7 and Exhs.

19     A, B. The brochures described the Rav 4 models offered for sale in 2016, listing each model's

20     features in bullet point fashion. *See* SAC Exh. A at Pltf. 000876-77; Exh. B at Pltf. 000101-03.

21     The brochures listed the auto on/off headlights feature among the "Exterior Features" on the XLE,

22     XLE Hybrid, and SE models. *See id.* The auto on/off feature was not listed among the "Options"

23     available for purchase. *See id.* Plaintiffs understood the brochures to represent that the auto on/off

24     headlights were provided as standard features of the XLE, XLE Hybrid, and SE models. SAC ¶¶

25     68, 71, 74. They paid a higher price for the XLE model because they wanted the auto on/off

26     headlights feature, which was not offered as standard on the lower priced LE model. *See id.*

27     When Plaintiffs received their vehicles, however, they were not equipped with the auto on/off

28     headlights feature. *See id.* In fact, Plaintiffs discovered that *none* of the standard versions of the

4

1   2016 Toyota Rav 4 XLE, XLE Hybrid, and SE models sold in the United States were equipped

2   with the auto on/off headlight feature.  SAC ¶¶ 12, 15.  These allegations are sufficient to plead

3   the terms of the express warranty and its breach.

4   Defendants contend that "disclaimers contained in each version of the brochure render the

5   statements regarding the vehicle's standard equipment neither 'specific' nor 'unequivocal' so as to

6   plausibly create an express warranty."  Defs.' Motion at 6, ECF 67.  Disclaimers of express

7   warranties are governed by identical commercial code provisions in California, New York, and

8   Pennsylvania:  "Words or conduct relevant to the creation of an express warranty and words or

9   conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent

10  with each other; but . . . negation or limitation is inoperative to the extent that such construction is

11  unreasonable."  Cal. Com. Code § 2316(1); N.Y. U.C.C. § 2-316(1); 13 Pa. Stat. and Cons. Stat.

12  Ann. § 2316(a).

13  Defendants point to the following language, which appeared in both the hard copy and

14  online brochures, arguing that the language negated any warranty regarding the Rav 4 models'

15  standard features:

16  All information presented herein is based on data available at the time of printing,
    is subject to change without notice and pertains specifically to mainland U.S.A.
17  vehicles only.  Prototypes shown.  Actual production vehicles may vary.

18  SAC Exh. A at Pltf. 000881; Exh. B at Pltf. 000110 (replacing "printing" with "posting").

19  Defendants also quote additional language which appeared only in the hard copy brochure:

20  For details on vehicle specifications, standard features and available equipment in
    your area, contact your Toyota dealer.  A vehicle with particular equipment may
21  not be available at the dealership.  Ask your Toyota dealer to help locate a
    specifically equipped vehicle.

22

23  SAC Exh. A at Pltf. 000881.

24  The Court declines to find as a matter of law, at the pleading stage, that this language was

25  sufficient to negate Defendants' representations regarding the standard features of the vehicles in

26  question.  The statement that the information in the brochures was based on "data available at the

27  time of printing" and was "subject to change without notice" did not clearly inform consumers that

28  the bullet point lists of vehicle features were meaningless.  To the contrary, the statement

5

1    suggested that those lists were accurate when the brochures issued.  On its face, the disclaimer was

2    directed to situations in which one or more vehicle features changed after issuance of the

3    brochures.  Similarly, directing consumers to contact a local Toyota dealer for details regarding

4    the availability of a vehicle with particular equipment did not inform consumers that the standard

5    models described in the brochure were non-existent in the United States.  Plaintiffs allege that

6    *none* of the standard versions of the 2016 Toyota Rav 4 XLE, XLE Hybrid, and SE models sold in

7    the United States were equipped with the auto on/off headlight feature.  SAC ¶¶ 12, 15.  As

8    discussed above, a negation or limitation on an express warranty "is inoperative to the extent that

9    such construction is unreasonable."  Cal. Com. Code § 2316(1); N.Y. U.C.C. § 2-316(1); 13 Pa.

10   Stat. and Cons. Stat. Ann. § 2316(a).  Plaintiffs have alleged facts sufficient to show that they

11   reasonably understood the brochures to contain a warranty that the auto on/off feature was

12   standard on the XLE, XLE Hybrid, and SE models, and that application of the asserted disclaimers

13   to negate that warranty would be unreasonable in this case.

14         Given this conclusion, the Court need not reach Plaintiffs' arguments that the disclaimers

15   were not sufficiently conspicuous to be valid, or the many cases cited by both sides regarding the

16   legal effect of font size, placement, and other aspects of disclaimer language.

