United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

YAN MEI ZHENG-LAWSON,
YUANTENG PEI, and JOANNE E.
FERRARA, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

     v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR NORTH AMERICA,
INC. and TOYOTA MOTOR SALES
U.S.A, INC.,

        Defendants.

Case No.  17-cv-06591-BLF

**ORDER DENYING PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION**

[Re:  ECF 83]

[PUBLIC REDACTED VERSION]

      In this putative class action, Plaintiffs Yuanteng Pei ("Pei") and Joanne E. Ferrara

("Ferrara") (collectively, "Plaintiffs")[1] claim that Defendants Toyota Motor Corporation, Toyota

Motor Corporation North America, Inc., and Toyota Motor Sales U.S.A., Inc. (collectively,

"Toyota") falsely advertised that certain 2016 Toyota RAV4 models were equipped with

automatic on/off headlights as a standard feature.  The vehicles in question – the 2016 RAV4

XLE, XLE Hybrid, and SE models ("Class Vehicles") – did not come with automatic on/off

headlights unless that feature was purchased as part of an additional options package.  Toyota's

misstatement that the feature came standard on the Class Vehicles appeared in a printed Brochure,

on the Toyota website, in a downloadable eBrochure, and in dealer training materials that

Plaintiffs claim resulted in customers receiving misinformation at the point of sale.

---

[1] Yan Mei Zheng-Lawson ("Zheng-Lawson") has settled her claims and has been withdrawn as a
plaintiff in this case.

United States District Court
Northern District of California

1  The operative second amended complaint ("SAC") asserts claims for breach of express

2  warranty, violation of state consumer protection statutes, unfair competition, and unjust

3  enrichment based on Toyota's misstatement that the automatic on/off headlights feature ("the

4  Feature") was standard on Class Vehicles.  Plaintiffs seek certification of a nationwide class of

5  persons who purchased and/or leased a Class Vehicle that was not equipped with the Feature.

6  Plaintiffs asserts that California law should be applied to the nationwide class and they ask the

7  Court to certify, on behalf of a nationwide class, the following claims under California law:  Count

8  III for breach of express warranty, Count VI for unfair competition, Count VII under the

9  Consumer Legal Remedies Act, and Count XI for unjust enrichment.  To the extent the Court

10  finds that the laws of other states conflict with those of California and that those states have a

11  greater interest in the application of their laws to the claims at issue, Plaintiffs seek certification of

12  a partial nationwide class consisting of class members who reside in states whose laws do not

13  conflict with those of California.  Alternatively, Plaintiffs seek certification of subclasses under

14  the laws of California and Pennsylvania, where Pei and Ferrara purchased their vehicles.[2]

15  Toyota does not dispute that printed and online brochures for the 2016 RAV4 vehicles

16  misstated that the Feature came standard on the XLE, XLE Hybrid, and SE models when in fact

17  the Feature was available on those models only as part of an options package.  However, Toyota

18  argues that a limited number of hard copy Brochures containing the error were distributed; the

19  Toyota website and eBrochure contained the erroneous information for only a month before being

20  corrected in late January 2016; and there is no evidence that any salesperson told any class

21  member that the Feature came standard on the XLE, XLE Hybrid, and SE models.  Under these

22  circumstances, Toyota argues, Plaintiffs cannot establish classwide exposure to the misstatement

23  as required for class certification.

24  The Court agrees that Plaintiffs have failed to establish classwide exposure to Toyota's

25  misstatement, and on that basis Plaintiffs' motion for class certification is DENIED.

26  _____

27  [2] Plaintiffs' counsel suggests that the Court also could certify a subclass under the laws of New York, where Zheng-Lawson purchased her vehicle, and then grant leave to substitute another New York class member in place of Zheng-Lawson.  The Court declines to consider certification of a New York subclass based on the potential claims of an unnamed plaintiff.

28

United States District Court
Northern District of California

## I.    BACKGROUND

In November 2015, Toyota launched the 2016 RAV4 in the United States.  There were six models in the line:  LE, XLE, XLE Hybrid, SE, Limited, and Limited Hybrid.  *See* Brochure, Green Decl. Exh. 15.  The Feature was standard only on the Limited and Limited Hybrid models. *See id.* at TOY-ZHENG 414.  The Feature was available as part of an options package on the Class Vehicles – the XLE, XLE Hybrid, and SE models – and it was not available on the LE base model.  *See id.*

*Brochure, Website, and eBrochure*

Toyota produced a glossy promotional Brochure for the 2016 RAV4 line, which was distributed to approximately ▮▮▮ Toyota dealers throughout the United States.  *See* Hoffman Decl. ¶ 4.  The Brochure contained photographs of all 2016 RAV4 models, showed the colors available for each model, displayed a ▮▮▮▮▮ of the standard features for each model, and included a more detailed listing of the available and unavailable features for each model.  *See* Brochure, Green Decl. Exh. 15; Hoffman Dep. 29:2-18, Green Decl. Exh. 4.  A ▮▮▮▮ is a chart separated into columns, each column topped by a picture of a vehicle model and highlighting the standard features of that model.  *See* Brochure, Green Decl. Exh. 15; Hoffman Dep. 29:2-18, Green Decl. Exh. 4.  The ▮▮▮▮ in the Brochure incorrectly identified the Feature as standard on the Class Vehicles.  *See* Brochure, Green Decl. Exh. 15.  Most dealers received a shipment of ▮▮▮ or fewer Brochures in early January 2016, but many dealers ordered additional Brochures throughout the model year, that is, through September 2016.  *See* Hoffman Decl. ¶ 4.  A total of ▮▮▮▮ hard copy Brochures were shipped to Toyota dealers in the United States.[3]  *See id.*

Toyota also provided information about the 2016 RAV4 on its website, toyota.com, and in an eBrochure that could be downloaded from the website.  *See* Hack Decl. ¶¶ 3-6.  When the website and eBrochure were launched on December 22, 2015, both the website landing pages for the RAV4 models and the downloadable eBrochure misstated that the Feature was standard on the Class Vehicles.  *See id.*  On January 12, 2016, Toyota learned of a customer complaint regarding

---

[3] An additional 197 Brochures were shipped to Toyota sponsors or dealers outside the United States, and 225 Brochures were returned to Toyota.  *See* Hoffman Decl. ¶ 4.

United States District Court
Northern District of California

the absence of the Feature on a SE model vehicle.  *See id.* ¶ 6.  Toyota took steps to correct the website and downloadable eBrochure, correcting the RAV4 landing pages on the website by January 20, 2016 and the downloadable eBrochure by January 27, 2016.  *See id.* ¶¶ 6, 9-10.  However, the original eBrochure was cached by Google and remained available to users who entered the link https://www.toyota.com/content/ebrochure/2016/rav4hybrid_ebrochure.pdf.  *See id.* ¶¶ 12-13; Margulies Decl. ¶¶ 22-23.  It is unknown how many visitors accessed the cached eBrochure after the toyota.com website was corrected.

Toyota did not attempt to correct the error in the hard copy Brochure.  *See* Hack Decl. ¶¶ 6-7.  Ashley Hack, who was involved in creation of the 2016 RAV4 marketing materials, stated that Toyota viewed correction of the website and eBrochure to be of primary importance because customers typically start the car buying process with online research.  *See id.* ¶¶ 2, 6.  According to Hack, hard copy brochures generally are not used by dealers to provide information to potential customers, but rather as an item that can be given to a potential customer to take home with the salesperson's business card stapled to it.  *See id.* ¶ 7.  Toyota determined that it was not necessary to reprint or otherwise correct the hard copy Brochure.  *See id.*

*Dealer Training Materials*

Dealer training materials also included the misinformation that the Feature was standard on the Class Vehicles.  Motion at 2, ECF 87-4.  The misinformation was contained in both an internal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that Toyota used to train regional sales training teams and distributors, and in ▮▮▮▮ documents made available to dealers.  *See* Hoffman Decl. ¶¶ 7-9; Hoffman Dep. 53:22-57:11, 58:12-63:1, Green Decl. Exh. 4.  The ▮▮▮▮▮▮▮▮▮▮ was a manual that was used to create training programs for dealers.  *See* Hoffman Decl. ¶ 7.  The "▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Hoffman Decl. ¶ 8.  Toyota's internal website made the "▮▮▮▮▮ comparison documents available to dealers.  Hoffman Decl. ¶¶ 8-9; Hoffman Dep. at 58:12-63:1.  Both the ▮▮▮▮▮▮▮▮▮▮▮▮ and the ▮▮▮▮ documents stated incorrectly that the Feature was standard on the Class Vehicles.  Those training materials were available only to dealers; they were not accessed by or distributed to customers.  Hoffman Dep. 60:21-63:1.  The ▮▮▮▮▮▮▮▮

4

1   documents for the 2016 RAV4 were downloaded by dealers ██ times over the course of the

2   model year.  Hoffman Decl. ¶ 9.

3         *Sales*

4         Following launch of the 2016 RAV4 line in November 2015, a total of █████ RAV4

5   vehicles were sold in the mainland United States.  *See* Mito Decl. ¶ 3-7.  More than half of the

6   2016 RAV4s sold were models not included in the Class Vehicle definition – ████ were LE

7   models and █████ were Limited models.  *See id.* ¶ 7.  Of the ██████ Class Vehicles sold,

8   ██████ were sold without an options package adding the Feature.  *See id.* ¶¶ 4-6.