17         Defendants cite *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1230 (2010), for

18   the proposition that Plaintiffs cannot maintain their express warranty claims absent specific

19   allegations regarding the circumstances of their purchases from non-party dealers.  *See* Defs.'

20   Motion at 8-9, ECF 67.  Defendants suggest that such allegations are required because Plaintiffs'

21   interactions with dealers might show that they did not reasonably rely on the vehicle descriptions

22   in the brochures.  *See id.*  Having read *Weinstat* carefully, and in particular the single page cited by

23   Defendants, the Court is unable to extract any such pleading requirement from the case.  To the

24   contrary, *Weinstat* holds that a plaintiff asserting an express warranty claim under California law

25   need not even prove reliance on the seller's description of goods, and that California Commercial

26   Code § 2313 "creates a presumption that the seller's affirmations go to the basis of the bargain."

27   *Weinstat*, 180 Cal. App. 4th at 1227.

28         Defendants' motion to dismiss is DENIED as to the express warranty claims.

### 2. Consumer Protection Statutes

In Counts I, II, VI, VII, IX, and X, Plaintiffs assert violations of the consumer protection laws of California, New York, and Pennsylvania. Plaintiffs claim that Defendants' brochures misled Plaintiffs into believing that the vehicles they purchased were equipped with automatic on/off headlights when in fact the vehicles did not have that feature.

The Court previously dismissed the consumer protection claims because Plaintiffs had not identified the brochures that contained the allegedly deceptive statements. *See* Order Granting Motions to Dismiss at 5, ECF 54. Plaintiffs have cured that defect by identifying the relevant brochures and attaching them to their SAC. *See* SAC Exhs. A, B.

Defendants argue that Plaintiffs have failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Where claims brought under California's consumer protection statutes are grounded in fraud, they must satisfy Rule 9(b). *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Rule 9(b) does not apply to certain of Plaintiffs' claims under New York and Pennsylvania consumer protection statutes. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 n.33 (3d Cir. 2013) (claim under catchall provision of Pennsylvania's Unfair Trade Practices and Consumer Protection Law need not meet the heightened pleading requirement of Rule 9(b)); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 996 (N.D. Cal. 2016) (Rule 9(b) does not apply to claims under New York's General Business Law § 349).

This difference in pleading standards has no practical effect here, because Plaintiffs' allegations do satisfy Rule 9(b). Plaintiffs allege that Defendants were jointly responsible for creating, publishing, and disseminating marketing materials, including the brochures Plaintiffs viewed. *See* SAC ¶ 11. Plaintiffs attach copies of the brochures to the SAC. *See* SAC Exhs. A, B. Plaintiffs explain that they understood the brochures to represent that the standard versions of the XLE, XLE Hybrid, and SE models were equipped with the auto on/off headlights feature. SAC ¶¶ 6-10. Plaintiffs relied on the representations in the brochures in deciding to purchase the XLE model. SAC ¶ 14. Plaintiffs allege that Defendants knew that the standard versions of the XLE, XLE Hybrid, and SE models did not contain the auto on/off headlights feature. SAC ¶ 15.

7

1    And finally, Plaintiffs allege that they were injured because they bought higher end models at

2    higher prices than they otherwise would have paid based on their belief that the models would

3    have the auto on/off feature. SAC ¶ 14. These allegations are repeated throughout the SAC with

4    additional details regarding each named Plaintiff's experiences. The Court concludes that the

5    allegations are sufficient to satisfy Rule 9(b).

6        Defendants also argue that Plaintiffs have failed to allege that the brochures would mislead

7    reasonable consumers. Liability under California, New York, and Pennsylvania consumer

8    protection statutes are governed by a "reasonable" or "ordinary" consumer standard. *See*

9    *Davidson*, 889 F.3d at 964 n.2 (California); *Oswego Laborers' Local 214 Pension Fund v. Marine*

10   *Midland Bank, N.A.*, 85 N.Y. 2d 20, 26 (1995) (New York); *Com. ex rel. Corbett v. Manson*, 903

11   A.2d 69, 74 (2006) (Pennsylvania). Under this standard, a plaintiff must allege facts showing that

12   "members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934,

13   938 (9th Cir. 2008) (internal quotation marks and citation omitted). "[W]hether a business practice

14   is deceptive will usually be a question of fact not appropriate for decision" at the pleading stage.