9         Plaintiffs seek to represent a class of consumers who purchased or leased Class Vehicles

10  without the Feature.  *See* Notice of Motion, ECF 83.

11  **II.**    **LEGAL STANDARD**

12        A class action is maintainable only if it meets the four threshold requirements of Rule

13  23(a):  (1) the class is so numerous that joinder of all members is impracticable; (2) there are

14  questions of law or fact common to the class; (3) the claims or defenses of the representative

15  parties are typical of the claims or defenses of the class; and (4) the representative parties will

16  fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Amchem Prod., Inc.*

17  *v. Windsor*, 521 U.S. 591, 613 (1997).

18        "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

19  show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem*, 521 U.S. at 614.

20  Certification under Rule 23(b)(1) is proper "where prosecuting separate actions by or against

21  individual class members would create a risk of:  (A) inconsistent or varying adjudications with

22  respect to individual class members that would establish incompatible standards of conduct for the

23  party opposing the class; or (B) adjudications with respect to individual class members that, as a

24  practical matter, would be dispositive of the interests of the other members not parties to the

25  individual adjudications or would substantially impair or impede their ability to protect their

26  interests."  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on

27  grounds that apply generally to the class, so that final injunctive relief or corresponding

28  declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(3) requires that

United States District Court
Northern District of California

1    "questions of law or fact common to class members predominate over any questions affecting only

2    individual members," and that "a class action is superior to other available methods for fairly and

3    efficiently adjudicating the controversy."

4         "A party seeking class certification must affirmatively demonstrate his compliance with

5    the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties,

6    common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**III.   DISCUSSION**

Plaintiffs seek certification of a nationwide class defined as:

> All persons who purchased and/or leased a model year ("MY") 2016 Toyota RAV4 XLE, XLE Hybrid or SE vehicle (the "Class Vehicles") from Defendants Toyota Motor Corporation ("TMC"), Toyota Motor North America, Inc. ("Toyota North America"), and/or Toyota Motor Sales U.S.A., Inc. ("Toyota Sales", collectively with TMC and Toyota North America, "Toyota") that was not equipped with an automatic on/off headlight feature (the "Feature") (the "Class", "Class members"). To the extent that the Court finds the consumer, express warranty and/or unjust enrichment laws of states other than California conflict with those of California, and that those states have a greater interest in the application of their laws to claims at issue here, alternatively, Plaintiffs seek certification of a partial nationwide class consisting of Class members, who reside in states whose laws do not, in whole or in part, conflict with those of California.

Notice of Motion at 1, ECF 83.  Alternatively, Plaintiffs seek certification of the following

subclasses:

> The California Subclass: By Plaintiff Pei:

> All persons who were citizens of the State of California at the time of their purchase or lease of a Class Vehicles from Defendants that was not equipped with the Feature.

> The Pennsylvania Subclass: By Plaintiff Ferrara:

> All Persons who were citizens of the State of Pennsylvania at the time of their purchase or lease of a Class Vehicles from Defendants that was not equipped with the Feature.

Notice of Motion at 2, ECF 83.

Plaintiffs argue that the requirements of Rule 23(a) are satisfied, and that certification of

both damages and injunctive relief classes is warranted under Rules 23(b)(3) and (b)(2),

respectively.

In response, Toyota argues that certification should be denied for numerous reasons.  First,

6

United States District Court
Northern District of California

Toyota argues that Plaintiffs have not established commonality as required under Rule 23(a), because they have not shown classwide exposure to the misstatement. Second, Toyota asserts that Plaintiffs are not typical or adequate representatives of the class. Third, Toyota contends that Plaintiffs have not established grounds for certifying an injunctive relief class under Rule 23(b)(2), because they seek injunctive relief not stated in the SAC, they have an adequate remedy at law, and they have not established that classwide injunctive relief is appropriate because many class members did not see the misstatement. Fourth, Toyota argues that Plaintiffs have not established grounds for certifying a damages class under Rule 23(b)(3), because individual questions predominate, Plaintiffs have not established that damages are capable of measurement on a classwide basis, California law cannot be applied to a nationwide class without impairing other states' interests, and fifty subclasses based on the laws of fifty states would not be manageable. Fifth, Toyota argues that Plaintiffs, who purchased only the XLE model, cannot represent individuals who purchased the XLE Hybrid or SE models. Sixth, Toyota contends that Plaintiffs have failed to establish that a class action is superior to other available methods for adjudicating the controversy.

In connection with these arguments, each side has objected to and moved to exclude evidence submitted by the other. The Court first addresses the evidentiary issues, and then it turns to the requirements of Rule 23.

### A.     Evidentiary Objections / Motions to Exclude

#### 1.     Plaintiffs' Objections to Declarations and Exhibits

Plaintiffs move to strike the Declarations of Emily Gaitan, Jon Ciarletta, and Barry M. Hare, and exhibits attached thereto, on the basis that Toyota did not disclose those witnesses or produce the subject exhibits prior to opposing the class certification motion. Plaintiffs also object to exhibits attached to the Declaration of W. Joshua Hoffman, asserting that they should have been produced earlier in the case. Finally, Plaintiffs object to paragraph 7 of the Declaration of Ashley Hack, and Exhibit 3 attached thereto, on foundation grounds.

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. The rule requires that parties, "without awaiting a discovery request, provide to the other parties" the names and contact

United States District Court
Northern District of California

1  information of all individuals that the disclosing party may use to support its claims, unless such

2  use would be solely for impeachment, as well as "a copy – or a description by category and

3  location—of all documents, electronically stored information, and tangible things that the

4  disclosing party has in its possession, custody, or control and may use to support its claims or

5  defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i), (ii).

6  Rule 26(e)(1) governs supplementation of disclosures and discovery responses.  That rule requires

7  parties to supplement their prior disclosures "in a timely manner" when "the party learns that in

8  some material respect the disclosure or response is incomplete or incorrect, and if the additional or

9  corrective information has not otherwise been made known to the other parties during the

10  discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).

11  "If a party fails to provide information or identify a witness as required by Rule 26(a) or

12  (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

13  hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

14  37(c)(1).  Rule 37 lists other sanctions that a court may impose in addition to or in lieu of an

15  exclusion sanction.  *See* Fed. R. Civ. P. 37(c)(1).  "Courts that have imposed an exclusion sanction

16  have generally done so when the complaining party was unable to take discovery or respond to her

17  opponent's testimony."  *Davis v. Phillips 66*, No. 17-CV-00128-JST, 2018 WL 692045, at *2

18  (N.D. Cal. Feb. 2, 2018).

19  Plaintiffs submit correspondence between their counsel and Toyota's counsel about the

20  witnesses and documents.  *See* Letters, Green Reply Decl. Exhs. 8, 9, 11.  Toyota's counsel took

21  the position that none of the exhibits in question was responsive to previous discovery requests,

22  with the exception of Exhibits 1 and 2 to the Ciarletta Declaration, as to which counsel stated that

23  he had not produced due to an erroneous belief that they were not responsive.  *See* Letter, Green

24  Reply Decl. Exh. 11.  Toyota's counsel stated that no documents were withheld intentionally;

25  opined that the late production of the exhibits to the Ciarletta Declaration – a market survey and

26  aggregate results of the survey – was not prejudicial to Plaintiffs because the exhibits were filed

27  with Toyota's opposition to class certification almost two months before Plaintiffs' reply brief was

28  due; and offered to make all witnesses available for deposition.  *See id.*

1    Plaintiffs deposed Emily Gaitan, Ashley Hack, Jon Ciarletta, and W. Joshua Hoffmann in

2    August 2019; Plaintiffs did not seek to depose Barry M. Hare.  *See* Margulies Decl. ¶¶ 8-11.

3    Plaintiffs filed an administrative motion to extend their reply deadline to September 10, 2019,

4    based on Plaintiffs' need to review documents recently produced by Toyota and to take additional

5    depositions.  *See* Administrative Motion, ECF 107.  The administrative motion was not opposed

6    by Toyota and was granted by the Court.  *See* Order, ECF 108.  Plaintiffs timely filed their reply

7    along with rebuttal declarations from both of their experts, David McLellan and Stefan Boedeker.

8    Relying on *Brown v. Wal-Mart Store, Inc.*, No. 09-CV-03339-EJD, 2018 WL 2011935

9    (N.D. Cal. Apr. 27, 2018), Plaintiffs argue that Toyota's conduct warrants exclusion of the late-

10   produced witness declarations and documents.  In *Brown*, the Court found that the defendant

11   improperly withheld "a massive amount of information" from the plaintiffs until after fact

12   discovery was closed, the deadline for opening expert reports had passed, the plaintiffs had filed a

13   motion for summary judgment, and briefing had been completed on a motion to decertify the

14   class.  *See Brown*, 2018 WL 2011935, at *1-2, 4.  Based on those facts, the district court granted

15   in part the plaintiffs' request for exclusion of evidence as a discovery sanction.  *See id.* at *4.

16   *Brown* is factually distinguishable from present case in a number of respects.  Whereas in

17   *Brown* the defendant withheld a "massive" amount of material, in the present case only a handful

18   of documents are at issue.  The Gaitan Declaration provides data regarding the number of times

19   the eBrochure was downloaded from the RAV4 landing pages on the toyota.com website, and the

20   number of times the toyota.com website was visited during the relevant time frame, and attaches

21   as Exhibit 1 a printout titled "IMOAI-791 RAV4 Brochure Daily Download Data 06.26.2019.