15   *Id.* 938-39. As discussed above, Plaintiffs allege that based on Defendants' brochures, they

16   reasonably believed the auto on/off headlights feature was standard on the XLE, XLE Hybrid, and

17   SE models of the 2016 Rav 4. The auto on/off headlights feature was not standard on those

18   models. Plaintiffs' allegations, and the brochures themselves, are sufficient to allege that a

19   reasonable or ordinary consumer would have been deceived.

20       Defendants rely on *Oswego* in arguing that Plaintiffs have failed to allege that reasonable

21   consumers would have relied solely on the brochures in purchasing their vehicles. Defendants'

22   reliance is misplaced. In *Oswego*, the plaintiffs sued the defendant bank for lost interest, alleging

23   that the bank failed to inform them that certain accounts would not receive interest on deposits in

24   excess of $100,000. The trial court granted summary judgment for the bank, and the plaintiffs

25   appealed. The appellate court reversed, finding that it was unclear from the record whether the

26   bank gave the plaintiffs documents informing them about the limitation on interest, and thus

27   whether a reasonable consumer in the plaintiffs' circumstances might have been misled by the

28   bank's conduct. *Oswego*, 85 N.Y. 2d at 27. The case does not set forth, or even suggest, that a

1    plaintiff suing on misrepresentations contained in advertising brochures must allege facts showing

2    that a reasonable consumer would have relied solely on those brochures in deciding to purchase.

3          Defendants' motion to dismiss is DENIED as to the consumer protection claims.

4              **3.**        **California's Secret Warranty Law**

5          Count VIII is asserted by Plaintiff Pei under California' Secret Warranty Law, Cal. Civ.

6    Code § 1795.90, et seq.  Under the California Secret Warranty Law, "[a] manufacturer shall,

7    within 90 days of the adoption of an adjustment program, . . . notify by first-class mail all owners

8    or lessees of motor vehicles eligible under the program of the condition giving rise to and the

9    principal terms and conditions of the program."  Cal. Civ. Code § 1795.92(a).  An adjustment

10   program is defined as:

11           any program or policy that expands or extends the consumer's warranty beyond its
     stated limit or under which a manufacturer offers to pay for all or any part of the
12           cost of repairing, or to reimburse consumers for all or any part of the cost of
     repairing, any condition that may substantially affect vehicle durability, reliability,
13           or performance, other than service provided under a safety or emission-related
     recall campaign.  "Adjustment program" does not include ad hoc adjustments made
14           by a manufacturer on a case-by-case basis.

15   Cal. Civ. Code § 1795.90(d).  In order to state a claim under this statute, a plaintiff must allege

16   facts showing that the manufacturer adopted an adjustment program.  *See In re MyFord Touch*

17   *Consumer Litig.*, 46 F. Supp. 3d 936, 990 (N.D. Cal. 2014).  It is insufficient to provide only

18   conclusory allegations that the manufacturer expanded or extended the original warranty.  *See id.*

19         Pei alleges that "[t]he existence of the 'secret warranty' is established by the fact that

20   Plaintiff Ferrara was offered $300-$500 or an automatic starter to address the failure to include the

21   auto on/off feature in their headlight system."  SAC ¶ 163.  He alleges further that "[t]his remedy,

22   however, was only available to those who complained loudly enough."  *Id.*  Defendants correctly

23   point out that these allegations are insufficient to allege the adoption of an adjustment program as

24   defined above.  At most, the allegations suggest that Defendants made ad hoc adjustments on a

25   case-by-case basis.

26         Although Plaintiffs have amended their pleading twice previously, they added the secret

27   warranty claim in their last amendment and have not received any guidance from the Court on that

28   claim until now.  The Court therefore will grant Plaintiffs leave to amend the claim.

1    Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the claim

2    for violation of California's Secret Warranty Law.

3                    **4.        Unjust Enrichment**

4    In Count XI, Plaintiff Pei asserts a claim for unjust enrichment under California law on

5    behalf of the Nationwide class or, alternatively, the California subclass.  The Court previously

6    dismissed the unjust enrichment claim because Plaintiffs had not specified which state's law

7    governs the claim.  *See* Order Granting Motions to Dismiss at 6, ECF 54.  Plaintiffs have cured

8    that defect by specifying California law.