22   The Ciarletta Declaration provides information regarding the US MaritzCX New Vehicle

23   Customer Survey, which is described as a survey widely used in the automotive industry, and

24   attaches as Exhibits 1 and 2 a copy of the survey instrument and a copy of survey results for

25   Toyota's MY16 RAV4 purchasers.  The Hare Declaration explains why Toyota does not consider

26   automatic on/off headlights as a safety feature; no exhibits are attached.  The portion of the

27   Hoffman Declaration to which Plaintiffs object provides data regarding the number of times

28   ████  documents were downloaded and attaches as Exhibit 1 a chart listing those downloads.

1   These few documents simply are not comparable to the "650 hours of video and over 2.25

2   gigabytes of register pull data" withheld in *Brown*.  *See Brown*, 2018 WL 2011935, at *4.

3         Additionally, the *Brown* court found the defendant's discovery conduct to be "egregious,"

4   whereas the record in this case indicates that any failure to comply with discovery obligations on

5   the part of Toyota's counsel was inadvertent.  Also, in *Brown*, the plaintiffs did not discover the

6   discovery violations until very late in the case, after close of fact discovery, the deadline for

7   opening expert reports had passed, the plaintiffs had filed a motion for summary judgment, and

8   briefing had been completed on a motion to decertify the class.  In the present case, fact discovery

9   does not close until July 2020, expert discovery does not close until January 2021, and the

10   summary judgment hearing is set for November 2021.

11         This Court finds that the failure to comply with discovery obligations in this case does not

12   rise to the level of the discovery abuses in *Brown*.  Moreover, any potential prejudice caused by

13   the asserted late production was cured by the depositions of Toyota's witnesses and the adjustment

14   of the briefing schedule on class certification.  Plaintiffs were able to address the evidence at issue

15   in their reply brief and in rebuttal declarations of their experts.  Consequently, the Court finds that

16   the exclusion sanction requested by Plaintiffs is not warranted.  *See Davis*, 2018 WL 692045, at *2

17   (finding that the plaintiff failed to comply with expert disclosure obligations, but denying request

18   for exclusion as "too extreme a remedy" based on lack of prejudice to the defendant).

19         In addition to requesting exclusion of the evidence discussed above, Plaintiffs request that

20   portions of the Hack Declaration be stricken as misleading.  With respect to Plaintiffs' objection to

21   the Hack Declaration, specifically paragraph 7 and Exhibit 3, the Court understands Plaintiffs to

22   be challenging Hack's proffered reason why Toyota did not attempt to cure the error in the hard

23   copy Brochure.  Hack stated that it was Toyota's view that "hard copy brochures were not

24   typically used by dealers to provide information to potential customers, but rather as an item to

25   take home, to which the salesperson could staple their business card."  Hack Decl. ¶ 7.  Hack cited

26   "the J.D. Power 2015 New Autoshopper Study," which is attached to his declaration as Exhibit 2,

27   and "the 2016 Cox Automotive Car Buyer Journey study" which is attached to his declaration as

28   Exhibit 3.  *See id.*  Those studies indicate that car buyers spend a significant amount of time

United States District Court
Northern District of California

United States District Court
Northern District of California

1   conducting online research before buying a new car, and the study attached as Exhibit 3, to which

2   Plaintiffs object, indicates that buyers spend little time researching with print resources. *See id.*

3   Plaintiffs argue that Exhibit 3 and Hack's related statements should be excluded because he

4   testified at his deposition that he had not seen Exhibit 3 until it was supplied to him by counsel in

5   this case. In response, Toyota argues that Plaintiffs mischaracterize Hack's deposition testimony,

6   as Hack testified that he first saw the study in 2016 and that it was available to anyone doing

7   research. *See* Margulies Decl. ¶ 9 and Exh. B (Hack Dep.) at 19:15-16, 20:11-14. The Court finds

8   that Plaintiffs have failed to establish that Hack lacks foundation for the statements made in his

9   declaration or his submission of Exhibit 7.

10       Accordingly, Plaintiffs' motion to exclude is DENIED with respect to the witnesses and

11   evidence discussed above.

12                      **2.      Parties' Motions to Exclude Expert Opinion**

13       Each side moves to exclude opinions of the other's experts under *Daubert v. Merrell Dow*

14   *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Toyota moves to exclude opinions of Plaintiffs'

15   experts, David McLellan and Stefan Boedeker, while Plaintiffs move to exclude the opinions of

16   Toyota's rebuttal experts, Keith R. Ugone and David W. Stewart.

17       Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the

18   expert's scientific, technical, or other specialized knowledge will help the trier of fact to

19   understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

20   facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

21   has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

22       In *Daubert*, the Supreme Court held that Rule 702 requires the district court to act as a

23   gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only

24   relevant, but reliable." *Daubert*, 509 U.S.at 589. In *Kumho Tire Co., Ltd. v. Carmichael*, 526

25   U.S. 137, 147 (1999), the Supreme Court clarified that the "basic gatekeeping obligation"

26   articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. The

27   Supreme Court also made clear that the reliability inquiry is a flexible one. *Id*. at 153.

28       The Ninth Circuit has emphasized that "[u]nder *Daubert*, the district judge is a gatekeeper,

1   not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010) (internal quotation

2   marks and citation omitted). "When an expert meets the threshold established by Rule 702 as

3   explained in *Daubert*, the expert may testify and the jury decides how much weight to give that

4   testimony." *Id*. at 565. "Shaky but admissible evidence is to be attacked by cross examination,

5   contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 564.

6               **a.    David McLellan – Plaintiffs' Automotive Expert**

7          David McLellan is an automotive engineering expert retained by Plaintiffs. He received a

8   Bachelor of Science in mechanical engineering from Wayne State University in Detroit, Michigan

9   and a Master of Science in management from the Massachusetts Institute of Technology. *See*

10  McLellan Report at 2. He is a Fellow of the Society of Automotive Engineers. *See id.* Mr.

11  McLellan was employed by General Motors for thirty-three years, during which time he served as

12  Assistant Staff Engineer for Camaro and Nova Chassis systems, and as the Engineering Director

13  for General Motors' Corvette sports car. *See id.* Mr. McLellan also has served as a member of the

14  Board of Directors of Porsche Engineering Services, and has worked with automotive companies

15  as a consultant. *See id.* He has served as an expert witness in a number of cases. *See id.*

16         Plaintiffs retained Mr. McLellan to opine: (1) whether the inclusion and/or use of an

17  automatic on/off headlight feature on modern automobiles is considered a safety feature; (2) how

18  the feature works on the Class Vehicles; and (3) what it would cost to retrofit the Class Vehicles

19  with the automatic on/off headlight feature. *See* McClellan Report at 3. Toyota argues that Mr.

20  McLellan is unqualified to offer his opinion that the automatic on/off headlight feature is a safety

21  feature. Toyota also challenges Mr. McLellan's opinion on the cost of retrofitting Class Vehicles

22  with the automatic on/off headlight feature as being untethered to a theory of liability. Finally,

23  Toyota challenges two statements in Mr. McLellan's rebuttal declaration, submitted with

24  Plaintiffs' reply brief.

25         Mr. McLellan opines in his report that the automatic on/off headlight feature is "an

26  important safety feature" and "the lack of the auto on/off feature degrades the safety of the

27  automobile." McLellan Report at 10-11. Toyota argues that Mr. McLellan is unqualified to offer

28  these opinions, because he has no education or formal training regarding safety features, and his

United States District Court
Northern District of California

United States District Court
Northern District of California

1   opinion is speculative.  As Plaintiffs point out, however, Mr. McLellan has extensive experience

2   in the automotive industry and experience with automobile safety issues.  His experience in the

3   industry qualifies him to testify to his opinion regarding the safety implications of the automatic

4   on/off headlight feature.  "The Ninth Circuit has found opinions based on an expert's experience

5   in the industry to be proper: When evaluating specialized or technical expert opinion testimony,

6   the relevant reliability concerns may focus upon personal knowledge or experience."  *Icon-IP Pty*

7   *Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 946 (N.D. Cal. 2015) (internal

8   quotation marks and citations omitted).  "Subjective beliefs and opinions are proper expert

9   testimony."  *See id.* (internal quotation marks and citations omitted).

10       Toyota challenges Mr. McLellan's opinion regarding the cost of retrofitting Class Vehicles

11  with the automatic on/off headlight feature as an inappropriate measure of damages under

12  California's Unfair Competition Law.  However, Toyota does not explain why the cost of repair

13  would not be an appropriate remedy for Plaintiffs' claim for breach of express warranty.  *See In re*

14  *MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 966 (N.D. Cal. 2018) (contemplating repair

15  as appropriate remedy for breach of express warranty or, if repair cannot be accomplished,

16  damages measured by the diminution in value between the vehicles as warranted and the vehicles

17  as sold).  Moreover, as discussed below, Plaintiffs seek injunctive relief in the form of an order

18  requiring that Toyota retrofit the Class Vehicles.  The Court concludes that Toyota has not

19  articulated a basis for excluding Mr. McLellan's opinion regarding the cost of the proposed

20  retrofit.

21       Accordingly, Toyota's motion to exclude the opinions of Mr. McLellan under *Daubert* is

22  DENIED.

23       Toyota also challenges as irrelevant and lacking in foundation two statements in Mr.

24  McLellan's Rebuttal Declaration, the first regarding other countries' adoption of regulations

25  regarding automatic on/off headlights, and the second regarding Toyota's advocacy for regulations

26  allowing for automatic high beams made to the National Highway Traffic Safety Administration.