9    The Ninth Circuit has held that a claim for unjust enrichment under California law may be

10   treated as a quasi-contract claim seeking restitution.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d

11   753, 762 (9th Cir. 2015).  Such a claim is based on the theory "that a defendant has been unjustly

12   conferred a benefit through mistake, fraud, coercion, or request."  *Id.* (internal quotation marks

13   and citation omitted).  In *Astiana*, the plaintiff "alleged in her First Amended Complaint that she

14   was entitled to relief under a 'quasi-contract' cause of action because Hain had 'entic[ed]'

15   plaintiffs to purchase their products through 'false and misleading' labeling, and that Hain was

16   'unjustly enriched' as a result."  *Id.*  The Ninth Circuit concludes that "[t]his straightforward

17   statement is sufficient to state a quasi-contract cause of action."  *Id.*

18   Pei alleges that Defendants represented that the XLE, XLE Hybrid, and SE models were

19   equipped with the auto on/off feature; Defendant Toyota Motor knew that those models were not

20   equipped with the auto on/off feature; class members purchased or leased those models based on a

21   reasonable expectation that they would have the auto on/off feature; Defendant Toyota Motor

22   received funds from those sales; and Defendant Toyota Motor thereby received an economic

23   benefit at the expense of class members.  SAC ¶¶ 189-194.  Under the rationale of *Astiana*,

24   Plaintiffs' allegations are sufficient to state a claim against Defendant Toyota Motor.

25   Defendants' motion to dismiss this claim is based upon somewhat convoluted

26   hypotheticals that do not find support in the SAC.  The Court need not address Defendants'

27   hypotheticals to conclude that Plaintiffs have stated a straightforward claim for unjust enrichment

28   similar to that stated by the plaintiff in *Astiana*.

1     Defendants' motion to dismiss is DENIED as to the unjust enrichment claim.

2     **III.    MOTION TO STRIKE**

3          **A.     Legal Standard**

4          Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

5     insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The

6     function of a motion made under this rule is "to avoid the expenditure of time and money that

7     must arise from litigating spurious issues by dispensing with those issues prior to trial."

8     *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation marks and

9     citation omitted).  "While a Rule 12(f) motion provides the means to excise improper materials

10    from pleadings, such motions are generally disfavored because the motions may be used as

11    delaying tactics and because of the strong policy favoring resolution on the merits."  *Barnes v. AT*

12    *& T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

13         **B.     Discussion**

14         Defendants move to strike Plaintiffs' claims based on the XLE Hybrid and SE models

15    which were not purchased by any of the named Plaintiffs.  Defendants argue that Plaintiffs lack

16    standing to assert claims on behalf of persons who purchased or leased the XLE Hybrid and SE

17    models, because those vehicles are not sufficiently similar to the XLE model which was purchased

18    by Plaintiffs.

19         Defendants raised this standing argument in its prior motion, and the Court declined to

20    address it at that time, concluding that the issue was premature.  *See* Order Granting Motions to

21    Dismiss at 7, ECF 54.  The Court observed that "class claims frequently are narrowed by the time

22    a case reaches the class certification stage," and denied the motion to strike "without prejudice to

23    reassertion of Defendants' arguments if and when this case reaches class certification."  *Id.*

24         Defendants acknowledge the Court's prior guidance, but they ask the Court to reconsider

25    whether it is appropriate to address the standing issue at this time in light of the fact that the Court

26    now has before it brochures describing the different Rav 4 models.  Defendants argue that those

27    brochures make clear that the three models contain different standard and optional features, and

28    that as a result Plaintiffs have not alleged that the non-purchased XLE Hybrid and SE models are

1  sufficiently similar to the purchased XLE model under the standards applied by this Court in

2  *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2015 WL 2125004, at \*5 (N.D. Cal.

3  May 6, 2015).

4        Given that all three vehicles are models of the 2016 Rav 4, and that the asserted class

5  claims are based on the same alleged misrepresentation contained in the same brochures, the Court

6  does not find the standing issue to be as clear-cut as Defendants would wish.  However, the Court

7  need not decide the standing issue now, because – as stated in the prior order – the issue more

8  appropriately should be addressed at class certification.

9  **IV.  ORDER**

10       (1)    The motion to dismiss the SAC is GRANTED WITH LEAVE TO AMEND as to

11            Count VIII for violation of California' Secret Warranty Law, and otherwise is

12            DENIED.

13       (2)    The motion to strike is DENIED.

14       (3)    Any amended pleading shall be filed on or before January 4, 2019.  Leave to amend

15            is limited to Count VIII.  Plaintiffs may not add new claims or parties without

16            express leave of the Court.  If Plaintiffs choose not to amend, they shall file a

17            notice informing the Court and Defendants of that decisions as soon as is

18            practicable.  In that event, Defendants' time to answer the SAC will run from

19            the filing of such notice.

21  Dated: December 13, 2018

22  _____

BETH LABSON FREEMAN
23  United States District Judge

12