27  *See* McLellan Rebuttal Decl. ¶¶ 20-21.  Mr. McLellan does not provide a foundational basis for

28  either statement.  Toyota's objections to the statements is SUSTAINED.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

###### b.       Stefan Boedeker – Plaintiffs' Economist Expert

Stefan Boedeker is a statistician and economist retained by Plaintiffs.  He received a Bachelor of Science degree in Statistics and a Bachelor of Arts degree in Business Administration from the University of Dortmund/Germany; a Master of Science degree in Statistics from the University of Dortmund/Germany; and a Master of Arts degree in Economics from the University of California, San Diego.  *See* Boedeker Report at 1.  Mr. Boedeker also completed Ph.D. requirements, except dissertation, in Economics at the University of California, San Diego.  *See id.*

Plaintiffs retained Mr. Boedeker to opine:  (1) whether it is possible to quantify economic losses to the Plaintiffs and the members of the putative class attributable to the purchase of a Class Vehicle and to provide a framework for the computation of classwide damages; (2) whether an economic model enables the quantification of economic losses suffered by the class on a classwide basis as a result of having purchased a Class Vehicle; (3) whether an empirical study may be used to quantify the economic loss to consumers on a classwide basis by assessing consumers' changes in choices and preferences in the absence of the alleged misrepresentation; and (4) whether a statistical methodology may be used to calculate classwide damages if the absence of the Feature in the Class Vehicle is shown to lead to a lower market demand.  *See* Boedeker Report at 3-4.  Mr. Boedeker prepared an expert report answering these questions in the affirmative, and proposing a choice-based conjoint analysis ("CBC") to determine a price premium for the automatic on/off headlight feature.  *See* Boedeker Report at 21-43.  Mr. Boedeker's purpose in describing the methodology for the proposed study is to show that damages can be determined on a class-wide basis.  *See id.*

Relying on the opinion of its rebuttal expert, David W. Stewart, Toyota argues that the proposed damages model assumes that all class members were exposed to the misstatement, and it does not address the situation in which many class members were not exposed to the misstatement.  Toyota argues that because Mr. Boedeker's damages model is based on assumption not borne out by the evidence – classwide exposure to the misstatement – it would not be helpful to the trier of fact.  *See Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012) (affirming exclusion of expert where "Plaintiffs offered no

data forming the basis for Clifton's assumptions or conclusions").  In response, Plaintiffs argue that there was classwide exposure to the misstatement, and even if that were not so, Mr. Boedeker's damages model still determines the price premium paid for the automatic on/off headlight feature.  Plaintiffs contend that it is Mr. Stewart's rebuttal report, not Mr. Boedeker's report, which is flawed.

The Court is satisfied that Mr. Boedeker is qualified to design a CBC study and to offer the other expert opinions contained in his report.  Where, as here, two qualified economists espouse conflicting views about the proper way to design a particular study, a "battle of the experts" arises.  The most appropriate course is to allow each side to attack the other's with contrary expert opinion and other contrary evidence.  Toyota's motion to exclude the opinions of Mr. Boedeker under *Daubert* is DENIED.

Toyota also objects to numerous statements in Mr. Boedeker's Rebuttal Declaration as lacking foundation, lacking personal knowledge, and comprising speculation.  Toyota's Second Amended Objections to Evidence to Plaintiffs' Reply Brief categorizes those objections into seven sets of statements.  *See* Defs.' Second Am'd Objections at 4-6, ECF 119.  Those objections are addressed as follows.

In Objection No. 1, Toyota challenges ¶¶ 6, 6(1)-6(2), 11, and 25(a) of the Boedeker Rebuttal Declaration.  In ¶ 6, Mr. Boedeker states his understanding of Plaintiffs' contentions, for example, "I understand from the Memorandum of Points and Authorities in Further Support of Plaintiffs' Motion for Class Certification ("Plaintiffs' Memorandum"), that the only credible evidence submitted in this class action ('the Action') demonstrates that at the point of purchase, all Class members were exposed to inaccurate information about the Feature through a hard copy brochure, and through sales materials that were also inaccurate."  Boedeker Rebuttal Decl. ¶ 6.  Paragraphs 6(1) and 6(2) likewise recite Plaintiffs' assertions.  Mr. Boedeker's recitation of Plaintiffs' contentions as background for his own opinions is appropriate, and thus the Court finds the objection to ¶¶ 6, 6(1), and 6(2) to be without merit.

However, in ¶ 11, Mr. Boedeker improperly gives his opinion as to what the evidence proves:  "In short, based on the documents cited above, it is my understanding that since the filing

1    of the Motion for Class Certification, the preponderance of evidence amassed by Plaintiffs

2    demonstrates that putative Class members were exposed to the misstatements about the Feature

3    and supports the analysis contained in my Report." *Id*. ¶ 11.  In ¶ 25(a), Mr. Boedeker opines as to

4    what the "credible evidence shows" in this case. *Id*. ¶ 25(a).  Mr. Boedeker's expertise as a

5    statistician and economist does not qualify him to opine as to what evidence in this case is credible

6    or what the evidence shows.

7           Accordingly, Toyota's Objection No. 1 is OVERRULED as to ¶¶ 6, 6(1), and 6(2), and

8    SUSTAINED as to ¶¶ 11 and 25(a).

9           In Objection No. 2, Toyota challenges ¶¶ 6(3)-6(5) and 6(13) of the Boedeker Rebuttal

10   Declaration, on the basis that Mr. Boedeker opines as to the state of mind and conduct of Toyota

11   and its dealers when he has no personal knowledge.  For example, Mr. Boedeker states that Toyota

12   "made a conscious decision not to correct" the hard copy Brochures, and that the cached,

13   inaccurate eBrochure remained available on the Internet through this year.  Boedeker Rebuttal

14   Decl. ¶¶ 6(3), (5).  These statements lack foundation or personal knowledge.  Toyota's Objection

15   No. 2 is SUSTAINED as to ¶¶ 6(3)-6(5) and 6(13).

16          In Objection No. 3, Toyota challenges ¶¶ 6(7)-6(11), 7(b)(v), 7(c)(i), 7(c)(iv), 7(d)(ii), and

17   7(g)(i) of the Boedeker Rebuttal Declaration.  Those paragraphs contain Mr. Boedeker's

18   statements regarding the dealer training materials and information imputed to customers.  For

19   example, Mr. Boedeker states that "The ███████████████ used by Toyota's ██ training

20   groups and ███ distribution groups to train dealers, contained the false and inaccurate information

21   about the Feature," Boedeker Rebuttal Decl. ¶ 6(7), and "Toyota never sent an advisory to its

22   dealers, or added a slip page or notice to the brochure, ███ documents or Training Materials to

23   alert the dealers and their salespeople of the error in the training materials, the ███ materials and

24   in the brochure," *id*. ¶ 6(9).  Mr. Boedeker states that "the salesperson at the dealership is the most

25   important source of information that influenced RAV4 purchasers during the relevant period –

26   who in this case, had the wrong information about the Class Vehicles and the incorrect brochures."

27   *Id*. ¶ 7(d)(i).  Toyota's objections to these portions of Mr. Boedeker's Rebuttal Declaration are

28   well-taken, as Mr. Boedeker has no personal knowledge regarding the dealer materials and he is

United States District Court
Northern District of California

16

1   not qualified to offer his opinion as to the state of mind of Toyota's sales agents.  Objection No. 3

2   is SUSTAINED as to ¶¶ 6(7)-6(11), 7(b)(v), 7(c)(i), 7(c)(iv), 7(d)(ii), and 7(g)(i).

3      In Objection No. 4, Toyota challenges ¶¶ 7(a)(i)-7(a)(ii), containing Mr. Boedeker's

4   statements regarding Toyota's evidence that there were █████ visits to Toyota.com and

5   ████ visits to the RAV4 features page between May 1, 2016 and September 30, 2016.  Mr.

6   Boedeker states among other things that "Toyota has not and cannot demonstrate that any putative

7   Class member saw correct information on any 'landing page' on Toyota.com."  Boedeker Rebuttal

8   Decl. ¶ 7(a)(ii).  Mr. Boedeker's opinion as to the significance of particular evidence is irrelevant.

9   Objection No. 4 is SUSTAINED as to ¶¶ ¶¶ 7(a)(i)-7(a)(ii).

10      In Objection No. 5, Toyota challenges ¶ 7(b)(ii) of the Boedeker Rebuttal Declaration,

11   containing Mr. Boedeker's criticism of the defense experts' reliance on certain evidence.

12   Criticism of the methodology of opposing experts is within Mr. Boedeker's expertise.  Objection

13   No. 5 is OVERRULED.

14      In Objection No. 6, Toyota challenges ¶ 25(d) of the Boedeker Rebuttal Declaration,

15   indicating that because the Feature is a safety feature, its materiality to class members is inferred.

16   That opinion is within Mr. Boedeker's expertise.  While Toyota may challenge Mr. Boedeker's

17   opinion on that point with its own experts, Mr. Boedeker's opinion properly is admitted.

18   Objection No. 6 is OVERRULED.

19      Finally, in Objection No. 7, Toyota challenges ¶¶ 13-14 and 25(b) of the Boedeker

20   Rebuttal Declaration, including statements regarding Mr. Boedeker's proposed CBC study.  The

21   statements are within Mr. Boedeker's expertise.  As noted herein, Toyota may challenge Mr.

22   Boedeker's methodology through criticism by Toyota's experts.  Objection No. 7 is

23   OVERRULED.

24       **c.**   **Keith R. Ugone and David W. Stewart – Toyota's Rebuttal**

25         **Experts**

26      Keith R. Ugone, Ph.D, is an economist retained by Toyota to rebut the opinions of Mr.

27   Boedeker.  Dr. Ugone is a Managing Principal at Analysis Group, Inc. ("AG"), which provides

28   economic, financial, and business strategy consulting to its clients and specializes in the

United States District Court
Northern District of California

1    interpretation of economic and financial data and the development of economic and financial

2    models.  *See* Ugone Report at 9.  He received a Bachelor of Arts in Economics from the

3    University of Notre Dame, an Master of Arts in Economics from the University of Southern

4    California, and a Ph.D. in Economics from Arizona State University.  *See id.*

5             David W. Stewart, Ph.D., is a marketing expert retained by Toyota to rebut the opinions of

6    Mr. Boedeker.  Dr. Stewart is the President's Professor of Marketing and Law at Loyola

7    Marymount University.  Stewart Decl. ¶ 5.  He has served as a tenured member of the faculty and

8    in various administrative roles at Vanderbilt University, the University of Southern California, and

9    the University of California, Riverside.  *Id.*  He serves or has served on the editorial boards of

10   more than twenty journals.  *Id.*  Dr. Stewart holds three academic degrees in psychology: a

11   Bachelor of Arts from the University of Louisiana at Monroe, an Master of Arts in general

12   experimental psychology from Baylor University, and a Ph.D. in personality psychology from

13   Baylor University.  *Id.* ¶ 6.  He has written extensively about market analysis, consumer behavior,

14   market definition and structure, branding, marketing communication, marketing research, and

15   marketing management.  *Id.*

16           Dr. Ugone opines that a classwide approach will not yield a reliable measure of damages,

17   and that Mr. Boedeker's proposed methodology for calculating classwide damages will overstate

18   claimed damages and will not yield a reliable or relevant result.  Dr. Stewart criticizes the

19   reliability and validity of Mr. Boedeker's proposed survey.  Plaintiffs assert that the opinions of

20   both experts should be excluded, because Dr. Ugone and Dr. Stewart are paid mouthpieces for

21   Toyota who do nothing more than assert unfounded criticisms of Mr. Boedeker's proposed CBC

22   analysis.  Plaintiffs criticize Dr. Ugone and Dr. Stewart for failing to provide a sufficient basis for

23   their opinions and for relying on hearsay.

24           With respect to the latter argument, "[t]he facts or data in the particular case upon which an

25   expert bases an opinion or inference . . . need not be admissible in evidence."  *Paddack v. Dave*

26   *Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir. 1984) (citing Fed. R. Evid. 703).  Moreover, Rule

27   703 "permits such hearsay, or other inadmissible evidence, upon which an expert properly relies,

28   to be admitted to explain the basis of the expert's opinion."  *Id.* at 1261-62.  Even the case cited by

United States District Court
Northern District of California

Plaintiffs, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013), provides that "the Rules permit experts some leeway with respect to hearsay evidence."  Accordingly, reliance on hearsay materials does not provide a basis for excluding the opinions of the defense experts.

With respect to Plaintiffs' other attacks, the Court finds Dr. Ugone and Dr. Stewart to be qualified to offer criticism of Mr. Boedeker's methodology.  Plaintiffs criticize Toyota's experts for failing to perform their own studies.  However, a defendant may present expert rebuttal of the plaintiff's expert "by putting forth its own expert who either claims that (1) the plaintiff's expert's methodology was conducted improperly in some way; or (2) the ultimate conclusion the plaintiff's expert makes is flawed because a superior methodology provides a different result."  *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktbologet LM Ericsson*, No. CV 15-02370 JVS, 2016 WL 7042085, at *5 (C.D. Cal. Aug. 17, 2016).  Thus, Toyota's experts need not proffer a superior methodology in order to attack Mr. Boedeker's methodology.  "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party."  *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) (internal quotation marks and citation omitted).  The opinions of Dr. Ugone and Dr. Stewart do just that.

To the extent Plaintiffs assert that the defense experts have mischaracterized Mr. Boedeker's Report, that argument goes to the weight of the defense opinions and not their admissibility.  *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011) ("Whether Bashline's analysis and conclusions misrepresent or mischaracterize the Cripe and Rubinfeld Reports goes to the weight of his testimony rather than its admissibility.").

Plaintiffs' motion to exclude the opinions of Dr. Ugone and Dr. Stewart is DENIED.

### d.    Conclusion Re Experts

For the reasons discussed above, it is the Court's conclusion that all four experts addressed herein are qualified to offer opinions in their fields.  The Court notes that the experts' opinions play a limited role with respect to the present class certification motion, because as discussed below, the motion turns on whether there was classwide exposure to the misstatement.  That

1    determination depends on record evidence regarding the distribution of the advertising and dealer

2    materials containing the misstatement, not on expert opinion.  Mr. Boedeker has offered some

3    opinions in his Rebuttal Declaration regarding the issue of classwide exposure but, as discussed

4    above, Toyota's objections to those opinions are well-taken.  Accordingly, while the Court has

5    found the experts' opinions admissible on the issues of safety, damages, and related topics, at the

6    end of the day the expert opinions are not central to evaluation of the class certification motion.

7         **B.    Rule 23(a)**

8              **1.    Numerosity**

9         Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of

10   all the class members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is

11   required; rather, the specific facts of each case must be considered."  *Litty v. Merrill Lynch & Co.*,

12   No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).  "[N]umerosity

13   is presumed where the plaintiff class contains forty or more members."  *Id.*  However, a class as

14   small as twenty properly may be certified when the other Rule 23 factors are satisfied.  *See Rannis*

15   *v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (affirming district court's certification of 20-

16   member class).

17        Plaintiffs submit evidence showing that more than a hundred thousand Class Vehicles were

18   sold nationwide, and thousands of Class Vehicles were sold in both California and Pennsylvania.

19   *See* Green Decl. ¶¶ 21-23 & Exhs. 20-22.  Toyota does not challenge Plaintiffs' showing on

20   numerosity with respect to either the proposed nationwide class or the proposed California and

21   Pennsylvania subclasses.  In fact, Toyota's evidence confirms that ███████ Class Vehicles were

22   sold without the Feature.  *See* Mito Decl. ¶ 6.

23        The Court finds that the numerosity requirement is satisfied.

24              **2.    Commonality**

25        Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common

26   to the class."  Fed. R. Civ. P. 23(a)(2).  The requirement cannot be satisfied with any common

27   question, however.  *See Dukes*, 564 U.S. at 349.  "Commonality requires the plaintiff to

28   demonstrate that the class members have suffered the same injury."  *Id.* at 349-50 (internal

United States District Court
Northern District of California

1    quotation marks and citation omitted).  The claim of common injury must depend on a common

2    contention "of such a nature that it is capable of classwide resolution – which means that

3    determination of its truth or falsity will resolve an issue that is central to the validity of each one of

4    the claims in one stroke." *Id.* at 350.

5        Plaintiffs argue that the commonality requirement is met here because "Toyota's course of

6    conduct through its Brochure, ebrochure, and dealer materials and information exposed all Class

7    members to the identical materially false statements and/or omissions."  Motion at 11, ECF 87-4.

8    The Court notes that although Plaintiffs refer to both false statements and omissions, their claims

9    are based on a single false statement repeated in Toyota's Brochure, website, eBrochure, and

10   internal training materials.  Plaintiffs cite no authority for the proposition that Toyota's failure to

11   inform Class members that its materials contained a false statement constituted a separate,

12   actionable omission.  The question, then, is whether common questions of law or fact arise from

13   Toyota's false statement that the Feature was standard on the Class Vehicles.

14       Plaintiffs assert a claim for breach of express warranty under California law on behalf of a

15   nationwide class or, alternatively, on behalf of a California subclass.  "A plaintiff asserting a

16   breach of express warranty claim must allege facts sufficient to show that (i) the seller's

17   statements constitute an affirmation of fact or promise or a description of the goods; (ii) the

18   statement was part of the basis of the bargain; and (iii) the warranty was breached." *Snarr v.*

19   *Cento Fine Foods Inc.*, No. 19-CV-02627-HSG, 2019 WL 7050149, at *8 (N.D. Cal. Dec. 23,

20   2019) (internal quotation marks and citation omitted).  All class members' warranty claims are

21   based on the same statement that the Feature was standard on Class Vehicles, and determinations

22   whether that statement constituted an affirmation of fact or promise or a description of the goods,

23   and whether the warranty was breached, present common questions.  In *Wolin v. Jaguar Land*

24   *Rover N. Am., LLC*, 617 F.3d 1168, 1172  (9th Cir. 2010), the Ninth Circuit found that the

25   plaintiffs had "easily" satisfied the commonality requirement where "[t]he claims of all

26   prospective class members involve the same alleged defect, covered by the same warranty, and

27   found in vehicles of the same make and model."

28       Plaintiffs also assert consumer protection and unfair competition claims under California

law on behalf of a nationwide class or, alternatively, on behalf of a California subclass.  For the California claims under the Consumer Legal Remedies Act and Unfair Competition Law, Plaintiffs must demonstrate "the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014).  "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (internal quotation marks and citation omitted).  Because this is an objective standard, a determination whether a significant portion of the public could be misled by Toyota's misstatement "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  "[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Toyota argues that the commonality requirement is not met, because Plaintiffs have not established that Toyota's conduct exposed all class members to the misstatement that the Feature was standard on the Class Vehicles.  To the contrary, Toyota argues, it is apparent on this record that a substantial number of class members were not exposed to the misstatement.  Toyota's argument is foreclosed by *Mazza*.  In *Mazza*, the plaintiffs filed a putative class action complaint alleging that Honda's advertisements misrepresented the characteristics of its braking system. *Mazza*, 666 F.3d at 585.  Honda argued that the plaintiffs did not satisfy the commonality requirement of Rule 23(a), because "the 'crucial question' of '*which* buyers saw or heard *which* advertisements' is not susceptible to common resolution." *Id*. at 589.  The Ninth Circuit was unpersuaded, holding that "the individualized issues raised go to the preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2)." *Id*.  Noting that Honda had not challenged the district court's determination that common questions existed regarding Honda's duty to disclose and whether allegedly omitted facts were material and misleading, the Ninth Circuit held that "the Plaintiffs satisfied their limited burden under Rule 23(a)(2) to show that there are 'questions of law or fact common to the class.'" *Id*.

Applying *Mazza* to the facts of this case, the Court concludes that the issue of classwide exposure to the misstatement more properly is addressed in the context of the Rule 23(b)(3) predominance inquiry.  As discussed above, there are common questions central to the warranty and consumer protection claims asserted under California law.  Those questions are sufficient to satisfy Plaintiffs' "limited burden under Rule 23(a)(2)."  *See Mazza*, 666 F.3d at 589.

### 3.      Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.  *See Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

Plaintiffs contend that Pei and Ferrara assert claims that are typical of all class members who purchased a Class Vehicle.  Both Plaintiffs assert claims based on the same misstatement that forms the basis for all class members' claims.  The Court therefore finds that Plaintiffs satisfy the typicality requirement with respect to class members who purchased a Class Vehicle.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML2151 JVS (FMOx), 2012 WL 7802852, at *3 (C.D. Cal. Dec. 28, 2012) (finding the typicality requirement met where "all the class members allege they have suffered the same injuries based on a common course of Toyota's conduct").

23

United States District Court
Northern District of California

1    The proposed class definitions set forth in Plaintiffs' notice of motion include both

2    purchasers and lessees of the Class Vehicles.  However, Plaintiffs' motion brief does not address

3    the claims of lessees, either in its section on typicality or anywhere else.  In its opposition, Toyota

4    argues that the claims of Plaintiffs, who purchased Class Vehicles, are not typical of the claims of

5    persons who leased Class Vehicles.  Plaintiffs' reply does not address Toyota's challenge to the

6    inclusion of lessees in the class definitions.  In fact, all of Plaintiffs' arguments on class

7    certification are limited to arguments for certification of a class of purchasers.  The following

8    statements are illustrative:  "Plaintiffs now seek to certify a class of all purchasers of the Class

9    Vehicles who were misled by these false statements," Motion at 1, ECF 87-4; "None of the cars

10   purchased by Class members were equipped with the Feature as standard, nor was it manufactured

11   to include that Feature," Motion at 3; " Plaintiffs Have Standing To Represent Purchasers Of All

12   The Class Vehicles," Motion at 9; "the damages are identical for purchasers of all three models,"

13   Motion at 10; "In this case, proposed Class members are objectively defined as purchasers of a

14   well-defined set of Class Vehicles without the option packages," Motion at 14; "every Class

15   member purchased at a dealership at which the inaccurate information was available," Motion at

16   20; "Toyota disseminated over ▇▇▇▇ false hard copy brochures to every dealer in the United

17   States – the point of purchase of every car in the Class, Reply at 1, ECF 109-4; "a class on behalf

18   of purchasers of all three Class Vehicles should be certified," Reply at 12.  Given these statements,

19   and Plaintiffs' failure to make any showing whatsoever as to why lessees should be included in the

20   class definitions, the Court finds that Plaintiffs have not established that their claims are typical of

21   individuals who leased rather than purchased Class Vehicles.

22       Even with respect to purchasers of Class Vehicles, Toyota argues that Pei is not typical

23   because the Feature was not material to his decision to purchase.  Toyota cites to Pei's deposition

24   testimony where he discussed the fact that he did not like that he had to manually lift the tailgate

25   on the LE model, and that he liked the upgraded features on the XLE model.  *See* Pei Dep. at 40:5-

26   42:3, Margulies Decl. Exh. 10.  However, Plaintiffs point to other deposition testimony in which

27   Pei stated that the Feature was important to his purchase decision.  *See* Pei Dep. 44:20-23, Green

28   Reply Decl. Exh. 19.  Toyota argues that Ferrara is not typical because she subjectively believed

United States District Court
Northern District of California

1  that the Feature is a safety feature.  Ferrara Dep. at 32:5-22, Margulies Decl. Exh. 11.  Toyota does

2  not consider the Feature to be a "safety" feature.  However, Toyota does not explain why Ferrara's

3  characterization of the Feature as safety-related subjects her to a unique defense or otherwise

4  disqualifies her from representing the class.  Ferrara testified that the Feature was important to her

5  purchase decision.  Ferrara Dep. 32:5-8, Green Reply Decl. Exh. 20.

6       Accordingly, the Court finds that Plaintiffs have satisfied the typicality requirement with

7  respect to persons who purchased Class Vehicles, but not as to persons who leased Class Vehicles.

8                    **4.      Adequacy**

9       To determine Plaintiffs' adequacy as a class representative, the Court "must resolve two

10  questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

11  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

12  on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)

13  (internal quotation marks and citation omitted).  There do not appear to be any conflicts of interest,

14  and Plaintiffs and class counsel have demonstrated the ability and intention of prosecuting this

15  action vigorously on behalf of the class.

16       The adequacy requirement is satisfied.

17  **C.      Rule 23(b)**

18       Having determined that Plaintiffs have satisfied the requirements of Rule 23(a) with

19  respect to persons who purchased Class Vehicles, the Court turns to Rule 23(b).  Plaintiffs argues

20  that certification is appropriate under Rule 23(b)(3), and also under Rule 23(b)(2).  Toyota asserts

21  that Plaintiffs have not demonstrated that certification is appropriate under either subsection.

22                    **1.      Rule 23(b)(3)**

23       Rule 23(b)(3) requires that "questions of law or fact common to class members

24  predominate over any questions affecting only individual members," and that "a class action is

25  superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

26  R. Civ. P. 23(b)(3).  "Further, parties seeking to certify a Rule 23(b)(3) class must also

27  demonstrate that the class is sufficiently ascertainable."  *Datta v. Asset Recovery Sols., LLC*, No.

28  15-CV-00188-LHK, 2016 WL 1070666, at *2 (N.D. Cal. Mar. 18, 2016).

United States District Court
Northern District of California

1    Plaintiffs argue that these requirement are satisfied here, because the class is ascertainable

2 and common issues predominate.  With respect to common issues, Plaintiffs contend that the

3 Court can apply California law to a nationwide class; under California law Plaintiffs' claims may

4 be determined by way of classwide proof; damages may be measured on a classwide basis; and a

5 class action is superior for resolving Plaintiffs' claims.  Toyota does not challenge ascertainability,

6 but it disputes all of Plaintiffs' other assertions regarding the propriety of certifying a Rule

7 23(b)(3) class.

### a.    Ascertainability

9    "[A] class is ascertainable if the class is defined with objective criteria and if it is

10 administratively feasible to determine whether a particular individual is a member of the class."

11 *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2015 WL 7015567, at *13 (N.D. Cal. Nov. 12, 2015)

12 (internal quotation marks and citation omitted).  Plaintiffs argue that "[i]n this case, proposed

13 Class members are objectively defined as purchasers of a well-defined set of Class Vehicles

14 without the option packages (as those packages included the Feature)."  Motion at 14, ECF 87-4.

15 Plaintiffs represent that Toyota already has produced a list of class members who can be

16 contacted.  *See id.* at 14-15.  The Court agrees that the nationwide class and alternative subclasses

17 of purchasers are ascertainable and, as mentioned above, Toyota does not argue differently.

### b.    Choice of Law

19    Plaintiffs ask the Court to apply California law to a nationwide class by certifying, on

20 behalf of a nationwide class, the following claims under California law:  Count III for breach of

21 express warranty, Count VI for unfair competition, Count VII under the Consumer Legal

22 Remedies Act, and Count XI for unjust enrichment.  Toyota argues that under California's choice

23 of law rules, the Court should not apply California law to a nationwide class, and that fifty

24 subclasses based on the laws of fifty states would be unmanageable.

25    "A federal court sitting in diversity must look to the forum state's choice of law rules to

26 determine the controlling substantive law."  *Mazza*, 666 F.3d at 589 (internal quotation marks and

27 citation omitted).  "Under California's choice of law rules, the class action proponent bears the

28 initial burden to show that California has significant contact or significant aggregation of contacts

to the claims of each class member." *Id*. (internal quotation marks and citation omitted). "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims." *Id*. at 590 (internal quotation marks and citation omitted). *Mazza* articulated a governmental interest test which may be used to evaluate a defendant's argument that foreign law should apply to putative class claims:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590 (citation omitted).

Plaintiffs present substantial evidence showing that California has significant contacts with the class claims. The hard copy Brochure, eBrochure, and training materials were developed and printed in, and distributed from, California. *See* Hoffman Dep. 8:7-10:2, 28:1-17, 37:14-38:3, 48:1-21, 58:12-60:10, Green Decl. Exh. 4. In March 2016, during the class period, Toyota Sales had 6,567 employees in its California sales facilities. Green Decl. Exh. 35. All of the events relating to the Brochure and eBrochure were managed by Toyota employee Ashley Hack while he was located in California. Hack Dep. 8:15-9:12, Green Decl. Exh. 5. Hack worked with Saatchi, an advertising firm located in California, to create and produce the Brochure and eBrochure. *Id*.

Activities in California such as those described by Plaintiffs have been found sufficient to establish the necessary contacts between California and the class claims. For example, in *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 2797810 (N.D. Cal. June 28, 2017), the plaintiffs filed a putative class action after experiencing significant defects in the Bluetooth systems of their Acura vehicles. The plaintiffs asserted nationwide claims under California law and other class claims under the laws of eleven states. *Id*. at *2-3. In evaluating

United States District Court
Northern District of California

the defendant's motion to dismiss the nationwide claims based on California law, the district court observed that, "While California has a presumption against extraterritorial application of its own law, state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." *Id*. at *3 (internal quotation marks and citation omitted). "To determine whether sufficient wrongful conduct occurred in California, the courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made." *Id*. (internal quotation marks and citation omitted). "The Court looks to the nexus between California and the alleged wrongful conduct to determine whether sufficient wrongful conduct occurred in California." *Id*. The *Gerstle* court determined that the requisite connection to California existed because the defendant had conducted and maintained operations in California for several decades, was headquartered in California, and made decisions regarding manufacture, distribution, marketing, and sales of Acura vehicles in California. *Id*. at *4. The *Gerstle* court therefore declined to dismiss Plaintiff's nationwide claims on choice of law grounds while deferring a choice of law analysis to a later stage in the proceedings. *Id*.

In *Mazza*, the Ninth Circuit found that "California has a constitutionally sufficient aggregation of contacts to the claims of each putative class member in this case because Honda's corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members are located in California." *Mazza*, 666 F.3d at 590. However, the Ninth Circuit determined that Honda had identified numerous differences between California law and the laws of the 43 other states in which class members resided, and that the district court had erred in concluding that Honda had not met its burden to show that those differences were material. *Id*. at 591. Applying the three-step governmental interest test in light of the material differences in law identified by Honda, the Ninth Circuit concluded that "[u]nder the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id*. at 594.

United States District Court
Northern District of California

1     Like the plaintiffs in *Gerstle* and *Mazza*, Plaintiffs in this case have shown that California

2  has the requisite "significant aggregation of contacts to the claims of each class member." *Mazza*,

3  666 F.3d at 589.  The burden thus shifts to Toyota to demonstrate that foreign law, rather than

4  California law, should apply to the class claims under the three-step governmental interest test.

5  Toyota does not engage in a full choice of law analysis under that test.  Instead, Toyota cites a

6  number of the conclusions reached by the *Mazza* court when it determined that the three-step

7  governmental interest test precluded application of California law to a nationwide class on the

8  record before it in that case.  For example, Toyota points to statements in *Mazza* that "[E]very

9  state has an interest in having its law applied to its resident claimants," and that "California

10  considers the 'place of the wrong' to be the state where the last event necessary to make the actor

11  liable occurred."  *Mazza*, 666 F.3d at 593-94.  Toyota also submits a twenty-seven page appendix

12  summarizing variations between the consumer protection laws of the fifty states.  *See* Def.'s State

13  Law Variations App'x.

14     Plaintiffs contend that Toyota's citations to *Mazza* and appendix of statutes, both

15  untethered to the facts of this case, do not meet Toyota's burden to demonstrate that foreign law,

16  rather than California law, should apply to the class claims.  Plaintiffs point out that Toyota's

17  appendix does not even address Plaintiffs' warranty and unjust enrichment claims.  At the hearing,

18  Toyota's counsel acknowledged the truncated nature of its briefing on choice of law and indicated

19  that it would have been impossible to argue the issue fully within the applicable page limit.

20  Toyota's counsel suggested that the claims asserted by Plaintiffs in this case are so similar to the

21  claims asserted in *Mazza* that this Court could simply apply the choice of law analysis set forth in

22  *Mazza* to conclude that each class member's claims must be governed by the laws of the

23  jurisdiction in which the vehicle purchase took place.  Alternatively, Toyota's counsel requested

24  leave to brief choice of law fully.

25     The Court agrees with Plaintiffs that Toyota has not met its burden to demonstrate that

26  foreign law, rather than California law, should apply to the class claims.  However, the Court is

27  reluctant to apply California law to a nationwide class based solely on Toyota's failure,

28  particularly in light of Toyota's assertion that the page limits hampered its ability to address the

1    issue fully.  The Court agrees with Toyota that the claims asserted in the present case are

2    substantially similar to those asserted in *Mazza*.  However, Toyota has not cited authority for the

3    proposition that this Court could simply adopt *Mazza*'s choice of law analysis and apply it to a

4    different case with a different factual record.  The Court concludes that it need not resolve the

5    choice of law issue, however, because even if the Court were to apply California law to the

6    nationwide class as urged by Plaintiffs, the Court would conclude that class certification is not

7    warranted because common issues do not predominate, as discussed below.

c.    **Predominance of Common Questions**

9        Plaintiffs argue that the predominance requirement is satisfied under California law

10   because Count III for breach of express warranty, Count VI for unfair competition, Count VII

11   under the Consumer Legal Remedies Act, and Count XI for unjust enrichment can be determined

12   by way of classwide proof.  Toyota argues that common issues do not predominate because the

13   case will involve individualized determinations as to whether each class member was exposed to

14   the misstatement and whether her or she relied on the misstatement in purchasing a Class Vehicle.

15       For the California claims under the Consumer Legal Remedies Act and Unfair

16   Competition Law, Plaintiffs must demonstrate "the required elements of reliance, causation, and

17   damages by proving that Defendants made what a reasonable person would consider a material

18   misrepresentation." *Forcellati*, 2014 WL 1410264, at *9.  For the express warranty claim,

19   Plaintiffs must show that "(i) the seller's statements constitute an affirmation of fact or promise or

20   a description of the goods; (ii) the statement was part of the basis of the bargain; and (iii) the

21   warranty was breached." *Snarr*, 2019 WL 7050149, at *8 (internal quotation marks and citation

22   omitted).  Under California law, the seller's description of goods is presumed to be part of the

23   basis of the bargain for purposes of an express warranty claim.  *See Weinstat v. Dentsply Int'l,*

24   *Inc.*, 180 Cal. App. 4th 1213, 1230 (2010).  However, in *Mazza* the Ninth Circuit made clear that

25   in order to pursue claims on behalf of a putative class based on false advertising, the named

26   plaintiffs must show that every class member was exposed to the allegedly misleading

27   advertisements.  *See Mazza*, 666 F.3d at 596.  The *Mazza* court held that "[N]o class may be

28   certified that contains members lacking Article III standing."  *Id*. at 594. (internal quotation marks

United States District Court
Northern District of California

1   and citation omitted).  Article III standing depends on the plaintiff suffering an injury that is

2   "fairly traceable to the challenged conduct."  *Id*. (internal quotation marks and citation omitted).

3        In certain cases, the advertising campaign is so pervasive that it may be presumed that all

4   class members were exposed to and relied on the false statements.  For example, in *In re Tobacco*

5   *II Cases*, 46 Cal. 4th 298, 328 (2009), the plaintiffs alleged exposure to a "decades-long" tobacco

6   advertising campaign that was so pervasive there could be little doubt that the class members were

7   exposed to the misleading statements.  However, the Ninth Circuit held in *Mazza* that "[i]n the

8   absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must

9   be defined in such a way as to include *only members who were exposed* to advertising that is

10  alleged to be materially misleading."  *Mazza*, 666 F.3d at 596 (emphasis added).  In *Mazza*, the

11  plaintiff alleged that Honda's advertising for a braking system misrepresented the system's

12  characteristics and omitted material information.  *Id*. at 585.  Honda's advertising campaign

13  included television and print marketing over a period of approximately three years.  *Id*. at 586.

14  The Ninth Circuit concluded that this level of advertising did not "justify a presumption of

15  reliance . . . because it is likely that many class members were never exposed to the allegedly

16  misleading advertisements, insofar as advertising of the challenged system was very limited."  *Id*.

17  at 595.  The Ninth Circuit held that  "[f]or everyone in the class to have been exposed to the

18  omissions . . . it is necessary for everyone in the class to have viewed the allegedly misleading

19  advertising."  *Id*. at 595.  Because of the limited scope of Honda's advertising, however, the Ninth

20  Circuit found that it was "unreasonable to assume that all class members viewed it."  *Id*.

21        Applying these standards, Plaintiffs argue that this record reflects a sufficiently pervasive

22  advertising campaign to give rise to an inference that all class members were exposed to Toyota's

23  misstatement that the Feature was standard on the Class Vehicles.  Toyota argues that such an

24  inference cannot be drawn from this record, and in fact, the record suggests that the majority of the

25  class members likely were *not* exposed to the misstatement.  Toyota argues that this case is

26  indistinguishable from *Mazza* in any material way, and that certification under Rule 23(b)(3) must

27  be denied for the same reason it was denied in that case.  The Court agrees with Toyota's

28  characterization of the record.

1    A total of ███ hard copy Brochures were shipped to Toyota dealers throughout the

2    United States.  *See* Hoffman Decl. ¶ 4.  Those Brochures described all of the 2016 RAV4 models,

3    and therefore would have been given to consumers interested in any of the models.  *See* Brochure,

4    Green Decl. Exh. 15.  A total of ███ 2016 RAV4 vehicles were sold in the United States.  *See*

5    Mito Decl. ¶ 3-7.  Consequently, there were not enough hard copy Brochures to cover the number

6    of consumers who bought 2016 RAV4 vehicles, let alone consumers who were given Brochures at

7    dealerships but did not purchase a vehicle.

8    Toyota presents evidence that the number of consumers who visited dealerships was likely

9    about ten times the number of vehicles sold.  *See* Hoffman Dep. 69:21-70:7, Margulies Decl. Exh.

10   2.  Based upon sales of approximately ███ vehicles, that would mean approximately ███

11   ███ consumers visited the dealerships where the ███ hard copy Brochures were available.

12   Given that the ███ Brochures were distributed across approximately ███ consumers, it

13   is impossible to say that a Brochure was received by all or even a majority of the purchasers of the

14   ███ Class Vehicles sold without the Feature.

15   This conclusion is consistent with the data regarding the toyota.com website and

16   eBrochure.  As noted above, the misstatements on the website landing pages and downloadable

17   eBrochure were corrected by January 27, 2016.  *See* Hack Decl. ¶¶ 9-10.  Of the ███ total

18   eBrochures downloaded, ███ were downloaded on or after February 1, 2016, that is,

19   after the corrections were made.  Gaitan Decl. ¶¶ 4-6.  Toyota does not retain data on the number

20   of visits to the toyota.com website prior to the corrections, but from May 1, 2016 to September

21   2016 there were more than ███ visits to the website generally and ███ visits to the 2016

22   RAV4 full specification page on the website.  *Id.* ¶ 7.

23   Plaintiffs point out that it was possible to retrieve a cached version of the original

24   eBrochure even after the January 2016 corrections were made.  There is no evidence, however,

25   that significant numbers of consumers accessed the cached obsolete version of the eBrochure.

26   Plaintiffs argue that any shortcomings in the data regarding class members' exposure to the

27   Brochure, website, or eBrochure may be filled with an inference that dealers likely were telling

28   consumers that the Feature was standard on the Class Vehicles.  Plaintiffs make much of the fact

United States District Court
Northern District of California

32

United States District Court
Northern District of California

1   that the hard copy Brochure and eBrochure directed consumers to the dealers for more

2   information.  Plaintiffs argue that when considered together, the Brochure, website, eBrochure,

3   and dealers' likely oral representations to consumers give rise to a reasonable inference that all or

4   most class members were exposed to the misstatement regarding the Feature.  In this way,

5   Plaintiffs argue, the present case is less akin to *Mazza* and more like *Makaeff v. Trump Univ.,*

6   *LLC*, No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014).

7          In *Makaeff*, the district court determined that although the advertising and promotional

8   activities at issue were not part of a massive advertising campaign, those activities were "uniform,

9   highly orchestrated, concentrated and focused on its intended audience."  *Makaeff*, 2014 WL

10  688164 , at *9.  The *Makaeff* court held that on the record before it, it was "highly likely that *each*

11  *member of the putative class* was exposed to the same misrepresentations."  *Id*. (emphasis added).

12  The record in the present case does not suggest a similar likelihood that each class member was

13  exposed to the misstatement.  Plaintiffs are asking the Court to draw two inferences based on the

14  existence of the misstatement in the training materials:  first, that significant numbers of dealers

15  were trained on or saw that misstatement and believed the Feature was standard on the Class

16  Vehicles; and second, that those dealers communicated their beliefs to class members who

17  purchased Class Vehicles.  The Court is not persuaded that the double inference requested by

18  Plaintiffs is reasonable given that Plaintiffs have not presented evidence that *any* dealer told *any*

19  consumer that the Feature was standard on the Class Vehicles.

20         Plaintiffs' reliance on *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) similarly is

21  misplaced.  *Daniel* was a summary judgment case in which the plaintiffs asserted that they were

22  exposed to and relied on material omissions through their interactions with salespeople at Ford

23  dealerships.  The Ninth Circuit concluded that the plaintiffs' evidence that they interacted with and

24  received information from sales representatives at authorized Ford dealerships prior to purchasing

25  their vehicles was sufficient to create a triable issue of fact.  *Daniel*, 806 F.3d at 1226.  The Ninth

26  Circuit rejected the defendant's argument that the plaintiffs needed "to show more than that it was

27  hypothetically possible for Ford to disseminate information through its dealerships."  *Id*.  While

28  *Daniel* presents some factual issues in common with Plaintiffs' theory, and contains some

United States District Court
Northern District of California

1  language helpful to Plaintiffs' general position, *Daniel* did not address the type of proof necessary

2  to show classwide reliance on false advertising and therefore is not on point.

3    Much more relevant is Toyota's citation to *In re Myford Touch Consumer Litig.*, No. 13-

4  CV-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016).  In that case, the plaintiffs alleged

5  claims based on representations made on Ford's website and in brochures regarding an

6  infotainment system.  The district court found that the advertising campaign spanning a two-and-

7  one-half year period was "far from a 'decades-long' campaign" as described in *Tobacco II*, and

8  was "shorter even than the three years of advertising found insufficient in *Mazza*."  *In re Myford*

9  *Touch*, 2016 WL 7734558, at *21.  The court found that the plaintiffs had not shown a sufficient

10  basis to presume classwide exposure to the alleged misrepresentation and thus that the putative

11  class was  overbroad.  *See id.* at *22.

12    In the present case, the advertising containing the false statements does not rise to the level

13  of pervasiveness found insufficient in both *Mazza* and *In re Myford Touch*.  This Court concludes

14  that on this record, Plaintiffs have failed to show that all, or even most, class members were

15  exposed to the false statement.  Accordingly, the putative class is overbroad.  *See Mazza*, 666 F.3d

16  at 596.  "[C]ommon questions of fact do not predominate where an individualized case must be

17  made for each member showing reliance."  *Id.*

18    **d.    Other Rule 23(b)(3) Considerations**

19    The parties' briefing addresses other considerations relevant to determination whether

20  certification is appropriate under Rule 23(b)(3), including whether damages can be determined on

21  a classwide basis and whether the XLE Hybrid and SE models are sufficiently similar to the XLE

22  models purchased by Plaintiffs to be included in the class.  The Court need not resolve these issues

23  because certification under Rule 23(b)(3) is not warranted for the reasons discussed above.

24  However, the Court notes briefly that it has denied Toyota's motion to exclude the Boedeker

25  Report, on which Plaintiffs rely to show that classwide damages could be established.  Given that

26  ruling, the Court would not be inclined to deny the motion for class certification based on a

27  determination that Plaintiffs could not establish damages on a classwide basis.  Nor is the Court

28  persuaded that inclusion of the XLE Hybrid and SE models in the class definitions is

inappropriate.  The XLE, XLE Hybrid, and SE models were all described, inaccurately, as being equipped with the automatic on/off headlights as a standard feature.  This case therefore is unlike the food labeling cases alluded to in the briefing, where the courts determined that the products at issue were not sufficiently similar to products purchased by the plaintiffs.

### e.      Conclusion

Plaintiffs have not established classwide exposure to Toyota's misstatement that the Feature was standard on the Class Vehicles.  That statement is central to all of the class claims.  Accordingly, Plaintiffs' motion for class certification under Rule 23(b)(3) is DENIED.

### 2.      Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  This provision does not require the Court to examine the viability of the claims for declaratory and injunctive relief, "but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125.

Plaintiffs seek injunctive relief in the form of an order requiring Toyota to retrofit each Class Vehicle with automatic headlights.  Plaintiffs argue that certification under Rule 23(b)(2) is appropriate here, because the Feature is a "safety issue" and the proposed injunctive relief would provide "relief necessary to redress the group-wide injury caused by the missing safety Feature, and would be of 'overwhelming positive value' to the class.  Motion at 25, ECF 87-4.  Plaintiffs' automotive engineering expert, David McLellan, opines that retrofitting would cost approximately $2,560 per vehicle.  *See* McLellan Report at 8-9.

Toyota argues that this relief was not requested in the SAC, that injunctive relief is not appropriate because Plaintiffs have an adequate remedy at law, and that Plaintiffs cannot show that the requested relief is appropriate for the class as a whole, because many class members did not see the misstatement regarding the Feature.  Plaintiffs' reply brief does not respond to Toyota's arguments, or even mention their motion for certification of a Rule 23(b)(2) class.

To the extent Plaintiffs' failure to respond to Toyota's arguments was not intended as a

United States District Court
Northern District of California

concession with respect to the requested Rule 23(b)(2) class, the Court agrees with Toyota that certification of a Rule 23(b)(2) class is not warranted on this record.  "Rule 23(b)(2) does not authorize class certification therefore in the context of diverse, individualized transactions that vary depending on the specific facts giving rise to the individual customer's claim."  *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. CV 12-CV-04457-SC, 2015 WL 4537957, at *11 (N.D. Cal. July 27, 2015).  As discussed above in connection with Plaintiffs' motion for certification under Rule 23(b)(3), Plaintiffs' proposed class is overbroad, as Plaintiffs cannot establish a likelihood that each member of the class was exposed to Toyota's misstatement.  Under these circumstances, Plaintiffs have not established entitlement to certification of a Rule 23(b)(2) class.

Plaintiffs' motion for class certification under Rule 23(b)(2) is DENIED.

**IV.   ORDER**

Plaintiffs' motion for class certification is DENIED.

Dated: February 3, 2020

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California